womblebonddickinson.com



July 29, 2024

The Honorable Jennifer L. Hall
United States District Court for the District of Delaware
844 N. King Street
Wilmington, Delaware 19801

Re:    Ferring Pharm. Inc. et al. v. Finch Therapeutics Group, Inc. et al,
No. 21-1694-JLH

Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

Mary Bourke
Partner
Direct Dial: 302-252-4333
Direct Fax: 302-661-7733
E-mail: Mary.Bourke@wbd-us.com

Dear Judge Hall:

    We write in response to Finch's letter regarding Dr. Borody, submitted earlier today. (D.I. 414.) As an initial matter, Finch did not raise any of its issues or complaints with Ferring prior to filing its letter, nor did Finch seek to meet and confer regarding any matter concerning Dr. Borody following Ferring's July 26 submission regarding Dr. Borody and concurrent production of materials. Had Finch done so, several of the complaints raised in Finch's letter could have been resolved without the need for Court intervention.

    Ferring has fully complied with all of the Court's orders and its discovery obligations. Ferring received confirmation that Dr. Borody was willing to travel to the United States and testify at trial the evening of Thursday, July 25, and notified Finch and the Court the next day. Additionally, as soon as Ferring had a good faith reason to believe that Dr. Borody would be available for trial, Ferring voluntarily produced his declaration and consulting agreement and offered a date when Finch could take his deposition (two days prior to the start of trial) in Delaware.[1] Finch did not ask for an alternative date. Nothing about that sequence of events warrants the exclusion of the trial testimony of the only named inventor on two of the patents in suit.

    Finch cannot claim unfair surprise at the substance of Dr. Borody's declaration or his anticipated testimony. Up until almost the close of fact discovery, Dr. Borody was represented by the same counsel as Finch, and they had every opportunity to speak with him regarding the subject matter of his patents and the claimed inventions, and presumably they did so. And, to the extent that Finch had lingering questions as of the close of fact discovery, Finch had the same

---

[1] Ferring's behavior with respect to Dr. Borody is in stark contrast with Finch's behavior with respect to Ms. Graf. Ferring promptly offered a date for an in-person deposition with Dr. Borody. And Ferring voluntarily produced Dr. Borody's declaration and consulting agreement, despite the fact that they are dated well after December 2021, whereas Finch has refused to produce responsive documents from Ms. Graf after that date (and Ferring does not know whether Ms. Graf has a consulting agreement with Finch or the terms of it).

opportunity to secure additional testimony or evidence from Dr. Borody as Ferring (including through the Hague Convention, as it alleges Ferring should have done).

To be clear, Ferring does not seek to introduce new or improper expert testimony on invalidity. Ferring does not seek to elicit expert opinion testimony from him. Rather, he will testify—as the inventor of the claimed subject matter—that (1) he was not involved in drafting the asserted claims, (2) he did not sign off on the subject matter of the asserted claims, and (3) he does not see anything in the asserted claims that was not already publicly known in August 2010 such that (4) he does not consider himself to be an inventor of those claims, as he would have told Finch had they asked. His own prior work is relevant to his status as a pioneer in the field, and the general state of the art. As the named inventor, Dr. Borody's assessment of his own invention (or lack thereof) is highly relevant, and Finch cannot exclude such testimony just because it is unhelpful to their case. And Dr. Borody's testimony that Finch did not own the patents and knew that there was a dispute as to ownership is probative as to why they did not consult with him about the claims.

The existence of a consulting agreement between Ferring and Dr. Borody is not a reason to exclude his relevant testimony. Indeed, Finch has or has had consulting agreements with certain of its witnesses, including James Burgess, who remains on Finch's may call witness list for trial. And Ferring's counsel accurately described the state of affairs: Ferring does not control Dr. Borody and nothing in the consulting agreement required or obligated Dr. Borody to come to trial. The only assistance identified in the consulting agreement is that Dr. Borody would "provid[e] to the Company relevant documents in Consultant's possession and review[] material provided by the Company to the Consultant." (D.I. 414, Ex. C at BORODY_FER00000370.)

The agreement complies with the rules that pertain to an agreement with a potential trial witness. The consulting agreement explicitly states that "[i]t is a condition of this Agreement that any testimony given by Consultant will be truthful and accurate," that "Consultant will not be paid for his testimony, and should he testify, and fees Consultant receives (either before or after testifying) will in no way affect his testimony," and that "Consultant will not receive any compensation from the Company for testifying." (D.I. 414, Ex. B at BORODY_FER00000367, 368.) Finch alleges—with no basis—that the fees provided for in the consulting agreement are excessive, but Dr. Borody, a practicing surgeon, has represented that is the opportunity cost for him to leave his practice for an extended period of time to testify in a foreign proceeding that requires significant travel. To the extent that Finch disagrees with that assertion, it can cross-examine Dr. Borody on that point.

Similarly, Finch appears to suggest that there is something improper with respect to the indemnification clause contained in Dr. Borody's consulting agreement. There is not. Dr. Borody expressed a concern about potential retaliation from Finch as a result of his truthful testimony and insisted on the inclusion of that clause in the agreement. As with the payment provisions, Finch is welcome to explore the bases for the inclusion of such terms during Dr. Borody's deposition, and if appropriate, during cross-examination at trial.

Ferring does not control Dr. Borody and had no power to compel his attendance at trial. This should come as no surprise to Finch, which apparently does not control Mark Smith, Finch's own former CEO. Dr. Borody's declaration was created because there was uncertainty as to whether Dr. Borody would travel to the United States and be available for trial, or whether the

Court would require a proffer of his testimony. Ferring promptly produced his declaration as soon as he confirmed his trial attendance. As with his consulting agreement, Finch is free to examine Dr. Borody concerning his declaration at trial.

With respect to the timing and nature of Dr. Borody's deposition, Ferring informed Finch (and the Court) that Dr. Borody will be available for deposition on Saturday, August 3, as soon as Ferring learned of Dr. Borody's travel plans. (D.I. 407.) This is in line with the Court's expectations at the pretrial conference. (D.I. 414, Ex. A at 151:2-5.) Despite multiple communications related to the other depositions scheduled for this week, Finch did not raise any issues with this date until filing its letter with the Court. Regardless, Ferring is happy to meet and confer with Finch regarding the timing and logistics of Dr. Borody's deposition if they are unavailable on Saturday and to find an alternative time.

Finch also has never raised its requests for additional documents with Ferring prior to filing its letter with the Court. Despite having received them on June 5, 2024, Finch for the first time today says it wants to inspect the original hand-written notes produced by Dr. Borody. As the Court knows, counsel for Ferring does not represent Dr. Borody and does not have the originals. Nevertheless, we will make every effort to make them available to Finch. Additionally, Ferring is willing to produce its communications with Dr. Borody and will do so prior to Dr. Borody's deposition. Ferring has not paid Dr. Borody any money to date.

The Court should deny the relief requested in Finch's letter motion. Dr. Borody is the only named inventor on two of the patents in suit and he is ready and willing to testify. Ferring believes that it has been forthcoming and will do whatever needs to be done to ensure that he can do so. Finch cannot claim prejudice from testimony from its own inventor, especially when Finch's counsel represented him for the duration of fact discovery. Finch has offered no reason to depart from the Court's prior ruling that the jury should have the benefit of his testimony.

Respectfully submitted,

Mary W. Bourke (#2356)