**PROPOSED PRETRIAL ORDER**

# EXHIBIT 18.2

**FERRING/REBIOTIX'S MOTION *IN LIMINE* TO EXCLUDE INFORMATION RELATED TO THE COMPENSATION OF LEE JONES AND MICHAEL BERMAN**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) ) ) ) C.A. No. 21-1694-JLH |
| Defendants. | ) ) |
| | ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) ) ) ) ) ) |
| Counterclaim-Plaintiffs/Reply Defendants, | ) ) |
| v. | ) ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) ) ) |
| Counterclaim-Defendants/Reply Plaintiffs. | ) ) |

**FERRING/REBIOTIX'S MOTION IN LIMINE**
**TO EXCLUDE INFORMATION RELATED TO THE**
**COMPENSATION OF LEE JONES AND MICHAEL BERMAN**

## I.   INTRODUCTION

Ferring Pharmaceuticals Inc. and Rebiotix Inc. (collectively "Ferring") move to preclude Finch Therapeutics Group, Inc., Finch Therapeutics, Inc, Finch Therapeutics Holdings, LLC, and Regents of the University of Minnesota (collectively "Finch") from introducing evidence or argument regarding the personal wealth of Lee Jones and/or Michael Berman, including, but not limited to, any executive compensation Ms. Jones or Mr. Berman received as a result of the merger between Ferring Pharmaceuticals Inc. and Rebiotix Inc.

Evidence of Ms. Jones and Mr. Berman's financial positions is wholly irrelevant to the pending patent dispute between Ferring and Finch. Allowing Finch to introduce evidence of their compensation and personal wealth will confuse the issues at trial, mislead the jury, and generate undue prejudice against Ms. Jones, Mr. Berman, and Ferring.

## II.   ARGUMENT

### A.   Evidence Regarding Ms. Jones and Mr. Berman's Compensation Should Be Excluded Because They Are Irrelevant to Finch/Ferring's Claims.

The personal finances of Ms. Jones and Mr. Berman, including executive compensation they received related to the Ferring-Rebiotix merger, are not relevant to this action, and should be excluded under Federal Rule of Evidence 402. Courts have consistently held that evidence of wealth or financial condition, "is usually irrelevant under rule 401 and unfairly prejudicial under rule 403." *Sec. & Exch. Comm'n v. Goldstone*, No. CIV 12-0257 JB/GBW, 2016 WL 3654273, at *12 (D.N.M. June 13, 2016)*; Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 17-14-JFB-SRF, 2019 WL 2775515, at *1 (D. Del. July 2, 2019) (holding that "that any evidence as to defendants' overall financial status [was] irrelevant and [was] potentially prejudicial").

Here, there is no compelling reason to depart from the default rule. Ferring anticipates that Finch will attempt to offer evidence as to the personal finances of Ms. Jones and Mr.

Berman, particularly with respect to their compensation related to the Ferring-Rebiotix merger. Ms. Jones was the CEO of Rebiotix at the time of the merger and Mr. Berman is one of the company's founders. Evidence related to their executive compensation has no bearing on the issues of patent infringement and invalidity. Such evidence is irrelevant and should be excluded under Federal Rules of Evidence 401 and 402.

Finch may take the position that such information is relevant insofar as it bears on Ms. Jones's or Mr. Berman's motivations or biases. The financial gain of these individuals bears no relationship to the ultimate questions of patent validity/infringement presented in the case. *See U.S. v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir. 1999) (evidence of financial motivation "does not prove much, because almost everyone … has a motive to get more money"). Furthermore, to the extent that Finch wishes to argue that Ms. Jones or Mr. Berman were biased in favor of Rebiotix, they can make that argument based on their respective positions within the company without discussion of the financial compensation they received.

**B.     In the Alternative, Evidence Regarding Ms. Jones's and Mr. Berman's Compensation Should Be Excluded Because It Will Confuse the Issues, Mislead the Jury, and Create Undue Prejudice.**

Even if evidence concerning Ms. Jones's and Mr. Berman's finances was somehow minimally relevant, it should still be excluded under Rule 403 as unduly prejudicial and likely to confuse and mislead the jury.

Courts have repeatedly recognized reference to a parties' wealth and/or compensation to be improper and prejudicial. *See U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940) (finding that appeals to class prejudice were improper); *see also Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (holding that juries "should not be urged to predicate its verdict on a prejudice against … wealth"); *Finjan, Inc. v. Sophos, Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071, at *15 (N.D. Cal. Aug. 22, 2016) ("[E]vidence regarding [Sophos's founders' or

employees'] wealth and compensation is far more likely to be prejudicial than to be probative," and their bias was already clear from their positions within the company).

## III.   CONCLUSION

For the foregoing reasons, Ferring respectfully requests that the Court preclude Finch from presenting evidence or argument regarding wealth or financial compensation of Ms. Jones or Mr. Berman.

Dated: June 27, 2024

*Of Counsel:*

Daralyn J. Durie
Matthew Chivvis
Rachel Dolphin
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415-268-6055
ddurie@mofo.com
mchivvis@mofo.com
rdophin@mofo.com

Sara Doudar
MORRISON & FOERSTER LLP
701 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213-892-4345
sdoudar@mofo.com

WOMBLE BOND DICKINSON (US) LLP

*/s/ Mary W. Bourke*
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
Zachary Murphy (#6881)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Mary.Bourke@wbd-us.com
Dana.Severance@wbd-us.com
Daniel.Attaway@wbd-us.com
Zachary.Murphy@wbd-us.com

John B. Bourke (#6534)
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 765-6267
Ben.Bourke@wbd-us.com

*Attorneys for Ferring Pharmaceuticals Inc.
and Rebiotix Inc.*

**PROPOSED PRETRIAL ORDER**

# EXHIBIT 18.2

**UMN/FINCH'S OPPOSITION TO FERRING/REBIOTIX'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE INFORMATION RELATED TO THE COMPENSATION OF LEE JONES AND MICHAEL BERMAN**

EXHIBIT 18-2—OPPOSITION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) ) ) C.A. No. 21-1694-JLH |
| Defendants. | ) **FILED UNDER SEAL** ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) ) ) ) ) ) |
| Counterclaim-Plaintiffs/Reply Defendants, | ) ) |
| v. | ) ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) ) ) |
| Counterclaim-Defendants/Reply Plaintiffs. | ) ) |

**UMN/FINCH'S OPPOSITION TO FERRING/REBIOTIX'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE INFORMATION RELATED TO THE COMPENSATION OF LEE JONES AND MICHAEL BERMAN**

EXHIBIT 18-2—OPPOSITION

Ferring sets forth no reason to preclude UMN/Finch from introducing evidence related to the amount of compensation received by key Ferring witnesses and former Rebiotix founders and executives, Lee Jones and Michael Berman.  Such evidence is directly relevant to establish bias of both Ms. Jones and Mr. Berman.  There is nothing unfairly prejudicial about this factual information that is critical to the jury's ability to weigh witness credibility.  Moreover, UMN/Finch will not present general evidence as to Ms. Jones' and Mr. Berman's "personal wealth" or "overall" financial status.  Ferring's MIL #2 should be denied.

There is not, as Ferring claims, a "default rule" to exclude evidence of bias.  Ex. 18-2 at 1. To the contrary, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  *United States v. Abel*, 469 U.S. 45, 52 (1984); *see also Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 1991 WL 212087, at *3 (E.D. Pa. Oct. 15, 1991) ("Evidence of witness bias is always admissible at trial, and is thus relevant.").  That applies with particular force here, as third parties Lee Jones and Michael Berman are two of only *three* fact witnesses Ferring represented it "[w]ill call" at trial, Ex. A (Jun. 3, 2024 Ferring Witness List), and both received substantial payouts from Ferring's merger with Rebiotix, PTX-204.0019; Ex. B (L. Jones Dep. Tr.) at 368:8–369:11; Ex. C (M. Berman Dep. Tr.) at 145:24–146:19.  Although Ferring may seek to present Ms. Jones and Mr. Berman as objective third parties, Ms. Jones and Mr. Berman received ▮▮▮▮▮▮ in connection with Ferring's acquisition of Rebiotix, and renegotiated additional payments by Ferring, *during this litigation*, which ensured ▮▮▮▮ ▮▮▮▮▮▮.  PTX-57.0002–3; Ex. B (L. Jones Dep.) at 377:16–382:21; Ex. C (M. Berman Dep.) at 301:6–318:2.  The jury should be permitted to consider the credibility of their testimony on Ferring's behalf in view of the substantial compensation that Ferring provided them.

EXHIBIT 18-2 – OPPOSITION

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 1088433, at *3 (N.D. Fla. Mar. 22, 2021) ("employee compensation packages . . . is admissible for purposes of establishing witness bias."); *Hayes v. Compass Grp. USA, Inc.*, 202 F.R.D. 363, 365 (D. Conn. 2001) (similar). Additionally, Ferring's payments to Ms. Jones and Mr. Berman "may be relevant to their motivation for making certain decisions on behalf of the defendant corporations," such as decisions to copy UMN/Finch inventions and willfully infringe. *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod Liab. Litig.*, 181 F. Supp. 3d 278, 294 (E.D. Pa. 2016); *In re Lidoderm Antitrust Litig.*, 2018 WL 7814761, at *5 (N.D. Cal. Feb. 7, 2018) ("Compensation of Former Employees of Defendants" is relevant to those witnesses' "alleged bias (*e.g.*, the employee's compensation arrangement allegedly incentivized them to support the Settlement in the first instance or defend the Settlement now)"). There is nothing unfairly prejudicial about such evidence. *See Tylenol*, 181 F. Supp. 3d at 294 ("no reason why all employee compensation evidence should be precluded based on 'unfair prejudice' under Rule 403").

To argue against the clear admissibility of this bias evidence, Ferring cites cases excluding general evidence of a witness's "wealth or financial condition." Ex. 18-2 at 1. UMN/Finch have no intention of introducing such general evidence. Rather, the only evidence relating to Ms. Jones' and Mr. Berman's finances that UMN/Finch intend to introduce relates to the compensation those two key Ferring witnesses received from the Ferring/Rebiotix merger, and none of Ferring's cited cases exclude such evidence. *SEC v. Goldstone*, 2016 WL 3654273, at *12 (D.N.M. June 13, 2016) ("evidence of wealth is irrelevant"); *Liqwd, Inc. v. L'Oreal USA, Inc.*, 2019 WL 2775515, at *1 (D. Del. July 2, 2019) ("evidence as to defendants' overall financial status is irrelevant," but "evidence as to profits relating to the allegations in this case are admissible and relevant").

Ferring also claims this bias evidence should be excluded because it is not relevant to

EXHIBIT 18-2 - OPPOSITION

infringement and invalidity.  Ex. 18-2 at 2.  Not so.  Both Ms. Jones and Mr. Berman will be asked questions that bear on infringement and validity.  The credibility of their testimony is critical to both issues.  *Abel*, 469 U.S. at 52.  Ferring tacitly acknowledges that bias evidence is relevant, but claims that UMN/Finch "can make that [bias] argument based on their respective positions in the company."  Ex. 18-2 at 2.  But Ms. Jones and Mr. Berman are no longer employed by Ferring or Rebiotix so they no longer have "positions" at Ferring, and regardless, there is a significant difference between ***past*** titles that do not provide the opportunity to test those witnesses' bias as ***current*** Ferring employees.[1]  How to interpret this evidence is "best left for the jury to determine." *Food Lion, LLC v. Dean Foods Co.*, 2017 WL 11681188, at *4 (E.D. Tenn. Mar. 20, 2017).

Finally, Ferring suggests that bias evidence is unfairly prejudicial, but none of its cases support its position.  Rather, they each concern arguments related to "class prejudice" or "bias" against the wealthy or poor.  *U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238 (1940) (no error despite closing argument asking jury "which shall rule, wealth or man? Which shall lead, money or intellect?"); *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (improper to ask the jury "to tumble the magnificent big companies here with all their engineers"); *U.S. v. Mitchell*, 172 F.3d 1104, 1110 (9th Cir. 1999) (improper to portray defendant as "feckless man who did not support his wife and children").  These are arguments UMN/Finch will not make.  But Finch/UMN must be permitted to inquire into Ms. Jones' and Mr. Berman's bias and excluding the significant compensation Ferring paid them in connection with the Ferring/Rebiotix merger would impede the jury's ability to assess their credibility.  The law is clear that such evidence is relevant and not unfairly prejudicial.  *In re Tylenol*, 181 F. Supp. 3d at 294.  Ferring's motion should be denied.

---

[1]   *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4560071, at *15 (N.D. Cal. Aug. 22, 2016), is therefore inapposite because the witnesses still had a relationship with the defendant.

EXHIBIT 48-2 - OPPOSITION

# EXHIBIT A

EXHIBIT 48-2 - OPPOSITION

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 10**

**FERRING/REBIOTIX'S WITNESS LIST**

EXHIBIT 48 - OPPOSITION

**CONFIDENTIAL—SUBJECT TO PROTECTIVE ORDER**

As required by District of Delaware Local Rule 16.3(c)(7), Ferring/Rebiotix disclose the following list of witnesses they will or may call at trial to testify in person or by deposition. Ferring/Rebiotix reserve the right to revise or supplement this list consistent with the Pretrial Order or as otherwise permitted by the Court. For all expert witnesses listed by Finch/UMN, Ferring/Rebiotix reserve the right to introduce deposition testimony in the event that any such witness does not testify in person at trial. Ferring/Rebiotix further reserve the right to call any witness listed by Finch/UMN in Exhibit 9.

1.     The following fact witnesses will or may be called by Ferring/Rebiotix, in person or by deposition:

| Witness | Will or may call? In person or by deposition? |
| --- | --- |
| Mary Ellen Anderson | May call (by deposition) |
| Lindy Bancke | May call (in person) |
| David Bell | May call (in person) |
| Michael Berman | Will call (in person) |
| Greg Fluet | May call (in person) |
| Matthew Green | May call (in person) |
| Ed Hlavka | May call (in person or by deposition) |
| Courtney Jones | Will call (in person) |
| Lee Jones | Will call (in person) |
| Ben Merrifield | May call (by deposition) |
| Kristin Wannerberger | May call (in person or by deposition) |
| Ashley Ross | May call (in person) |

EXHIBIT 48-2 OPPOSITION

| Witness | Will or may call?<br>In person or by deposition? |
|---|---|
| Kevin Anderson | May call (by deposition) |
| Matthew Blischak | May call (in person) |
| James Burgess | May call (by deposition) |
| Matthew Hamilton | May call (by deposition) |
| Alexander Khoruts | May call (by deposition) |
| William Kieper | May call (by deposition) |
| Michael Sadowsky | May call (by deposition) |
| Mark Smith | May call (by deposition) |
| Russ Straate | May call (by deposition) |
| Alexa Weingarden | May call (by deposition) |
| Thomas Borody | May call (in person) |

EXHIBIT 48-2 OPPOSITION

2.      The following expert witnesses will or may be called by Ferring/Rebiotix, in

person or by deposition:

| Witness | Will or may call? In person or by deposition? |
|---|---|
| Robert Britton | Will call (in person) |
| Richard Johnson | Will call (in person) |
| Kurt Karst | May call (in person) |
| Colleen Kraft | May call (in person) |
| Thomas Louie | May call (in person) |
| Christopher Polage | May call (in person) |
| Jonathan Putnam | Will call (in person) |
| Tor Savidge | May call (in person) |
| Todd Treangen | May call (in person) |

EXHIBIT 48-2 - OPPOSITION

# EXHIBIT B

HIGHLY CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - -x

FERRING PHARMACEUTICALS INC.
and REBIOTIX INC.,

Plaintiffs,

vs.                                  Civil Action No.
                                       21-1694-RGA
FINCH THERAPEUTICS GROUP, INC.,
FINCH THERAPEUTICS, INC., and
FINCH THERAPEUTICS HOLDINGS, LLC,

Defendants.
_____

FINCH THERAPEUTICS GROUP, INC.,
FINCH THERAPEUTICS, INC., and
FINCH THERAPEUTICS HOLDINGS, LLC,
and THE REGENTS OF THE UNIVERSITY
OF MINNESOTA,

Counterclaim Plaintiffs/Reply
Defendants,

vs.

FERRING PHARMACEUTICALS INC.
and REBIOTIX INC.,

Counterclaim Defendants/Reply
Plaintiffs.
- - - - - - - - - - - - - - - - - - - - - - - - -x

HIGHLY CONFIDENTIAL
VIDEOTAPED DEPOSITION OF LEE JONES
Wilmington, Delaware
Friday, April 21, 2023

- - -


REPORTED BY:

LORRAINE B. MARINO, RDR, CRR, CLR

Job no: 6863

HIGHLY CONFIDENTIAL



Page 366

10      Q   So I would like to finally ask you
11  about the merger between Ferring and Rebiotix.
12  Is it correct that Ferring acquired Rebiotix
13  through a merger in 2018?
14      A   Yes.
15          MS. DeVRIES:  And could we please
16  mark Document 46 as Exhibit 48.
17          (L. Jones Deposition Exhibit No. 48
18  was marked for identification.)
19          THE VIDEOGRAPHER:  Ending in 4739?
20          MS. DeVRIES:  Yes.
21          MS. SEVERANCE:  Real quick, for
22  the videographer, can I have a time
23  check?
24          THE VIDEOGRAPHER:  This session,
25  we are on the record 17 minutes, 59

Page 367

1   seconds; 18 minutes.
2           MS. SEVERANCE:  Remaining.
3           THE VIDEOGRAPHER:  From 42.  No,
4   no.  18 used of the 42.
5           MS. DeVRIES:  Do you have the
6   information that you needed,
7   Ms. Severance?
8           MS. SEVERANCE:  Thank you, yes.
9           MS. DeVRIES:  Am I right that that
10  means that I should finish by 6:20?
11          MS. SEVERANCE:  That's my
12  calculation.
13          MS. DeVRIES:  Okay.  I don't want
14  to -- hopefully, that will be helpful.
15  BY MS. DeVRIES:
16

Page 368

Page 369

93 (Pages 366 to 369)

EXHIBIT 48-2   OPPOSITION

HIGHLY CONFIDENTIAL



EXHIBIT 48-2 OPPOSITION

HIGHLY CONFIDENTIAL



TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

EXHIBIT 48-2 OPPOSITION

HIGHLY CONFIDENTIAL



TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

HIGHLY CONFIDENTIAL



Page 382

Page 384

7    MS. DeVRIES:  I don't have any
8  other questions.
9    MS. SEVERANCE:  Okay.  Can we go
10 ahead and take a break?
11    MS. DeVRIES:  Sure.
12    THE VIDEOGRAPHER:  We are now off
13 the record, and the time is 6:18 p.m.
14    (Recess taken.)
15    THE VIDEOGRAPHER:  We are now on
16 the record.  The time is 6:24 p.m.  And
17 for the record, as of this point in the
18 deposition we are on the record for six
19 hours, 56 minutes and 54 seconds.
20    MS. SEVERANCE:  Thank you.  I am
21 going to go ahead and mark the
22 transcript highly confidential under the
23 protective order.
24    I have no questions, Ms. Jones.
25 Thank you for your attendance today.

Page 383

Page 385

1    MS. DeVRIES:  And thank you,
2  Ms. Jones.  I appreciate your time.
3    MS. SEVERANCE:  Reserve reading
4  and signing.
5    THE VIDEOGRAPHER:  We are now
6  concluding today's deposition and off
7  the record at 6:25 p.m.
8       - - -
9  (Deposition concluded at 6:25 p.m.)
10       - - -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

97  (Pages 382 to 385)

Page 386

ACKNOWLEDGMENT

1
2       I, LEE JONES, hereby certify that
3    I have read the transcript of my
4    testimony taken under oath in my
5    deposition on April 21, 2023; that the
6    transcript is a true, complete and
7    correct record of my testimony, and that
8    the answers on the record as given by me
9    are true and correct.
10
11
12
       _____
                  LEE JONES
13
14
15
16   Signed and subscribed to before me this _____
17   day of _____, 2023.
18
19
       _____
                  Notary Public
20
21
22
23
24
25

Page 388

CERTIFICATE OF REPORTER

1
2
3       I, Lorraine B. Marino, Registered Diplomate
     Reporter, Certified Realtime Reporter and Notary
4    Public, do hereby certify that there came before
     me on APRIL 21, 2023, the deponent herein, LEE
5    JONES, who was duly sworn by me and thereafter
     examined by counsel for the respective parties;
6    that the questions asked of said deponent and the
     answers given were taken down by me in Stenotype
7    notes and thereafter transcribed by use of
     computer-aided transcription and computer printer
8    under my direction.
9       I further certify that the foregoing is a
     true and correct transcript of the testimony
10   given at said examination of said witness.
11      I further certify that the deposition was
     made available to the witness for reading and
12   signing.
13      I further certify that I am not counsel
     attorney, or relative of either party, or
14   otherwise interested in the event of this suit.
15
16
17
18
       _____
19           Lorraine B. Marino, RDR, CRR
20
21
22
23   Date: 4/23/23
24
25

Page 387

1        TRANSPERFECT LEGAL SOLUTIONS
              216 E. 45th Street, Tenth Floor
2             NEW YORK, NEW YORK 10017
                    (212) 867-6600
3
     DEPONENT: LEE JONES
4    DATE:    April 21, 2023
     CASE:    Ferring, et al. v. Finch, et al.;
5             USDC DE No. 21-1694-RGA
6             ERRATA SHEET
7    PAGE/LINE/  CHANGE OR CORRECTION AND REASON
8
9    ----/----/----------------------------------
10   ----/----/----------------------------------
11   ----/----/----------------------------------
12   ----/----/----------------------------------
13   ----/----/----------------------------------
14   ----/----/----------------------------------
15   ----/----/----------------------------------
16   ----/----/----------------------------------
17   ----/----/----------------------------------
18   ----/----/----------------------------------
19   ----/----/----------------------------------
20   ----/----/----------------------------------
21
22   I have read the foregoing transcript of my
     deposition and, except for any corrections or
     changes noted above, I hereby subscribe to the
23   transcript as an accurate record of the
     statements made by me.
24
     Date: _____
25        Signature of Deponent

98 (Pages 386 to 388)

EXHIBIT 48-2 - OPPOSITION

# EXHIBIT C

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF DELAWARE
 3        _____
                                               :
 4     FERRING PHARMACEUTICALS, INC.  :
       and REBIOTIX INC.,             :
 5                                    :
                                      :
 6              v.                    :
                                      :
       Plaintiffs,                    : C.A. No. 21-1694-RGA
 7                                    :
       FINCH THERAPEUTICS GROUP, INC.,:
 8     FINCH THERAPEUTICS, INC., and  :
       FINCH THERAPEUTICS HOLDINGS,   :
 9     LLC,                           :
                                      :
10     Defendants.                    :
       _____ :
11                                    :
       FINCH THERAPEUTICS GROUP, INC.,:
12     FINCH THERAPEUTICS INC.,       :
       FINCH THERAPEUTICS HOLDINGS,   :
13     LLC, and THE REGENTS OF THE    :
       UNIVERSITY OF MINNESOTA,       :
14                                    :
       Counterclaim Plaintiffs/Reply  :
15     Defendants,                    :
                                      :
16              v.                    :
       FERRING PHARMACEUTICALS, INC., :
17     and REBIOTIX, INC.,            :
                                      :
18     Counterclaim Defendants/Reply  :
       Plaintiffs.                    :
19     _____ :
20     ** HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER **
21               DEPOSITION OF MICHAEL BERMAN
22                 TUESDAY, MAY 9, 2023
23             (Caption continued on next page)
24

                                           Page 1
```

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

1  University of Minnesota has -- withdrawn.
2       Are you aware that the
3  University of Minnesota has patents covering
4  FMT technologies created by Dr. Sadowsky and
5  Dr. Khoruts?
6       A.   I am.
7       Q.   When did you first find out
8  that the University of -- withdrawn.
9       How did you become aware of
10  those patents?
11       MS. SEVERANCE:  I'm going to
12  caution the witness not to reveal the
13  substance of any attorney-client
14  communications.  If you can answer without
15  doing so, you may.
16       THE WITNESS:  I don't recall.
17  BY MR. ALPER:
18       Q.   When did you first find out
19  that the University of Minnesota --
20  withdrawn.  Sorry.
21       When did you first find out
22  that Rebiotix was, you know, accused of
23  infringing the University of Minnesota
24  patents?

Page 142

1       MS. SEVERANCE:  Same cautionary
2  instruction.  The question is when.
3       THE WITNESS:  I'm not aware of
4  that.
5  BY MR. ALPER:
6       Q.   Okay.  Do you have an
7  understanding that the -- withdrawn.
8       Do you have an understanding
9  that in this case Rebiotix is accused of
10  infringing University of Minnesota patents
11  covering Dr. Sadowsky and Dr. Khoruts' FMT
12  inventions?
13       A.   I'm not aware of that.  This
14  is -- I'm not aware of that until this
15  moment.
16       Q.   Okay.  Do you have an
17  understanding that the University of
18  Minnesota patents covering Dr. Sadowsky and
19  Dr. Khoruts' FMT inventions are at issue in
20  this lawsuit?
21       MS. SEVERANCE:  Same cautionary
22  instruction.
23       THE WITNESS:  Repeat the
24  question?  I want to make sure I understand

Page 143

1  correctly.
2       MR. ALPER:  Sure.
3  BY MR. ALPER:
4       Q.   What's your understanding of
5  the role of -- if any, of the University of
6  Minnesota's patents covering Dr. Sadowsky and
7  Dr. Khoruts' FMT inventions in this case,
8  this litigation?
9       MS. SEVERANCE:  And I'm going
10  to caution and instruct the witness not to
11  reveal the substance of any attorney-client
12  communications.  If you can answer without
13  doing so, you may.
14       THE WITNESS:  I can't answer
15  that question without revealing
16  attorney-client communication.
17  BY MR. ALPER:
18       Q.   If we look at Exhibit 8 that is
19  the document that was tab 24, is it fair to
20  say that one takeaway from Dr. Sadowsky's
21  e-mail to you and Mr. Hlavka is that
22  Dr. Sadowsky and Dr. Khoruts are seeking
23  patent protection on their FMT technologies?
24       MS. SEVERANCE:  Objection.

Page 144

1  Form.
2       THE WITNESS:  I don't know.
3  BY MR. ALPER:
4       Q.   Okay.  Is it important to you
5  to know what patents are being asserted
6  against Rebiotix?
7       MS. SEVERANCE:  Objection.
8  Form.
9       THE WITNESS:  Today?
10  BY MR. ALPER:
11       Q.   Yes.
12       A.   I'm just a witness in this
13  lawsuit.
14       Q.   Right.  I mean, you were a very
15  important person at Rebiotix prior to the
16  sale to Ferring, correct?
17       MS. SEVERANCE:  Objection.
18  Form.
19       THE WITNESS:  I was -- I was a
20  founder or a co-founder of Rebiotix.  I was
21  chairman of the board.  So I was very
22  involved, yes.
23  BY MR. ALPER:

Page 145

37 (Pages 142 - 145)



Page 146

Page 148

1      A.   Inlet Medical.  Somebody
2   introduced us and I don't recall who that
3   was.
4      Q.   When was that?
5      A.   That was a long time ago.  I
6   don't remember.
7      Q.   Between the time that you first
8   met Lee Jones and when you started working
9   with Lee Jones in connection with the FMT
10   project, did you have other touchpoints with
11   her?
12      A.   No.
13      Q.   How did you connect with
14   Ms. Jones in connection with the FMT project?
15      A.   My recollection is that I saw a
16   mutual friend of ours, a fellow named Warren
17   Watson, at a party.  And we were discussing
18   various goings-on in the medical world of
19   Minneapolis.  And I mentioned to him that I
20   was working on a microbiome project.  And he
21   shared with me that Lee Jones was also
22   working on something similar and that it made
23   sense for us to connect.  And that was how we
24   got connected on the microbiome project, what

---

1
2      Q.   At the time that you were
3   chairman of the board of Rebiotix, was it
4   important to you to know about what patents
5   that Rebiotix might be infringing?
6          MS. SEVERANCE:  Objection.
7   Form.
8          THE WITNESS:  It was -- the
9   premise of your question is wrong.  As the
10   chairman of Rebiotix, it was important for me
11   to understand the patent landscape and make
12   sure that we were pursuing patents that were
13   free for us to operate.
14   BY MR. ALPER:
15      Q.   Okay.  Let's shift gears a
16   little bit.
17          How did you meet Lee Jones?
18      A.   I met Lee Jones initially when
19   she was CEO of Inlet Medical, and I don't
20   recall who introduced us.
21      Q.   Okay.  And how did you meet her
22   in that context?  Why did you become
23   connected with Lee Jones when she was CEO of,
24   what was it, Intelet Medical?

Page 147

---

1   turned into Rebiotix.
2      Q.   And when was that?
3      A.   That was late 2010 when I met
4   Warren Watson and early 2011 when Lee Jones
5   and I connected.
6      Q.   And it was in early 2011 that
7   you first discussed FMT with Ms. Jones?
8      A.   Yes, that's my recollection.
9      Q.   Okay.  And what did you talk
10   about with her?
11      A.   I don't recall the specifics.
12      Q.   Describe the process from
13   meeting Ms. Jones in early 2011 to forming an
14   FMT company.  How did it progress?
15          MS. SEVERANCE:  Objection.
16   Form.
17          THE WITNESS:  Well, we met a
18   number of times in 2011.  My recollection is
19   that we shared what we had done and what our
20   knowledge and experience and aspirations were
21   in this field, and that it culminated in us,
22   along with bringing in Erwin Kelen as a
23   co-founder, in creating initially what we
24   called MikrobEX and later changed the name to

Page 149

38 (Pages 146 - 149)

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

1    At the bottom it has a -- it
2  lists the file custodian as you, Mike Berman,
3  right?
4    A.   Right.
5    Q.   And then it has the file date
6  of December 16, 2009.
7    Do you see that?
8    A.   Yes.
9    Q.   Okay.  And so my question for
10  you is, so -- withdrawn.
11    When did you come into
12  possession of this FMT article authored by
13  Drs. Khoruts and Sadowsky?
14    A.   I don't recall.
15    Q.   Okay.  Let me direct you to one
16  other thing.  If you look at the first page
17  of the article, and you go down to the lower
18  left-hand column, below that column it says,
19  Journal of Clinical Gastroenterology,
20  Volume 0, Number 0, and then it says 2009.
21    Do you see that?
22    A.   Right.
23    Q.   In 2009 was the Journal of
24  Clinical Gastroenterology at Volume 0,

1  let me ask this one other questions --
2  question.  Here's my question.
3    How did you obtain the FMT
4  article written by Dr. Khoruts and
5  Dr. Sadowsky that's Exhibit 20?
6    A.   I don't recall.
7    Q.   Okay.  Is it possible that you
8  obtained a prepublication version of the
9  article that had not yet officially been
10  published in the Journal of Clinical
11  Gastroenterology?
12    MS. SEVERANCE:  Objection.
13  Form.
14    THE WITNESS:  I don't know.
15  BY MR. ALPER:
16    Q.   And did you share the article
17  that's at Exhibit 20, the FMT article from
18  Drs. Khoruts and Sadowsky, with anyone?
19    A.   I don't recall.
20    Q.   Okay.  Do you have any idea as
21  to when the FMT article from Drs. Khoruts and
22  Sadowsky that's Exhibit 20 was published?
23    A.   No.
24    Q.   Okay.  All right.  Let me ask

1  Number 0?
2    MS. SEVERANCE:  Objection.
3  Form.
4    THE WITNESS:  I don't know.
5  BY MR. ALPER:
6    Q.   I mean, typically journals
7  would start at Volume 1 or, you know, have
8  some -- they wouldn't start at zero.  Is that
9  generally your experience?
10    MS. SEVERANCE:  Objection.
11  Form.
12    THE WITNESS:  Yes.
13  BY MR. ALPER:
14    Q.   Is the FMT article that's
15  Exhibit 20 from Dr. Khoruts and Dr. Sadowsky,
16  is this a draft of an article that had not
17  yet been published?
18    MS. SEVERANCE:  Objection.
19  Form.
20    THE WITNESS:  I don't know.
21  BY MR. ALPER:
22    Q.   Okay.  And I'm sorry if I
23  already asked this, but once I gave you that
24  context, it's probably worth reasking.  So

1  you a few questions about the acquisition by
2  Ferring.  So I'll just give you a preview of
3  what I'm going to be asking about.  It's
4  going to be a very specific aspect of the
5  acquisition.
6    I'd like to ask you some
7  questions about the original merger agreement
8  and then the settlement agreement that I've
9  seen that came after that.  So let me start
10  with the original acquisition agreement.  So
11  here's my question.
12    In the original acquisition
13  agreement, is it correct that you were to be
14  compensated in a series of milestones?  Is
15  that correct?  Or at least that's part of
16  your compensation?
17    A.   Milestones and royalties, yes.
18    Q.   Yes.  Okay.  So, sorry.  I
19  should have done it that way from the
20  beginning.  In the March two thousand --
21  withdrawn.
22    The agreement for the merger
23  between Rebiotix and Ferring, that was --
24  that's dated March 2018, correct?

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

1    A.    Correct.
2    Q.    And in that March 2018
3  agreement, you were to be compensated in two
4  forms.  One was a series of milestone
5  payments, in other words, payments that went
6  to you when Rebiotix hit certain milestones,
7  and then, secondly, royalties on sales of
8  Rebiotix's FMT product, correct?
9    A.    You're missing the upfront
10  payment as well.
11    Q.    Ah.  Okay.  So let me do that
12  again.
13          In the March 2018 merger
14  agreement, you were to be compensated in
15  three ways.  One was an upfront payment;
16  second, a series of milestone payments when
17  Rebiotix hit certain milestones in product
18  development; and then, third, you would get
19  royalties from Rebiotix's sales of its
20  products, correct?
21    A.    Correct.
22    Q.    And in the original merger
23  agreement, there was also a provision
24  regarding adjustments that could be made to

1  those amounts where the -- those amounts
2  would be adjusted down if Rebiotix was
3  required to take patent licenses or expend
4  money in defending its products against
5  licensing demands; is that correct?
6          MS. SEVERANCE:  Objection.
7  Form.
8          THE WITNESS:  Yes.
9  BY MR. ALPER:
10    Q.    Okay.  And when the merger
11  agreement was put together, did anyone on
12  your side for Rebiotix or anyone on the
13  Ferring side have Dr. Borody's patents or the
14  University of Minnesota patents in mind when
15  putting in that section on the downward
16  adjustments that would have to be made to
17  your payments in view of patent licensing?
18          MS. SEVERANCE:  I'm going to
19  caution the witness not to reveal the
20  substance of any attorney-client
21  communications.  You can answer that to the
22  extent your response would not reveal such
23  communications to the extent they exist.
24          THE WITNESS:  I don't recall.

1  BY MR. ALPER:
2    Q.    Okay.  So would your answer
3  have been different without your counsel's
4  instruction?
5    A.    Yes.
6    Q.    Okay.  So there is information
7  that you recall that's responsive to my
8  question; it's just attorney-client
9  communication information.  Is that what
10  you're saying?
11    A.    Yes.
12    Q.    Okay.  So but for your
13  attorney's instruction, you could answer my
14  question with, you know, actual facts other
15  than saying you don't recall.
16    A.    I think I answered your
17  question with actual facts.
18    Q.    Okay.  Well, that's what I'm
19  trying to get at.  I just want to make sure I
20  understand.  So I think I do.  Okay.  I think
21  we got it.
22          And you're not providing
23  attorney -- just to -- this is one of those
24  things that I've been following up all day,

1  so let me do it here.
2          You're not providing
3  attorney-client communication information in
4  response to my question because you're
5  following your attorney's instruction,
6  correct?
7    A.    Correct.
8    Q.    Okay.  When -- withdrawn.
9          In August 2022, you and some of
10  your other colleagues from Rebiotix entered
11  into a settlement agreement with Rebiotix,
12  correct?  I'm sorry.  Sorry.  Scratch that.
13          In August 2022, you and some of
14  your other colleagues from Rebiotix entered
15  into a settlement agreement with Ferring,
16  correct?
17    A.    Correct.
18    Q.    And the settlement agreement
19  modified the payment provisions from the
20  March 2018 merger agreement; is that correct?
21    A.    Yes.
22    Q.    And that was part of a release
23  of liability that was being granted in that
24  agreement, right?

77 (Pages 302 - 305)

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

1          MS. SEVERANCE:  Objection.
2    Form.
3          THE WITNESS:  It was part of a
4    large agreement.
5    BY MR. ALPER:
6        Q.    Okay.  Let me ask you -- come
7    at this much more simply.
8          Why did you enter into the
9    settlement agreement in August 2022?
10       A.    Basically, both sides agreed
11   that it made sense to renegotiate the
12   agreement and to substitute a long, expensive
13   stream of potential milestones and royalty
14   payments for a discounted but immediate or
15   close to immediate payment, payout.
16       Q.    And in August 2020 --
17   withdrawn.  August 2022 was after --
18   withdrawn.
19         You executed the settlement
20   agreement after Ferring filed this
21   litigation, in other words, filed the
22   litigation on Finch's patents, correct?
23         MS. SEVERANCE:  Objection.
24   Form.

Page 306

1    through correspondence, conversations,
2    e-mails, a letter, raised a claim to Ferring?
3        A.    I don't know.
4        Q.    Okay.  Had you raised any
5    claims to Ferring?
6        A.    No.
7        Q.    At the time of the settlement
8    agreement or prior to the time of the
9    settlement agreement, had Ferring raised any
10   claims against you or any of your colleagues?
11       A.    I don't know.
12       Q.    And had Ferring raised any
13   claims against you specifically?
14       A.    Not that I'm aware of.
15       Q.    Okay.  The agreement from
16   August 2022 itself is referred to as a
17   settlement agreement.
18         Why is it called a settlement
19   agreement?  What was it settling?
20       A.    Good question.  I don't know.
21         MR. ALPER:  Okay.  So let me --
22   I'd like to mark a couple of exhibits.  Okay.
23   Let's mark tab 65.  That's the merger
24   agreement.  I think that's going to be

Page 308

1          THE WITNESS:  That's my
2    understanding.
3    BY MR. ALPER:
4        Q.    And had -- withdrawn.
5          At the time of the settlement
6    agreement, had either side raised potential
7    claims against each other?
8          MS. SEVERANCE:  Objection.
9    Form.
10         MR. ALPER:  Withdrawn.  Let me
11   say that a better way.
12   BY MR. ALPER:
13       Q.    At the time of the settlement
14   agreement, had you or any of your colleagues
15   at Rebiotix raised any claims or claims for
16   liability against Ferring?
17       A.    Meaning that we sued Ferring?
18   Is that your question?
19       Q.    No.  A little more broad than
20   that.
21         At the time of the settlement
22   agreement, had you or any of your colleagues
23   at Rebiotix raised a claim to Ferring,
24   informally, in other words, said, hey, you know, informally,

Page 307

1    Exhibit 21.
2          (Exhibit 21 marked for
3    identification.)
4          THE WITNESS:  Okay.
5          MR. ALPER:  Then let's also
6    mark as Exhibit 22, tab 66, the settlement
7    agreement.
8          (Exhibit 22 marked for
9    identification.)
10         THE WITNESS:  Okay.
11   BY MR. ALPER:
12       Q.    Okay.  So let's -- and so let
13   me just first -- let's get oriented.
14         Exhibit 21, that's the
15   March 26, 2018 merger agreement between
16   Rebiotix and Ferring, correct?
17       A.    Yes.
18

Page 309

78 (Pages 306 - 309)

EXHIBIT 48-2 - OPPOSITION

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER



Page 310

Page 312

Page 311

Page 313

Veritext Legal Solutions
866 299-5127



Page 314

Page 315

Page 316

Page 317

Veritext Legal Solutions
866 299-5127

HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

1  [redacted]
2
3  Q.  Okay.
4  MR. ALPER:  Okay.  Let's go off
5  the record.
6  THE VIDEOGRAPHER:  It is
7  2:42 p.m.  This is the end of Media 8, and we
8  are off the record.
9  (Brief recess.)
10  THE VIDEOGRAPHER:  This is the
11  beginning of Media 9.  It is 2:53, and we're
12  back on the record.
13  MR. ALPER:  Sorry.  I had my
14  speaker off.  Did we go back on the record?
15  THE VIDEOGRAPHER:  Yes, we're
16  on.  Sorry.
17  MR. ALPER:  Okay.  Great.
18  Sorry about that.
19  Okay.  I'd like to mark tab 49,
20  please, as the next exhibit, which is
21  Exhibit 23.
22  (Exhibit 23 marked for
23  identification.)
24  BY MR. ALPER:

1  Q.  Okay.  Mr. Berman, Exhibit 23
2  is numbered BERMAN 7544.
3  A.  Yes.
4  Q.  And it's an e-mail from you to
5  Howard Sterling dated May 26, 2014, and the
6  subject is "Rebiotix Material"; is that
7  correct?
8  A.  Yes.
9  Q.  And it attaches a Rebiotix
10  slide deck, correct?
11  A.  Correct.
12  Q.  And who is Howard Sterling?
13  A.  I don't recall.
14  Q.  If we look at the Rebiotix
15  slide deck, which starts on the third page of
16  the exhibit -- it's BERMAN 7546 -- the deck
17  is called "Rebiotix: Harnessing the Power of
18  the Human Gut Microbiome," correct?
19  A.  Correct.
20  Q.  And it's dated April 2014,
21  right?
22  A.  Yes.
23  Q.  Who authored this PowerPoint?
24  A.  I don't know.

1  Q.  Were you involved in preparing
2  the Rebiotix PowerPoint that's Exhibit 23?
3  A.  I don't recall.
4  Q.  The Rebiotix PowerPoint that's
5  Exhibit 23 from April 2014, this was a
6  business plan-type document that was for
7  purposes of describing the company's plan to
8  potential investors?
9  A.  I'm taking a look at it.  Hold
10  on.  Yes.
11  Q.  Let's take a look at page 2 of
12  the Rebiotix April 2014 slide deck, and the
13  slide there is titled "Rebiotix - Microbiome
14  Therapy for GI Disease," correct?
15  A.  Yes.
16  Q.  And the first bullet says,
17  "Founded in 2011 to treat disease using the
18  Human Gut Microbiome."
19  Do you see that?
20  A.  Yes.
21  Q.  And that's referring to
22  Rebiotix.  It's saying Rebiotix was founded
23  in 2011, correct?
24  A.  Right.

1  Q.  And the founding of Rebiotix
2  was after the Hlavka FMT project at ConcepTx
3  was discontinued, correct?
4  A.  Correct.
5  Q.  If you go down two bullets,
6  there's a bullet that says, "1st mover to
7  commercialize this new class of biologic
8  drugs in U.S."
9  Do you see that?
10  A.  Yes.
11  Q.  And this is where you're
12  reporting to investors or potential investors
13  that Rebiotix is the -- has the first-mover
14  advantage in the FMT space, correct?
15  A.  Correct.
16  Q.  And as we discussed earlier,
17  that's one of the keys to obtaining
18  investment, right?
19  MS. SEVERANCE:  Objection.
20  Form.
21  THE WITNESS:  Yes.
22  BY MR. ALPER:
23  Q.  If we go to slide 7, slide 7 is
24  titled "Rebiotix Initial MRT Target -

81 (Pages 318 - 321)

EXHIBIT 18-2 OPPOSITION
HIGHLY CONFIDENTIAL UNDER THE PROTECTIVE ORDER

| | |
|---|---|
| 1 back on the record. | 1 confidential, too. We'll get in touch if |
| 2 BY MR. ALPER: | 2 there's anything further there. But I agree. |
| 3    Q. When you were at Rebiotix, do | 3    Thank you very much, |
| 4 you believe Rebiotix did what it should have | 4 Mr. Berman, for your time. |
| 5 to respect the intellectual property rights | 5    THE WITNESS: Thank you. |
| 6 of Dr. Borody and the University of | 6    THE VIDEOGRAPHER: It is |
| 7 Minnesota? | 7 3:26 p.m. This is the end of Media 11 and |
| 8    MS. SEVERANCE: Objection. | 8 also conclusion of this deposition, and we |
| 9 Form. | 9 are going off the record. |
| 10    THE WITNESS: Yes. | 10   (The deposition concluded at 3:26 p.m. EDT.) |
| 11 BY MR. ALPER: | 11    * * * * * |
| 12    Q. Do you think that every | 12 |
| 13 start-up business -- withdrawn. | 13 |
| 14    Do you think that every | 14 |
| 15 business needs a story? | 15 |
| 16    MS. SEVERANCE: Objection. | 16 |
| 17 Form. | 17 |
| 18    THE WITNESS: I don't know what | 18 |
| 19 you're talking about. | 19 |
| 20 BY MR. ALPER: | 20 |
| 21    Q. Did you have any involvement in | 21 |
| 22 the filing of this -- withdrawn. | 22 |
| 23    Did you have any involvement in | 23 |
| 24 the decision to file this lawsuit? | 24 |
| Page 338 | Page 340 |

| | |
|---|---|
| 1    A. No. | 1 |
| 2    MR. ALPER: Okay. All right. | 2    C E R T I F I C A T I O N |
| 3 I -- those are all the questions that I have. | 3 |
| 4    MS. SEVERANCE: Okay. Let's | 4    I, Patricia R. Frank, a Registered Merit |
| 5 just take a short few-minute break and then | 5 Reporter, Certified Realtime Reporter, and Notary |
| 6 we'll come back on. | 6 Public of the State of Delaware, do hereby certify |
| 7    THE VIDEOGRAPHER: Okay. It is | 7 that I reported the deposition in the |
| 8 3:24. This is the end of Media 10, and we're | 8 above-captioned matter; that the said witness was |
| 9 off the record. | 9 duly sworn by me; that the foregoing is a true and |
| 10    (Brief recess.) | 10 correct transcript of the stenographic notes of |
| 11    THE VIDEOGRAPHER: This is the | 11 testimony taken by me in the above-captioned matter. |
| 12 beginning of Media 11. It is 3:26, and we | 12    I further certify that I am not an |
| 13 are back on the record. | 13 attorney or counsel for any of the parties, nor a |
| 14    MS. SEVERANCE: I have no | 14 relative or employee of any attorney or counsel |
| 15 questions for the witness. I would like to | 15 connected with the action, nor financially |
| 16 thank him for his time. I would also like to | 16 interested in the action. |
| 17 mark the transcript "Highly Confidential | 17 |
| 18 under the Protective Order." | 18 |
| 19    MR. ALPER: Oh, sorry. We | 19    Patricia R. Frank, RMR #9764 |
| 20 should probably do that. We'll just | 20    Patricia R. Frank, RMR #9764 |
| 21 prophylactically, if there's any -- I'm not | 21 |
| 22 sure that there was -- whether there was any | 22 Dated: May 12, 2023 |
| 23 of our side's information in this deposition, | 23 |
| 24 but if there was, we should mark that as | 24 |
| Page 339 | Page 341 |

86 (Pages 338 - 341)

EXHIBIT 48-2 - OPPOSITION

# PTX-57

EXHIBIT 48 – OPPOSITION

Execution Version

**PTX-57**

Ferring Pharmaceuticals Inc.
v. Finch Therapeutics Grp.,
Inc., C.A. No. 21-1694 (JLH)

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02976271

PTX-57.0001

EXHIBIT 48-2 – OPPOSITION



2

HIGHLY CONFIDENTIAL
INFORMATION

PTX-57.0002

EXHIBIT 48 - OPPOSITION



3

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02976273

PTX-57.0003

EXHIBIT 48-2 - OPPOSITION



4

HIGHLY CONFIDENTIAL
INFORMATION

EXHIBIT 48-2 OPPOSITION



5

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02976275

PTX-57.0005

EXHIBIT 48 - OPPOSITION



HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02976276

PTX-57.0006

EXHIBIT 48-2 - OPPOSITION



\* \* \*

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02976277

PTX-57.0007

IN WITNESS WHEREOF, each of the Parties has caused this Settlement Agreement to be executed by its duly authorized representative as of the day and year first above written.

FERRING HOLDING INC.

By:

Name: Brent Ragons
Title: President

Name: JEFF McCONAGHY
Title: Chief Financial Officer

REBIOTIX INC.

By:

Name: Brent Ragons
Title: President

Name: Jeff McConaghy
Title: Chief Financial Officer

REBIOTIX REPRESENTATIVE, LLC

By:

Name: Erwin Kelen
Title: Sellers' Representative

*SIGNATURE PAGE TO SETTLEMENT AGREEMENT*

HIGHLY CONFIDENTIAL
INFORMATION

EXHIBIT 48-2 - OPPOSITION

IN WITNESS WHEREOF, each of the Parties has caused this Settlement Agreement to be executed by its duly authorized representative as of the day and year first above written.

FERRING HOLDING INC.

By:

_____

Name:
Title:

_____

Name:
Title:

REBIOTIX INC.

By:

_____

Name:
Title:

REBIOTIX REPRESENTATIVE, LLC

By:

_____

Name: Erwin Kelen
Title: Sellers' Representative

*SIGNATURE PAGE TO SETTLEMENT AGREEMENT*

HIGHLY CONFIDENTIAL
INFORMATION

PTX-57.0009

EXHIBIT 48-2 - OPPOSITION

# PTX-204 (EXCERPTS)

CONFIDENTIAL – DO NOT SHARE





PTX-204

Ferring Pharmaceuticals Inc.
v. Finch Therapeutics Grp.,
Inc., C.A. No. 21-1694 (JLH)

## INFORMATION STATEMENT

March 27, 2018



HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797880

PTX-204.0001

EXHIBIT 48-2 – OPPOSITION

CONFIDENTIAL – DO NOT SHARE

The Board of Directors requests that you sign, date and return all of the signature pages in the Signature Page Packet as soon as possible. **Please return your signature pages by email to eleanor.wood@stinson.com or by facsimile to 612-335-1657 with Attention: Eleanor Wood, with the originals following by overnight delivery to Stinson Leonard Street LLP, Attention: Eleanor Wood, Esq., 50 South Sixth Street, Suite 2600, Minneapolis, Minnesota, 55402.**

**The attached Information Statement is confidential.  Please do not disseminate the Information Statement except to your personal advisors as necessary to determine whether to grant your consent.**

We thank you for your continued support of Rebiotix.  If the Merger is approved by all of our Stockholders, Noteholders and Optionholders, and the other closing conditions are met or waived, we expect the Merger to close in late March or early April 2018.  If you have any questions, please contact me at 612-961-2956 or Greg Fluet at 307-690-6438.

We will also be holding conference calls at the following dates and times to answer any questions you may have. To join in the conference calls, please dial the following numbers at the start of the call time:

**Dial:  (641) 715-0712**
**Enter access code: 347847#**

**Tuesday, March 27, 2018 at 3:00 p.m. CST**
**Wednesday, March 28, 2018 at 3:00 p.m. CST**
**Friday, March 30, 2018 at 9:00 a.m. CST**

Thank you for your prompt attention to this request.

Very truly yours,

Lee Jones, President and CEO

---

**The information contained in this Information Statement is highly confidential and the terms of the transaction have not been publicly disclosed.  Nothing contained in this Information Statement should be disclosed to any person or used for any purpose other than as expressly contemplated in this Information Statement.  Any unauthorized disclosure of this Information Statement or any information contained herein will be deemed by Rebiotix to be a violation of any confidentiality obligations you have to Rebiotix.**

**Each Stockholder and Noteholder must pursue its own independent evaluation and make such investigation as it deems appropriate in deciding whether to execute the documents described in this Information Statement.  The information contained in this Information Statement is not intended to be legal, tax or financial advice.  You are strongly advised to consult your own counsel, accountant and financial advisor, as appropriate, as to legal, tax and other matters concerning the merger and the related matters described in this Information Statement.**

**The information contained in this Information Statement summarizes the more detailed information contained in the Merger Agreement (attached as Exhibit B) and is qualified in its entirety by reference to such document.  Stockholders and Noteholders are urged to carefully review the Merger Agreement in its entirety.**

HIGHLY CONFIDENTIAL
INFORMATION

EXHIBIT 48 – OPPOSITION

CONFIDENTIAL – DO NOT SHARE

## INFORMATION STATEMENT TABLE OF CONTENTS

QUESTIONS AND ANSWERS ABOUT THE MERGER ........................................................... 1

CAUTIONARY NOTE REGARDING FORWARD-LOOKING STATEMENTS ...................... 4

BACKGROUND OF THE MERGER ..................................................................................... 5

AMENDMENT TO CERTIFICATE OF INCORPORATION .................................................... 9

ESTIMATED PAYMENTS TO SELLERS ............................................................................ 10

INTERESTS OF CERTAIN PERSONS IN THE TRANSACTION .......................................... 16

THE MERGER AGREEMENT ........................................................................................... 17

DISCUSSION OF TAX ASPECTS...................................................................................... 25

### EXHIBITS

| | |
|---|---|
| Written Consent of Stockholders Approving the Merger and the Amendment ............................... | **Exhibit A** |
| Agreement and Plan of Merger ........................................................................ | **Exhibit B** |
| Certificate of Amendment to the Amended and Restated Certificate of Incorporation .................. | **Exhibit C** |
| Notice of Stockholder Action by Written Consent Pursuant to Section 228(e) of the DGCL ........... | **Exhibit D** |
| Notice of Appraisal Rights Pursuant to Section 262(d)(2) of the DGCL ........................................ | **Exhibit E** |
| Letter of Transmittal (For Stockholders) ............................................................. | **Exhibit F-1** |
| Letter of Transmittal (For Noteholders)............................................................... | **Exhibit F-2** |
| SIGNATURE PAGE PACKET........................................................................... | **Exhibit G** |

EXHIBIT 48 - OPPOSITION

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797892

PTX-204.0013

EXHIBIT 48 - OPPOSITION

11

HIGHLY CONFIDENTIAL
INFORMATION

PTX-204.0014

EXHIBIT 48 - OPPOSITION



12

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797894

PTX-204.0015

EXHIBIT 48 - OPPOSITION



13

HIGHLY CONFIDENTIAL
INFORMATION

PTX-204.0016

EXHIBIT 48 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE



14

HIGHLY CONFIDENTIAL
INFORMATION

PTX-204.0017

EXHIBIT 48 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE



\* \* \* \* \*

15

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797897

PTX-204.0018

EXHIBIT 48 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE



16

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797898

PTX-204.0019

EXHIBIT 48 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE



¹ Optionholders will receive Aggregate Consideration on the same terms as Stockholders except as described below.

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797899

PTX-204.0020

EXHIBIT 48 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE



18

HIGHLY CONFIDENTIAL
INFORMATION

PTX-204.0021

EXHIBIT 48 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE



19

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797901

PTX-204.0022

CONFIDENTIAL – DO NOT SHARE



20

HIGHLY CONFIDENTIAL
INFORMATION

EXHIBIT 48 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE



21

HIGHLY CONFIDENTIAL
INFORMATION

PTX-204.0024

EXHIBIT 48 - IN OPPOSITION

CONFIDENTIAL – DO NOT SHARE



22

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797904

PTX-204.0025

EXHIBIT 48 - IPR OPPOSITION

CONFIDENTIAL – DO NOT SHARE



23

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797905

EXHIBIT 48 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE



24

HIGHLY CONFIDENTIAL
INFORMATION

PTX-204.0027

EXHIBIT 48 – OPPOSITION

CONFIDENTIAL – DO NOT SHARE



* * * * *

25

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797907

PTX-204.0028

EXHIBIT 48-2 - OPPOSITION

CONFIDENTIAL – DO NOT SHARE

## EXHIBIT B

## AGREEMENT AND PLAN OF MERGER

See attached.

HIGHLY CONFIDENTIAL
INFORMATION

PTX-204.0035

EXHIBIT 48-2 (OPPOSITION

EXECUTION VERSION

AGREEMENT

AND PLAN OF MERGER

BY AND AMONG

FERRING HOLDING INC.;

REBIOTIX MERGER SUB, INC.;

REBIOTIX INC.;

THE SIGNING HOLDERS AND

REBIOTIX REPRESENTATIVE, LLC

(IN ITS SOLE CAPACITY AS THE SELLERS' REPRESENTATIVE).

Dated as of March 26, 2018

24184240.22.BUSINESS

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797915

PTX-204.0036

EXHIBIT 48 - OPPOSITION



24184240.22.BUSINESS

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797916

PTX-204.0037

EXHIBIT 48 - OPPOSITION



24184240.22.BUSINESS

-2-

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797917

PTX-204.0038

EXHIBIT 48 - OPPOSITION



HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797983

PTX-204.0104

EXHIBIT 48 - OPPOSITION



HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797984

PTX-204.0105

EXHIBIT 48-2 - OPPOSITION

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

FERRING HOLDING INC.

By: _____
Name: Stefan Vaughn
Title: Chief Financial Officer

By: _____
Name:
Title:

[Signature page to Merger Agreement]

HIGHLY CONFIDENTIAL
INFORMATION

EXHIBIT 48-2 - OPPOSITION

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed as of the date first above written.

**FERRING HOLDING INC.**

By: _____
Name:
Title:

By: _____
Name: Paul Navarre
Title:

[Signature page to Merger Agreement]

HIGHLY CONFIDENTIAL
INFORMATION

PTX-204.0107

EXHIBIT 48-2 - OPPOSITION

REBIOTIX MERGER SUB, INC.

By: _____

Name: Paul Navarre

Title:  President

[Signature page to Merger Agreement]

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797987

PTX-204.0108

EXHIBIT 48-2 - OPPOSITION

REBIOTIX INC.

By: _____

Name: Lee Jones

Title:   Chief Executive Officer

[Signature page to Merger Agreement]

HIGHLY CONFIDENTIAL
INFORMATION

FER_RBX02797988

PTX-204.0109

**SELLERS' REPRESENTATIVE**

Rebiotix Representative, LLC

By: _____

Erwin Kelen, its Manager

[Signature page to Merger Agreement]

HIGHLY CONFIDENTIAL
INFORMATION

**PROPOSED PRETRIAL ORDER**

# EXHIBIT 18.2

**FERRING/REBIOTIX'S REPLY IN SUPPORT OF MOTION
*IN LIMINE* NO. 2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) ) ) ) C.A. No. 21-1694-JLH |
| Defendants. | ) ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) ) ) ) ) ) |
| Counterclaim-Plaintiffs/Reply Defendants, | ) ) |
| v. | ) ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) ) ) |
| Counterclaim-Defendants/Reply Plaintiffs. | ) ) |

**FERRING/REBIOTIX'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 2**

Finch's opposition fails to provide any genuine reason to deny Ferring's motion *in limine*. Finch overstates the probative value of the evidence regarding Ms. Jones and Mr. Berman's compensation from the Ferring-Rebiotix merger and understates the prejudicial harm that will inevitably result from introduction of such evidence. These past payments are in no way contingent on this suit, or whether the REBYOTA succeeds in the marketplace. The are not probative of bias.

**First,** Finch provides no reason as to why evidence of Ms. Jones's and Mr. Berman's roles at Rebiotix at the time of the merger is inadequate to test witness bias. Given the alternative evidence available, exclusion of compensation evidence does not impede Finch's ability to inquire into any potential bias or the jury's ability to assess witness credibility.

**Second,** Finch contends that "there is nothing unfairly prejudicial about this factual information" (PTO Ex. 18-2-Opp'n at 1), and yet, in one of the cases Finch cites, the court only allowed disclosure of a party's salary and bonus structure "under a protective order, for attorney's eyes only." *Hayes v. Compass Grp. USA, Inc.*, 202 F.R.D. 363, 365 (D. Conn. 2001). Finch concedes that evidence of Ms. Jones and Mr. Berman's personal wealth should be excluded. Yet, Finch claims that evidence of the payment arising from the Ferring-Rebiotix merger can be raised without any implication as to Ms. Jones's and Mr. Berman's personal wealth or financial status. This is impossible. Any evidence regarding the compensation resulting from the merger unavoidably refers to Ms. Jones's and Mr. Berman's financial status and personal wealth. What Finch really wants is to present this evidence to set a benchmark for its damages claim. That, of course, would be improper. If the Court allows any evidence on this issue, it should be limited to the fact that Ms. Jones and Mr. Berman received compensation. It should not include the amount of that compensation.

Dated: July 15, 2024

*Of Counsel:*

Daralyn J. Durie
Matthew Chivvis
Rachel Dolphin
Ramsey Fisher
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415-268-6055
ddurie@mofo.com
mchivvis@mofo.com
rdophin@mofo.com
rfisher@mofo.com

Whitney O'Byrne
Sara Doudar
MORRISON & FOERSTER LLP
701 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213-892-4345
wobyrne@mofo.com
sdoudar@mofo.com

WOMBLE BOND DICKINSON (US) LLP

*/s/ Mary W. Bourke*
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
Zachary Murphy (#6881)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Mary.Bourke@wbd-us.com
Dana.Severance@wbd-us.com
Daniel.Attaway@wbd-us.com
Zachary.Murphy@wbd-us.com

John B. Bourke (#6534)
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 765-6267
Ben.Bourke@wbd-us.com

*Attorneys for Ferring Pharmaceuticals Inc.
and Rebiotix Inc.*

PROPOSED PRETRIAL ORDER

# EXHIBIT 18.4

## FERRING/REBIOTIX'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PURPORTED COPYING

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 21-1694-JLH |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) |
| | ) **FILED UNDER SEAL** |
| | ) |
| Defendants. | ) |
| | ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) |
| | ) |
| Counterclaim-Plaintiffs/Reply Defendants, | ) |
| | ) |
| v. | ) |
| | ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) |
| | ) |
| Counterclaim-Defendants/Reply Plaintiffs. | ) |

**FERRING/REBIOTIX'S MOTION IN LIMINE TO
EXCLUDE EVIDENCE OF PURPORTED COPYING**

## I.   INTRODUCTION

Ferring Pharmaceuticals Inc. and Rebiotix Inc. (collectively "Ferring") move to preclude Finch Therapeutics Group, Inc., Finch Therapeutics, Inc, Finch Therapeutics Holdings, LLC, and Regents of the University of Minnesota (collectively "Finch") from introducing evidence or argument regarding Ferring's purported "copying" of work done at the University of Minnesota ("UMN") to support its allegations of induced and willful infringement as well as a secondary consideration of non-obviousness. Finch has indicated that it intends to introduce evidence Lee Jones, one of the founders of Rebiotix, (i) signed a Non-Disclosure Agreement ("NDA") with UMN; (ii) improperly accessed UMN documents evaluating the protectability and business opportunity for fecal microbiota transplantation ("FMT") and a confidential version of the provisional application (*e.g.,* Ex. 1; Ex. 2); and (iii) ███████████████████████████ ██████████████ (*see, e.g.,* Ex. 3). Such evidence is irrelevant under Federal Rule of Evidence 402 and unfairly prejudicial and misleading under Federal Rule of Evidence 403.

## II.   ARGUMENT

### A.   Evidence of Purported Copying Should Be Excluded As Irrelevant

First, Ferring will not argue at trial that the UMN patents are invalid under 35 U.S.C. § 103. Therefore, secondary considerations of obviousness, including any argument that Ferring copied UNM's work, are not relevant. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966) (the relevance of secondary considerations is "as indicia of obviousness or nonobviousness"). As a result, Finch should be precluded from offering any evidence, argument, or testimony related to purported copying as a secondary consideration of obviousness.

Second, Finch's evidence of purported copying is not probative of inducement or willful infringement because all of the alleged copying activity occurred years before any of the asserted claims issued. The '914 patent was issued on April 9, 2019 and the '012 patent was issued on

May 14, 2019. Finch's evidence of purported copying reflects events that occurred many years

before. The NDA between Lee Jones and UMN was signed in April 2011. Similarly, the UMN

documents assessing patentability and business opportunity were provided to Ms. Jones when

she was a CEO-in-residence at UMN, a position she held until June 2011. ███████████

███████████████████████████████████████████████. All of

this evidence pre-dates the issuance of the UMN patents by years.

 Absent a showing of "particularly egregious behavior" pre-issuance evidence of copying

should be excluded. *Sonos, Inc. v. D&M Holdings Inc.*, No. 14-1330-WCB, 2017 WL 5633204,

at *4 (D. Del. Nov. 21, 2017). Here, Finch's evidence of purported copying does not rise to the

level of "consciously wrongful," "malicious behavior" required in this District for admission of

pre-issuance evidence and should be excluded. *Bioverativ Inc. v. CSL Behring LLC*, No. 17-914-

RGA, 2020 WL 1332921, at *3-4 (D. Del. Mar. 23, 2020). Indeed, the product Ferring

developed (REBYOTA®, an enema) is indisputably different than the product that Finch and

UMN tried and failed to develop (CP101, a pill). *Compare Milgo Elec. Corp. v. United Bus.*

*Commc'ns, Inc.,* 623 F.2d 645, 652, 665-66 (10th Cir. 1980) (pre-issuance evidence of copying

considered where alleged-infringer reproduced an exact replica of plaintiff's product).

 Third, the anticipated evidence of purported copying is not relevant to any other fact at

issue. Finch is not asserting any breach of contract claim. Accordingly, whether Ms. Lee Jones

entered into an NDA with UMN is irrelevant to the question of infringement. Similarly, whether

Ms. Jones received documents describing UMN's evaluation of protectability of its inventions

and proposed business plan sheds no light on whether any alleged infringement was induced or

intentional. At most, this evidence would show only that Ms. Jones had access to *business*

information from UMN, but not that it was used to develop the accused product. Finally, whether

Ms. Jones at one time referred to the work of the UMN inventors in a draft business plan is irrelevant to whether Ferring induced or willfully infringed the *claimed inventions*.

**B.    Alternatively, Evidence of Purported Copying Should Be Excluded Because It Will Confuse the Issues, Mislead the Jury, and Create Undue Prejudice.**

To the extent the Court determines that pre-issuance evidence of copying is relevant, it should still be excluded under Rule 403 as unduly prejudicial and likely to confuse and mislead the jury. Any minimal relevance that these three categories of evidence may have with respect to the parties' claims and defenses is substantially outweighed by its prejudicial effect and propensity to mislead and confuse the jury. If Finch is allowed to argue that Ferring copied the asserted claims, the jury will be led to conflate copying with infringement—allowing Finch to circumvent its burden to show infringement. *Shure Inc. v. ClearOne, Inc.*, No. 19-1343-RGA, 2021 WL 4974001, at *2 (D. Del. Oct. 26, 2021). *See also, Finjan, Inc. v. Blue Coat Sys.*, *Inc.*, No. 13-CV-3999-BLF, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015) ("[T]here is significant prejudice associated with this evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products *infringe* the patents-in-suit.") (emphasis in original). Moreover, Finch has not asserted a breach of contract claim. Thus, allowing Finch to point to the ████████████████████████████████████ and introduce evidence and argument implying ████████████████████ carries a high likelihood of confusing the jury as to Finch's actual claims.

**III.    CONCLUSION**

For the foregoing reasons, Ferring respectfully requests that the Court preclude Finch from presenting evidence or argument regarding purported copying, including that Ms. Lee Jones, (i) signed an NDA with UMN; (ii) received documents evaluating the protectability and business opportunity for FMT and a confidential version of the provisional application; and (iii) referred to the UMN inventors in drafts of a proposed business plan.

Dated: June 27, 2024

*Of Counsel:*

Daralyn J. Durie
Matthew Chivvis
Rachel Dolphin
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415-268-6055
ddurie@mofo.com
mchivvis@mofo.com
rdophin@mofo.com

Sara Doudar
MORRISON & FOERSTER LLP
701 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213-892-4345
sdoudar@mofo.com

WOMBLE BOND DICKINSON (US) LLP

*/s/ Mary W. Bourke*
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
Zachary Murphy (#6881)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Mary.Bourke@wbd-us.com
Dana.Severance@wbd-us.com
Daniel.Attaway@wbd-us.com
Zachary.Murphy@wbd-us.com

John B. Bourke (#6534)
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 765-6267
Ben.Bourke@wbd-us.com

*Attorneys for Ferring Pharmaceuticals Inc.
and Rebiotix Inc.*

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-4**

**Exhibit 1 to Ferring/Rebiotix's Motion in Limine No. 4**

| Docket No.: | 20100243 | | |
|---|---|---|---|
| Docket Title: | Intestinal Microbial Flora Reconstituent for Treatment of Clostridium difficile associated disease and other Intestinal Maladies. | | |
| Disclosure Date: | 6/14/2010 | Strategy Manager: | Chad Kieper |
| | | Marketing Manager: | |
| | | Venture Center Lead: | |
| Inventor: | Alex Khoruts, Mike Sadowsky, Matthew Hamilton | | |
| Department: | Medicine, BioTechnology Institute, Dental School | | |
| Encumbrances: | | | |
| Funding: | MMF, Grant-in-aid of Research | | |
| Available Patent Rights: | US ☒ | Foreign ☒ | |
| Bar Dates: | March 9th, 2011 – poster presentation | | |
| Industry: | Human Health & Vet Medicine | Pharmaceutical | |
| Patenting Supports: | Commercially Attractive Sponsored Research University Priorities Public Good | | |

| Technology |
|---|
| **Description of Technology** |

| Problem Solved / Business Application: | • Clostridium difficile (C-diff) infections account for ~$1-4B in medical costs per year in the US. Current treatment options are antibiotics, which are curative in 75% of patients, but a significant number of patients continually relapse. A standard course of antibiotics can cost anywhere from a few hundred to a few thousand dollars, but can creep up to $20k for patients with reoccurring disease.<br>• The primary application of this technology is to treat patients with refractory and/or recurrent Clostridium difficile colitis. Secondary applications include treating patients with dysbiotic intestinal microflora that may be induced by antibiotic treatments or underlying gastrointestinal disease. |
|---|---|
| Description:<br><br>(From market perspective, describe the product or process enabled by the discovery) | • Standardized method and formulation of intestinal microbiota derived from human fecal material for Treatment of C. Diffcile Associated Disease and other microbiologically-mediated intestinal disorders. |

| | |
|---|---|
| **Advantages:**<br><br>(Examples: cheaper; faster; better; new; green, etc) | • Fecal bacteriotherapy, also known as fecal transplantation and fecal transfer, is performed by administration of fresh, homogenized fecal material directly from the donor feces into a patient by way of nasogastric tube administration, enema, or colonoscopy. The goal of our proposal is to develop a standardized formulation of fecal bacteria preserved and possibly grown outside the human donor. Existing technologies also include a number of so-called probiotics, which are based on monocultures or consortia of microorganisms. Our method is different in that it aims to maintain a greater degree of complexity of microbiota that is closer to the composition of human intestinal microbiota. Also, our preparation is based entirely on natural intestinal microorganisms, which are adapted to the intestinal environment, and are present in feces of healthy humans. This contrasts with the majority of current probiotic formulations that contain organisms that aren't necessarily adapted to the human intestine and are not able to compete well with native microflora.<br>• Fecal bacteriotherapy today is impractical because of time constraints and aesthetic limitations involved in the procedure. In addition, the procedure requires screening fo donors for a variety of diseases, which adds to the cost of the procedure and imposes additional time delays. Use of different donors for each patient makes it difficult to estimate potential risks of the procedure, and to compare effectiveness of the treatment, and microflora reconstitution between patients. None of the current probiotics that use microorganisms cultured outside the human colon have been shown to have significant therapeutic efficacy. Availability of a standardized formulation of fecal microbiota should solve all of these problems. Such a product would be easy to administer, whether done rectally or orally, easily available to any practitioners, and minimize time delays associated with donor screenings. Of course, this product will also be therapeutically highly effective in contrast current probiotics. |
| **Related Technologies:** | |
| **Technology Position:** | ☐ Alternative      ☒ Incremental      ☐Leapfrog |

CONFIDENTIAL INFORMATION                    FER_RBX02724819

| Stage of Development: | • We have an active clinical program for doing fecal bacteriotherapy. We are the first laboratory to demonstrate that this procedure does lead to colonization of patients with the donor bacteria. We are now beginning to use frozen fecal material for the procedure instead of fresh fecal material. The next steps will include lyophilizing the preparation and growing the fecal bacterial poly-cultures in an anaerobic bioreactor. We will also physically fractionate bacteria present in fecal material to discern the "active microbial fraction" that is involved in the reconstitution of intestinal microbiota resulting in a cure of disease symptoms. <br> • The ultimate goal is to create an enteric-release capsule or standard enema preparation. |
|---|---|
| Comments: | |

## Action

| Stage 1 | | Stage 2 | | Stage 3 | |
|---|---|---|---|---|---|
| IP Action | Date | IP Action | Date | IP Action | Date |
| ☐ Close | | ☐ Close | | ☐ Close | |
| ☐ Watch & Hold | | ☐ Watch & Hold | | ☐ File | |
| ☒ Continue | 6/23/2010 | ☒ File Provisional | 3/2/2011 | | |
| ☐ Other: | | ☐ Continue | | | |
| | | ☐ Copyright | | | |
| Recommendation/Rationale: | | Recommendation/Rationale: <br> • $2k to file a provisional with David Provence. <br> • Potentially weak patent claims, but this technology possesses a clearly defined initial market, regulatory path, and clinical roadmap. | | Recommendation/Rationale: | |
| Marketing Status: | | ☐ Market | | ☐ Market | |
| | | Brief Description of Activity: | | Brief Description of Activity: | |

## Primary Assessment

### Commercialization Potential

| • Product description <br> • Customer \| end user \| ID <br> • Potential market size, growth rate, dynamics <br> • Fields of Use \| Market size by field <br> • Unmet market need <br> • Market contacts \| perceived value (EOC; VOC) <br> • Competing technologies \| Alternatives <br> • Prospective licensee or start-up identified or expressed interest \| NDA | Green |
|---|---|

CONFIDENTIAL INFORMATION                    FER_RBX02724820

| | |
|---|---|
| executed | |
| • Predisposition of industry to licensing or to funding start-ups | |
| • Development status – short time to milestones | |
| • Innovation Grant – What milestones could be achieved with grant? | |
| • Regulatory status | |

- Clostridium difficile "C-diff" overview:
    1. Responsible for 15-20% of all antibiotic-related diarrhea cases (~3-4 million cases annually in the US)
    2. Mortality rates have doubled from 2000 to 2005.
    3. The incidence of C. difficile diarrhea has risen dramatically in recent decades – growing at a rate of ~20% per year since 2000.
    4. Accounts for considerable increases in the length of hospital stays and more than $1.1B in healthcare costs (2005 numbers – current estimates are around $3-4B/year).
    5. In the hospital setting, C-diff patients had the following outcomes versus controls:
        - Total hospital costs: $24k vs. $9k
        - Medication costs: $4k vs. $0.9k
        - Length of stay: 21.8 vs. 7 days
        - Mortality rates: 13.9% vs. 3.6%
    6. Twenty-five percent of patients will have a relapsing C-diff infection, and up to 5% of patients have 6 or more relapses.
    7. Approximately 3% of patients develop severe C-diff infections, and the mortality rate in these patients is 30-85%.
    8. Treatment options:
        - Metronidazole (500mg) orally 3-4 times a day for ~2 weeks.  Response rates are ~90%.  Cost = ~$200-300 for a 14 day course.
        - Vancomyocin (125-500mg) orally 4 times a day for ~2 weeks.  Response rates are ~90%.  Cost = ~$1700-2000 for a 14 day course.
        - Patients with perpetual recurrence will generally be kept on a single dose of Vancomyocin every day.  According to Dr. Khoruts (a practicing gastroenterologist) the current cost of a single dose of Vancomyocin is $60/day.  This would result in a burden of over $20k/year in drug costs.
- Problem solved: C-diff infections currently impact the healthcare industry with billions of excess dollars in hospital/clinic and treatment costs.  Standard treatment protocols (antibiotics) are beneficial, but recurrence occurs in 25% of the patients.
- Current fecal transfer procedures require the bulk transfer of donor material to the recipient via an enema, or delivery by endoscope.  These procedures are unwiedly to perform and the "ick" factor keeps many procedures from being performed, despite good clinical evidence of its efficacy.
- Regulation –
    1. According to Dr. Khoruts, he envisions this being regulated by the FDA similar to blood derived products.  This would involve a rigorous selection of donors and screening for pathogenic organisms.  The key is to have a standard process in place.
    2. There is currently a National Consortium of Gastroenterologists working to create a standardized method for fecal transfer.  The protocol they are using is based upon the "old" bulk transfer method.  What our inventors are working on would be an innovative step forward from the current methods.
- C-diff is the first indication, but published research indicates that other GI diseases might benefit from this therapy – such as Crohn's, Ulcerative Colitis, obesity, etc.
- Market Potential
    1. The inventors claim the costs of producing their product is minimal and requires basic laboratory equipment.  Production cost per dose should be less than $100.
    2. All C-diff patients (4M/year in the US), C-diff relapse patients (1M/year in the US).

References – Am. Family Physician 71:921(2005); Interscience Conf. on antimicrobial agents and chemotherapy 43:abstract K734(2003); Emerging Inf Diseases 14:929(2008).

CONFIDENTIAL INFORMATION                                                                                 FER_RBX02724821

| Protectability | |
|---|---|
| • Potential claim coverage and scope<br>• Patentability obstacles<br>• Patent activity in the field<br>• Activity (practice of invention) obstacles<br>• Potential for/ease of design around<br>• Ability to detect infringement \| enforceability | **Yellow** |

- "Fecal transfer" to treat C-diff and a cadre of other gastrointestinal diseases has been demonstrated in the literature for decades. Several of institutions are currently employing this method using a low-tech bulk transfer technique.
- However, no one has taken the steps to systematically develop a process by which to create a "clean" product devoid of fecal matter. Our researchers have created a protocol by which the donor material is "cleaned", "purified" and modified for long term storage. Their ultimate goal is to create a freeze-dried product that can be delivered via an enteric-release capsule.
- According to David Provence (attorney at Mueting, Raasch, and Gebhardt) there is potential novelty in the following:
  - o Donor selection protocol
  - o Processing protocol
  - o Freezing process
  - o Composition – the molecular "fingerprint" of the donor micriobiota
- However, there are numerous papers in the literature that demonstrate the effectiveness of fecal transfer to treat a number of diseases (such as IBD). This may create some obviousness hurdles.

*Note: Evaluation and commentary described herein are preliminary and non-binding, and may not express formal legal analysis and conclusions by licensed practitioners.*

| Inventor | |
|---|---|
| • Experience with OTC<br>• Industry Relationships \| Ability to facilitate licensing process<br>• Thought Leader \| recognized in industry \| champion<br>• Cited reference search<br>• Funding – Well funded for continued research | **Green** |

- Dr. Alex Khoruts is a practicing Gastroenterologist and research scientist within the University of Minnesota.
- Dr. Mike Sadowsky is an expert in the identification of bacteria within the Department of Microbiology.

| Technical Merit | |
|---|---|
| • Availability of data supporting novelty, utility, non-obviousness<br>• Research area – competitiveness, industry interest, 'hot' area<br>• Core \| platform \| Stand alone technology<br>• Clinical data or prototype<br>• Development or scale up needed<br>• Would project benefit from Innovation Grant?<br>• OTC experience with other similar technologies<br>• Larger portfolio, if yes, then list | **Green** |

- The inventors have treated 29 patients that have experienced recurrent C-diff infections (at least 3 relapses per patient):
  - o 27 patients have had a complete response (no diarrhea and a lack of detectable C-diff in their stool).
  - o 2 patients are currently under-going re-treatment due to relapse.

CONFIDENTIAL INFORMATION                                                    FER_RBX02724822

- The inventors have developed a clean-up and "freezing" protocol that allows them to bank the purified microbiota for later use.
- They are currently working on a freeze-dried prep that can be used in an enteric capsule formulation.
- Our inventors have also utilized molecular techniques to define the microbiota "fingerprint" in the donor and recipients.  This will hopefully lead to the identification of the sub-groups of bacteria responsible for the beneficial effect of the fecal transfer.
- Our inventors have a network of Gastroenterology clinics who are interested in testing their new preparation for clinical trial purposes.
- IRB approval is already in place.

CONFIDENTIAL INFORMATION

| Secondary Assessment | |
|---|---|
| **Business/Opportunity Summary (Overall)** | |
| • What is the problem/opportunity? What is the market size? (validate through both primary/secondary sources)<br>• What is the solution and the solution's benefits/features/unique attributes?<br>• What is the value of the solution (based on industry/competition)?<br>• What are the barriers to entry?<br>• Who are the competitors and what is the solution's competitive advantage?<br>• What needs to happen in order to make it to the market?<br>• What are the weaknesses?<br>• What are the assumptions? | **[ENTER COLOR RANKING]** |
| | |
| **Marketing Strategy (License)** | |
| • What is the product/service? Define the asset.<br>• Define the value proposition in quantitative terms ($).<br>• Define the value chain.<br>• How will you promote/sell the product/service?<br>• How will you structure the license deal?  FOU? Exclusive? Non-exclusive?<br>• How will you position your product/service? In what markets and segments?<br>• Target companies, qualified prospects, industry contacts, etc.<br>• Is business development required?<br>  o assessment of marketing opportunities and target markets<br>  o intelligence gathering on customers needs, product requirements, etc<br>  o generating leads for possible sales<br>• What are the assumptions? | **[ENTER COLOR RANKING]** |
| | |

| Marketing Strategy (Venture) | |
|---|---|
| • What is the product/service? Define the asset.<br>• How will you promote/sell the product/service?<br>• Define the value proposition in quantitative terms ($).<br>• Define the value chain.<br>• How will you distribute the product/service?<br>• How will you position your product/service? In what markets and segments?<br>• What are the assumptions? | [ENTER COLOR RANKING] |
| | |

| Financial Strategy (License) | |
|---|---|
| • What funds are needed to achieve each milestone and how will they be spent (budget)?<br>• What are the financial projections (use excel template)?<br>• How will the University make money? Pricing strategy?<br>• Would an innovation grant increase the value?<br>• What are the assumptions? | [ENTER COLOR RANKING] |
| | |

| Financial Strategy (Venture) | |
|---|---|
| • What funds are needed to achieve each milestone and how will they be spent (budget)?<br>• What are the financial projections (use excel template)?<br>• How will the University make money? Pricing strategy?<br>• Would an innovation grant increase the value?<br>• What is the exit strategy?<br>• What are the assumptions? | [ENTER COLOR RANKING] |

CONFIDENTIAL INFORMATION                    FER_RBX02724825

| **Management Team (Venture)** | |
|---|---|
| • Who is the CEO and management team?<br>• What do they know? Whom do they know? How well are they known?<br>• Are they financeable?<br>• What diligence has the University done?<br>• What additional management is needed?<br>• What are the team's strengths and weaknesses? | **[ENTER COLOR RANKING]** |

CONFIDENTIAL INFORMATION                    FER_RBX02724826

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-4**

**Exhibit 2 to Ferring/Rebiotix's Motion in Limine No. 4**

# Intestinal Microbial Flora for Treatment of *Clostridium difficile* (C. diff)

## Alison DellAngelo, Avantika Chaudhary, Dan Gilberston, David Sly, Scott Wood

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory 

CONFIDENTIAL – DO NOT DISTRIBUTE

FER_RBX01092749

## Inventors

- Alex Khoruts, M.D.
- Mike Sadowsky
- Matthew Hamilton

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory 

CONFIDENTIAL – DO NOT DISTRIBUTE

HIGHLY CONFIDENTIAL
INFORMATION

## Agenda

- Innovation Overview/Technical Evaluation
- Evaluation Summary
- Intellectual Property
- Regulatory Hurdles
- Market Size/Potential
- Competitive Landscape
- Reimbursement
- User Evaluation
- Financials
- Strategic Positioning
- Conclusion

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

Phil

## Disease Evaluation – *Clostridium Difficile*

| *C. difficile* | Bacteria that causes intestinal problems (diarrhea, colitis) |  |
| | Thrives when gut homeostasis is disrupted due to antibiotic treatment | |
| | Commonly acquired in hospitals | |
| | Spores are able to survive outside of body for extended period of time | |
| | Resistant to many common cleaning methods (ie hand sanitizer) | |

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory 

CONFIDENTIAL – DO NOT DISTRIBUTE

Alison

HIGHLY CONFIDENTIAL
INFORMATION

## Treatment Evaluation – *C. Difficile*

**Current Treatment**

Most common treatment is antibiotics



Recurrence is seen in about 20% of infections

Antibiotic usage may continue disruption in gut flora

Surgery may become necessary

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

HIGHLY CONFIDENTIAL
INFORMATION

## Technical Evaluation – Fecal Transfer

### Fecal Bacteriotherapy

- Used since 1950's
- Not commonly used – ick factor?
- Limited clinical trials show very successful results

### Fecal Transplant

- Feces from healthy donor is processed and transplanted
- Multiple insertion methods

### Return to homeostasis

- Microbes in transplanted feces replace those lost due to antibiotic treatments
- *C. diff* is eliminated, patient returns to health

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

# Technical Evaluation – OTC Innovation

### Fecal Transfer is suitable treatment for *C diff*

- Final formula is 99.9% living material
- Contains 4 different phyla of bacteria
- Contains 10 different classes of bacteria

### Donor Screening Method

- Standardized method for checking health of patient
- Diseases and ailments checked to prevent infections through transplant

### Process of Sampling

- Method for processing and storing samples
- Blended, filtered and frozen



Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE



## Evaluation Summary

Business Case

IP protection is questionable due to prior art and obviousness

-Develop IP with research?



Regulatory pathway is uncharted, therefore it will likely be long and costly



Reimbursement is not available, however hospitals should be interested

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

HIGHLY CONFIDENTIAL
INFORMATION

# Intellectual Property

IP

Provisional Patent filed on 3/2/11

File # 110.03400160

"Compositions and Methods for Transplantation of Intestinal Microbiata"

Claim is around a composition comprising of several families of bacteria

Differentiation lies in "composition comprises of no greater than 0.1% non-living fecal materials



**Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory**

CONFIDENTIAL – DO NOT DISTRIBUTE

## Intellectual Property – Potential Novelty of IP

| Novelty | Hire a patent attorney |
| --- | --- |
| | Bacterial therapy for treatment of C-diff using a "clean" product devoid of fecal matter |
| | Donor material cleaned, purified and modified for long-term storage |
| | Goal is to create a freeze-dried product that can be delivered via enteric-release capsule |
| | Donor selection protocol |
| | Bacterial composition and processing |



Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

## Intellectual Property - Concerns

| Concerns | |
|---|---|
| | Are the claims novel, or are they an obvious leap from the existing research? |
| | The basis of the "composition" is derived from mixing, straining and filtering human fecal matter |
| | Methods used to create composition have been widely published |
| | Is 99.9% necessary?  Can 99% be used to mimic? |
| | Can another firm simply use different phyla and classes of bacteria? |



Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

Scott

## Intellectual Property - Prior Art?

**The Inventors Method**
- "A composition may be prepared by obtaining a fecal sample from an appropriate donor and blending with a dilutent."
- "Removal of non-living fecal material may be achieved by passing blended material through a sieve..." (Provisional Patent #110.034.00160 'Compositions and Methods for Transplantation of Intestinal Microbiata')

**Published Methods**
- Dr. Louie, University of Calgary, conducted 59 fecal transfers over an 11-year period.
- The stools were mixed w/ saline and sieved through a wire mesh to remove particulates. (http://www.internalmedicinenews.com/news/gastroenterology/single-article/fecal-transfer-cures-relapsing-ic-diffi-infection/7c3ce0b64f.html)

**Homespun Method**
- Guide to homespun fecal transplant described in the *Clinical Gastroenterology and Hepatology* journal
- "entirely safe to do the procedure this way, provided that a doctor gets involved at some point to screen the donor sample" (http://www.slate.com/id/2282768/)



Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

Mike Silverman, a University of Toronto physician who wrote up a guide to homespun fecal transplants for the journal Clinical Gastroenterology and Hepatology, says it's entirely safe to do the procedure this way, provided that a doctor gets involved at some point to screen the donor sample.

HIGHLY CONFIDENTIAL INFORMATION

## Regulatory Hurdles

**FDA confirmed that this type of product would be regulated as a biologic**

- Fecal matter has the potential to cause infections and would therefore be regulated by the FDA
- FDA treats fecal matter as a biologic since they view it as a tissue
- Clinical trails would be required for FDA approval

**Nutraceutical route is not an option**

**Many companies have already approached the FDA regarding similar products.**

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory



CONFIDENTIAL – DO NOT DISTRIBUTE

Dave

HIGHLY CONFIDENTIAL
INFORMATION

## Regulatory Hurdles

### Clinical trails would be expensive

- Clinical trial costs are very expensive ($20M-$50M)
- Average length of time is 9 years (pharmaceutical)
- Less than 10% of applications receive approval (pharmaceutical)

### C diff Fecal Transfer is uncharted territory for FDA regulation

- Clinical trials would be subject to scrutiny from the FDA
- Barriers to entry would be lowered for followers

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

http://www.aei.org/outlook/100068

HIGHLY CONFIDENTIAL
INFORMATION



Avantika

HIGHLY CONFIDENTIAL
INFORMATION

## Market Size – Rising Incidence

- 2/3 of patients are elderly[1]
- 23% annual increase in hospital discharges[2]
- Patients considerably sicker/more complex cases[1]
- *C. diff is becoming more common and costlier to treat!*

Hospital Discharge Rates with *C. difficile* by age



Graph: McDonal LC, et al. Emerg Infect Dis. 2006; 12(3): 409-15
Blossom, D.B., Clincal Infectious Disease. 2007; 45: 222-227

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory



CONFIDENTIAL – DO NOT DISTRIBUTE

Graph: McDonal LC, et al. Emerg Infect Dis. 2006; 12(3): 409-15
Blossom, D.B., Clincal Infectious Disease. 2007; 45: 222-227
1. Elixhauser, Anne and Jhung, Michael. Clostridium Difficile-Associated Disease in US Hospitals, 1993-2005. Healthcare Cost and Utilization Project. Agency for Healthcare Research and Quality. Statiscal Brief #50. April 2008.

2. Zilberberg, Marya D et al. Increase in Adult Clostridium difficile-related hospitalizations and case-fatality rate, United States, 200-2005. Emerging Infections Diseases. Vol 14, No. 6, June 2008. www.cdc.gov/eid.

## Market Sizing - Mortality

- Mortality rate - 6.9%
- After 1 year – 16.7%[1]
- Mortality after 4 recurrences- 30-85%
- 25% in frail elderly patients[2]
- Quadrupled from 1999 to 2004
  - 5.7 to 23.7 per million



Yearly *C. difficile* mortality rates per million population, US 1999-2004

Dallal RM, et al. *Ann Surg.* 2002; 235:363-372
Muto C, et al. *Infect Control HospEpid.* 2005
Pepin J, et al. *CMAJ,* 2005

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory



CONFIDENTIAL – DO NOT DISTRIBUTE

Aberra, Fatten N.  Clostridium Difficile Colitis.  Medscape Reference.  http://emedicine.medscape.com/article/186458-overview#a0199
Tipton, Lyn.  Clostridium difficile prevention strategies. https://www.bcbsal.org/providers/ahqi/2011CDiffSlides.pdf

## Competitive Landscape - Current

**Metronidazole**
- Antibiotic – often first choice treatment
- ~$250/treatment
- Marketed by Pfizer, Sanofi Aventis

**Vancomycin**
- More often used in recurrences
- ~$1,850/treatment
- Antibiotics losing effectiveness – resistant strains

**Combinations**
- Pulse treatments, extended timelines
- Eventually move to daily treatment
- Up to $20,000

**Surgery**
- Last resort
- Colectomy (removal of part of colon)
- Ileostomy (route small intestine to skin)

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

# Reimbursement

## Since 2008, Medicare does not reimburse for hospital acquired *C. diff* infections

- Hospital is at fault for infection
- Hospital is liable for associated costs

## This represents a significant value proposition for OTC

- Expected cost for treating recurrence is ~$13,000
- Worst case scenario costs ~$220,000
- Can be troublesome for hospitals to clear/sanitize gastro suites to do fecal transplant

*** *C. diff* primary infections are coded as ICD 9-CM 008.45 ***



Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

HIGHLY CONFIDENTIAL
INFORMATION

## User Evaluation – VOC

Feedback from Hospital Pharmacists

C Diff is a problem and they do see recurrences.  Standard treatment is antibiotics.



Some doctors have discussed fecal transfer, but logistics are a concern

Have heard of research being done to make a more feasible process

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory



CONFIDENTIAL – DO NOT DISTRIBUTE

HIGHLY CONFIDENTIAL INFORMATION

# Financial Assumptions

| Market Size | 120,000 |
|---|---|
| Per Unit Revenue | $8,000 |
| Operating Margin as a percentage of Revenue | 35% |
| Market Penetration Scenarios | 5%, 10%, 20% |
| Clinical Trial Cost | $37.5 million |
| Discount Rate | 50% |

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory



CONFIDENTIAL – DO NOT DISTRIBUTE



## Financials

| Market Penetration Scenario | Risk Adjusted NPV |
|---|---|
| 5% | -$4,481,619 |
| 10% | -$2,527,920 |
| 20% | $1,379,478 |

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory 

CONFIDENTIAL – DO NOT DISTRIBUTE

HIGHLY CONFIDENTIAL
INFORMATION

## Strategic Positioning- SWOT

### Strengths
- Treatment is effective
- Raw material is readily available
- Inexpensive production of final composition

### Weaknesses
- IP for sample preparation could be difficult to defend
- Uncharted regulatory pathway – will be expensive and difficult as first movers
- Feasibility of animal testing to prove efficacy unclear
- Cultural acceptance of treatment method

### Opportunities
- Rising incidence rates of C. diff – increasing market
- Current treatment methods becoming less effective – C. diff strains becoming resistant
- Potential cost savings for hospitals - C. diff infections not reimbursed

### Threats
- Easily replicated preparation and treatment process
- Overcoming current treatments
- Difficid and other treatments in development
- In-hospital fecal transfers

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

Dan

HIGHLY CONFIDENTIAL
INFORMATION



Dan
Rivalry - Currently there are not other companies in the space of using fecal transfer for C. diff treatment
Substitutes – Many pharma companies with treatments and pursuing other trials currently, surgery options
Buyer power – Currently hospitals have to treat this, but buyer power could get higher if treatment is priced too high and hospitals could pursue this processing on their own
Supplier power  - nonexistent, likely will be done for low pay or as donation
Barriers – Currently high because regulatory path is not paved, but followers could be fast once regulatory process established

FER_RBX01092775

## Conclusions

**Recommendation**

As a private investor – wait and see

As an inventor, firm up IP and regulatory path

Hire a patent lawyer to determine IP

Consider partnering with a hospital system as this is market that is going to benefit from this process

Investigate and define a clinical trial strategy

If human path has too many hurdles consider livestock industry as a potential market

Medical Industry Leadership Institute (MILI) Medical Industry Valuation Laboratory

CONFIDENTIAL – DO NOT DISTRIBUTE

Alison

HIGHLY CONFIDENTIAL
INFORMATION



**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-4**

**Exhibit 3 to Ferring/Rebiotix's Motion in Limine No. 4**

Message

| | |
|---|---|
| **From**: | Lee Jones [Leeajones@aol.com] |
| **Sent**: | 8/5/2011 7:12:50 AM |
| **To**: | courtney.jones9@gmail.com |
| **CC**: | leeajones@aol.com |
| **Subject**: | transbiome bp |
| **Attachments**: | Transbiome bplan 8111.docx; Symbiome_business_plan_contest721lj.docx |

Courtney, I have attached a copy of the Transbiome business plan and the Symbiome business plan.  I have changed the executive summary in the TBI plan and need two things: a table of contents and the references redone.  I took out the first illustration and deleted that reference so the others need to be looked at.  I put in some numbers where the references used to be.  Hope that helps.
Mom

HIGHLY CONFIDENTIAL
INFORMATION

**PROPOSED PRETRIAL ORDER**

# EXHIBIT 18.4

**UMN/FINCH'S OPPOSITION TO FERRING/REBIOTIX'S
MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE OF
FERRING/REBIOTIX'S COPYING**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) ) ) ) ) ) |
| | ) |
| Counterclaim-Plaintiffs/Reply Defendants, | ) |
| | ) |
| v. | ) |
| | ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) ) |
| | ) |
| Counterclaim-Defendants/Reply Plaintiffs. | ) |

C.A. No. 21-1694-JLH

**FILED UNDER SEAL**

## UMN/FINCH'S OPPOSITION TO FERRING/REBIOTIX'S MOTION
## *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF FERRING/REBIOTIX'S COPYING

Ferring's latest attempt to exclude critical evidence of its own copying of the patented technologies should be denied because Ferring's copying is relevant to numerous issues in the case, including Ferring's willfulness, inducement of infringement, and critical damages issues. Contrary to Ferring's assertion, the relevance of this evidence far outweighs any purported prejudice or potential for juror confusion, and Finch would be greatly prejudiced in proving its case if Ferring's request were granted. Ferring's MIL #4 should be denied.

Evidence of copying is relevant to willfulness and inducement.[1] *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 441 (D. Del. 2023) ("copying may [ ] be relevant evidence to support a theory of willfulness") (internal quotation omitted); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1414 (Fed. Cir. 1996); *Motio, Inc. v. BSP Software LLC*, 2016 WL 4430452, at *5 (E.D. Tex. Aug. 22, 2016) ("jury could consider the evidence, including allegations of [ ] copying . . . as relevant in determining whether or not Defendants possessed the intent to cause infringement"). It is also relevant to damages, particularly to rebut Ferring's assertions that the patented inventions are worthless, and is relevant to *Georgia Pacific*'s factor 11 (extent of use of UMN's invention). Ex. A at 13–15, 17, 78; *Georgia-Pac. Corp. v. U.S. Plywood*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Ferring contends that its copying is irrelevant because it occurred before the UMN patents issued. But that ignores that Ferring decided to begin offering and selling its copycat product well after it knew the patents issued. That is quintessential willful behavior, as routinely recognized by courts. *See* Ex. B, *Puma Biotechnology, Inc. v. AstraZeneca Pharms. LP*, D.I. 408 at 4 (D. Del. Apr. 29, 2024) ("pre-patent conduct may also be used to support a finding of willfulness . . . [t]he same is true on the question of inducement"); *Kaufman Co. v.*

---

[1]   Although Ferring has now dropped one of its invalidity arguments (despite refusing to engage in case narrowing for months), that does not impact the relevance of Ferring's copying, as its willfulness and inducement remain squarely at issue, as do damages issues.

EXHIBIT 18 – OPPOSITION

*Lantech, Inc.*, 807 F.2d 970, 978–79 (Fed. Cir. 1986) (rejecting defendant's argument that pre-issuance copying should not be considered); *Upjohn Co. v. Syntro Corp.*, 1990 WL 79232, at *6 (D. Del. Mar. 9, 1990) (confirming liability for inducement could be based on pre-issuance acts).

While some cases have referenced "particularly egregious behavior" in connection with pre-issuance copying and willfulness, this is ***not*** a separate hurdle for willfulness, but for enhanced damages. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) ("'willfulness' requires a jury to find ***no more than*** deliberate or intentional infringement"); *Bioverativ Inc. v. CSL Behring LLC*, 2020 WL 1332921, at *2 (D. Del. Mar. 23, 2020) ("egregious behavior [is] relevant" to enhancement). And even if it were, Ferring's behavior would easily meet and exceed that threshold. As laid out in UMN/Finch's summary judgment opposition ("SJ Opp."), while at UMN, Lee Jones (Rebiotix's founder) obtained at least the (1) then-confidential provisional application that led to the asserted UMN patents, (2) inventors' confidential protocol, as well as an in-person demonstration of the making of the claimed compositions, and (3) other UMN-confidential documents, including evaluations of the patented inventions and business opportunities stemming therefrom. D.I. 281 at 2. ██████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ *Id.* at 3. Ms. Jones did this despite explicitly knowing that UMN was seeking patent protection (after all, one of the documents she took was a patent application) and in spite of an NDA that precluded her from using confidential UMN information (like the provisional) for purposes other than helping ***UMN*** commercialize its technologies including through patent licenses where appropriate (which was supposed to be Ms. Lee's purpose in accessing these material is). Contrary to Ferring's contention that certain of these facts are irrelevant, these are in fact crucial evidence of what Ms. Jones "in

EXHIBIT 18-4 – OPPOSITION

fact subjectively believed," a critical component of inducement and willfulness. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1287 (Fed. Cir. 2020). In these circumstances, pre-issuance conduct is plainly relevant to willfulness and inducement, not to mention damages.

Ferring also asks the Court to decide that it did not copy the UMN Patents as a matter of law. Ex. 18-4 at 2-3. That is not properly a MIL. *See* Ex. C, *St. Jude Med. v. Volcano Corp.*, D.I. 395, at 1 (D. Del. Oct. 9, 2012) ("[c]opying is a fact intensive determination" that "cannot be decided" on a MIL); *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1353 (Fed. Cir. 2018) (willfulness is jury question); *Sonos, Inc. v. D&M Holdings Inc.,* 2017 WL 5633204, at *4 (D. Del. Nov. 21, 2017) (denying MIL and refusing "an absolute prohibition" on copying evidence). Regardless, as explained above and in Finch/UMN's SJ Opp., there is substantial evidence of Ferring's copying, and the jury is entitled to weigh these critical facts.

Finally, the relevance of Ferring's copying (which is far from "minimal") substantially outweighs any purported prejudice or risk of confusion. *DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 11538713, at *27, *30 (E.D. Tex. Feb. 26, 2010); *see also Motio*, 2016 WL 4430452, at *10 (admission of copying evidence was not unduly prejudicial). Ferring claims that purported juror confusion with respect to infringement warrants exclusion, but neither of the cases it cites grapple with willfulness or inducement. *Shure*, 2021 WL 4974001, at *2 ("Copying is irrelevant to any issue in the case besides for secondary considerations"); *Finjan*, 2015 WL 4129193, at *5 (seeking preclusion of "evidence of copying as a secondary consideration"). Here, copying goes directly to at least willfulness, inducement, and damages, making it "an important factual dispute for the jury's consideration," *DataTreasury*, 2010 WL 11538713, at *27.

Because evidence of Ferring's copying is highly relevant to numerous issues in the case, outweighing any purported prejudice or risk of juror confusion, Ferring's motion should be denied.

EXHIBIT 18 – OPPOSITION

# EXHIBIT A

EXHIBIT 18 — OPPOSITION



FERRING PHARMACEUTICALS INC., REBIOTIX INC.

V.

FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., AND FINCH THERAPEUTIC HOLDINGS, LLC.

Civil Action No. 21-01694-RGA

United States District Court for the District of Delaware

---

# EXPERT REPORT OF JAMES E. MALACKOWSKI

## July 28, 2023

HIGHLY CONFIDENTIAL INFORMATION



INTELLECTUAL CAPITAL EQUITY

### 5.1.4    Rebiotix Inc. – Counterclaim Defendant

Rebiotix is a Delaware corporation with a principal place of business in Roseville, Minnesota.[53]  Rebiotix was formed in 2011 and was previously known as MikrobEX and TransBiome.[54]  According to Rebiotix, it was founded on the belief that the power of the microbiome could be harnessed to treat debilitating diseases, and it works to ensure that the future of microbiome-based technologies will remain focused on what is believes are some of the greatest healthcare challenges of our time.[55]

In 2009, Mr. Michael Berman (co-founder and Chairman of Rebiotix until 2018) investigated commercializing FMT through his company at the time, ConcepTx.[56]  ConcepTx was an "exploration" that did not create a product and did not hire a full team.[57]  It did not have laboratory space with microbiological-type equipment for FMT experimentation[58]  Nor did any employees at ConcepTx have experience with FMT.[59]

---

[46] FER_RBX01496511 – 554 at 520.

[47] FER_RBX01496511 – 554 at 520.

[48] FER_RBX01496511 – 554 at 520.

[49] FER_RBX01496511 – 554 at 520.

[50] FER_RBX01567938 – 8120 at 7973 – 8068.

[51] https://www.ferring.com/ferring-acquires-innovative-biotechnology-company-and-microbiome-pioneer-rebiotix-inc/.

[52] FER_RBX01496511 – 554 at 511.

[53] https://www.rebiotix.com/.

[54]  Deposition of Lee Jones, April 21, 2023, pp. 22 – 25.

[55] https://www.rebiotix.com/.

[56] MERRIFIELD00000569; MERRIFIELD00000556; MERRIFIELD00000784; MERRIFIELD00000785; MERRIFIELD00000198; MERRIFIELD00000199; MERRIFIELD00000242; MERRIFIELD00000243.

[57] Deposition of Michael Berman, May 9, 2023, pp. 71 –72.

[58] Deposition of Edwin Hlavka, May 5, 2023, p. 185 –187.

[59] Deposition of Michael Berman, May 9, 2023, p. 31 – 32; Deposition of Edwin Hlavka, pp. 27 – 33.

EXHIBIT 18 – OPPOSITION

 INTELLECTUAL CAPITAL EQUITY

In January 2010, Mr. Berman's wife, Ms. Judy Berman (who worked at UMN), informed ConcepTx of Drs. Khoruts and Sadowsky's work.[60]  ConcepTx then asked Dr. Khoruts for help,[61] but Dr. Khoruts declined.[62] That same month, because Drs. Khoruts and Sadowsky were working in the field, ConcepTx pushed forward with a provisional patent application,[63] which outside parties said was a "business patent" that had a "vague plan" and "pretty weak" IP.[64]  In April 2010, Ms. Berman suggested that ConcepTx discuss freezing and sequencing bacteria with Dr. Sadowsky.[65]  Dr. Sadowsky met with ConcepTx in June 2010, and Dr. Sadowsky suggested that ConcepTx contact UMN's patent office.[66]  ConcepTx stopped operating by November 2010,[67] without having received funding for its FMT project.[68]

After ConcepTx's FMT project was discontinued,[69] Ms. Lee Jones ("Ms. Jones") formed Rebiotix in 2011 and served as its President and CEO until December 31, 2021.[70]  Immediately prior to forming Rebiotix, Ms. Jones was employed at the Venture Center at the UMN.[71]  From October 2010 through June 2011, Ms. Jones served as a CEO in Residence at the Venture Center.[72]  Ms. Jones' role was "to help identify possible business opportunities" for the University, and "if there was an idea or a technology that someone was interested in," "take that forward and commercialize it with the academics."[73]

Through her work with the Venture Center, Ms. Jones learned of the concept of FMT from Drs. Khoruts and Sadowsky, who Ms. Jones described as "create[ing] a simple solution to the horrible patient problem of debilitating diarrhea and colitis caused by an infectious, intestinal bacteria … (C. diff)."[74]  Around four months after Ms. Jones learned of the concept of FMT from Drs. Khoruts and Sadowsky, Ms. Jones founded

---

[60] MERRIFIELD00000418.

[61] UMN_0019653.

[62] FER_RBX01548379.

[63] MERRIFIELD00000101

[64] MERRIFIELD00000140; FER_RBX01548184.

[65] UMN_0282398; UMN_0282401; see also UMN_0282419; FER_RBX01084677; FER_RBX01548381

[66] UMN_0030135; UMN_0260638; UMN_0209763

[67] MERRIFIELD00000612; MERRIFIELD00000628; MERRIFIELD00000615; MERRIFIELD00000616.

[68] Deposition of Edwin Hlavka, May 5, 2023, p. 269; M. Berman Dep. Tr. at 89:22–90:7.

[69] Deposition of Michael Berman, May 9, 2023, p. 321.

[70] Deposition of Lee Jones, April 21, 2023, pp. 21 – 22.  During 2022, Ms. Jones served as an advisor to Ferring. Deposition of Lee Jones, April 21, 2023, pp. 26 – 27.

[71] Defendants Finch Therapeutics Group, Inc., Finch Therapeutics, Inc., and Finch Therapeutics Holdings, LLC's First Amended Counterclaims and Answer to Complaint and Affirmative Defenses, March 7, 2022, p. 16.

[72]  Deposition of Lee Jones, April 21, 2023, p. 92.

[73]  Deposition of Lee Jones, April 21, 2023, pp. 40 – 41, 92, Exhibit 5 (UMN_0283420 – 421).

[74]  Deposition of Lee Jones, April 21, 2023, pp. 36 – 39, 48 – 52, 88 – 89, 194, 220, Ex. 18 (JONESL00003116 – 162).

HIGHLY CONFIDENTIAL INFORMATION


INTELLECTUAL CAPITAL EQUITY

Rebiotix.[75]  Through the work of Drs. Khoruts and Sadowsky, Rebiotix was able to develop an FMT product.[76] ███████████████████████████████████████████████
████████████████████████

Rebiotix developed a therapy to treat certain diseases, such as CDI, through use of the microbiome and FMT.[78]  The therapeutic is referred to as product candidate RBX2660 or REBYOTA™.  Ferring and Rebiotix describe REBYOTA™ as: "the first and only microbiome-based treatment approved by the U.S. Food and Drug Administration (FDA) to prevent recurrence of *Clostridioides difficile (C. diff)* infection."[79]



[75] Deposition of Lee Jones, April 21, 2023, pp. 90 – 91; Lee Jones Deposition Exhibits 2, 3, 7 (UMN_0016158); UMN_0090857.

[76] Deposition of Ms. Courtny Jones, March 24, 2023, p. 102 – 103.

[77] JONESL00001618; FER_RBX01291448; FER_RBX01302550; FER_RBX02848241; FER_RBX01997819; FER_RBX00678896; JONESL0003307; JONESL00000403; JONESL00000410; and JONESL00000411.

[78] Deposition of Lee Jones, April 21, 2023, pp. 48, 173, 181 – 182, Exhibit 14 (UMN_0017939 – 940).

[79] Ferring 2022 Annual Report at 9, 19, 24; REBYOTA Label at 1.

[80] UMN_0279871; UMN_0279932.

[81] Plaintiffs' First Supplemental Objections and Responses to Finch and UMN's First Set of Interrogatories, February 17, 2023, pp. 153 – 156.

[82] Plaintiffs' First Supplemental Objections and Responses to Finch and UMN's First Set of Interrogatories, February 17, 2023, p. 153 – 156; FER_RBX01303030; FER_RBX01305728.

[83] FER_RBX02868910; FER_RBX01965753; FER_RBX01965754; FER_RBX01965795; FER_RBX01965796; FER_RBX02868909; FER_RBX02868927; and BORODY_0016580.

[84] BORODY_0017327; BORODY_0017328.

[85] Complaint, December 1, 2021, p. 2.

[86] U.S. Patent No. 9,308,226, p. 1.

HIGHLY CONFIDENTIAL INFORMATION



INTELLECTUAL CAPITAL EQUITY

Further, UMN publicly disclosed that it licensed its technology to CIPAC, Crestovo, and Finch, and had commercial relationships with them.[88]  Ms. Jones and Rebiotix were also aware that CIPAC had interests in the UMN Asserted Patents, as well as the Finch Asserted Patents.

---

[87] UMN_0190671; UMN_0043321; FER_RBX02730185; FER_RBX02730188; and FER_RBX01740478.

[88] https://web.archive.org/web/20170801011847/https:/research.umn.edu/units/techcomm/startups/university; https://research.umn.edu/units/techcomm/about-us/overview; https://license.umn.edu/product/pharmacological-agents-to-prevent-recurrent-c-diffinfection-20150362; https://www.businesswire.com/news/home/20171023005284/en/Finch-Therapeutics-and-Crestovo-Announce-Merger-to-Form-Finch-Therapeutics-Group-a-Leading-Fully-Integrated-Microbiome-Company.

[89] UMN_0017939; UMN_0017940.

[90] FER_RBX02798547.

[91] FER_RBX01268261; FER_RBX01092749; FER_RBX02753289; FER_RBX02724818; and FER_RBX02724373.

[92] JONESL00003142; FER_RBX00907940; FER_RBX02592622; FER_RBX02592677; and FER_RBX02683454.

[93] Deposition of Lee Jones, April 21, 2023, pp. 36, 38 – 39.

[94] JONES00003116; JONES00003117; and JONESL00003142.

[95] JONESL00003189; and JONESL00003190.

[96] FER_RBX01964446; FER_RBX01965789; see also FER_RBX01467597.

[97]  Deposition of Kristin Wannerberger, May 24, 2023, pp. 110; Deposition of Greg Fluet April 14, 2023, Exhibit 11 (FER_RBX02840624 – 809 at 637).

HIGHLY CONFIDENTIAL INFORMATION

EXHIBIT 18 – OPPOSITION

INTELLECTUAL CAPITAL EQUITY



---

98  Deposition of Kristin Wannerberger, May 24, 2023, pp. 110–112; Deposition of Greg Fluet April 14, 2023 Exhibit 11 (FER_RBX02840624 – 809 at 648).

99  FER_RBX02951435; FER_RBX02951438; FER_RBX02951441; FER_RBX02951444; FER_RBX02952244; and FER_RBX02952279.

100  FER_RBX01719332 at 333.

101  FER_RBX01895073.

102  FER_RBX02738156 – 474 at 175.

103  FER_RBX02738156 – 474 at 177.

HIGHLY CONFIDENTIAL INFORMATION

EXHIBIT 18 – OPPOSITION

INTELLECTUAL CAPITAL EQUITY



Neither Ferring nor Rebiotix acted to avoid or mitigate infringement.

---

[104] FER_RBX02738156 – 474 at 251.

[105] FER_RBX02738156 – 474 at 254.

[106] FER_RBX02738156 – 474 at 403.

[107] FER_RBX02800353–565; FER_RBX02797878–98063.

[108] Deposition of Lee Jones, April 21, 2023, p. 273, 81 – 84, 187 – 188.

[109] Ferring/Rebiotix Reply to Counterclaims, February 7, 2023, p. 97. The most recent Asserted Patent to issue is U.S. Patent No. 11,541,080, which issued January 3, 2023.

[110] Ferring 2022 Annual Report, pp. 54 – 57.

[111] FER_RBX00888083; FER_RBX00889214; FER_RBX00902542; FER_RBX00902546; FER_RBX00904385; FER_RBX00905383; FER_RBX00906295; FER_RBX02328898; FER_RBX01722455.

[112] FER_RBX00904340; FER_RBX00905454.

HIGHLY CONFIDENTIAL INFORMATION

EXHIBIT 18 – OPPOSITION

 INTELLECTUAL CAPITAL EQUITY

. These entries suggest that Rebiotix/Ferring anticipated litigation with Finch/UMN years before launching REBYOTA™.

Despite claiming privileged advice related to the Finch Asserted Patents and the UMN Asserted Patents, Ferring/Rebiotix have not asserted an advice of counsel defense or produced any opinions of counsel related to the Asserted Patents and have made clear they do not intend to do so.[118]

Ferring/Rebiotix used Finch's statements in its SEC filings as a basis for bringing suit a year before launching a product, and were not only on notice of the Asserted Patents, knew of the UMN patents and, based on Ferring/Rebiotix's pleadings, were concerned that Finch would exercise its patent rights.

---

[113] FER_RBX01723719; FER_RBX01723726; FER_RBX01724747; FER_RBX02019752; FER_RBX02021576.

[114] FER_RBX01568915; FER_RBX02220265; FER_RBX02220266; FER_RBX01714579.

[115] FER_RBX01740478.

[116] FERRBXPRIV02766; FERRBXPRIV02772; FERRBXPRIV01676; FERRBXPRIV02509; FERRBXPRIV00110; FERRBXPRIV00111; FERRBXPRIV00189; FERRBXPRIV00191; FERRBXPRIV00218; and FERRBXPRIV00242.

[117] FER_RBX02951435; FER_RBX02951438; FER_RBX02951441; and FER_RBX02951444.

[118] Plaintiffs' First Supplemental Objections and Responses to Finch and UMN's First Set of Interrogatories, February 17, 2023, pp. 157 – 159.

[119] Complaint, December 1, 2021, Exhibit 1, p. 136.

[120] Complaint, December 1, 2021.

[121] FER_RBX02739273; FER_RBX02739276; FER_RBX01923806; FER_RBX01923810; FER_RBX02727049; FER_RBX02727056; FER_RBX02728418; FER_RBX02728419; FER_RBX02745321; FER_RBX02745325; FER_RBX02753493; FER_RBX02753499; FER_RBX02763582; FER_RBX02870619; FER_RBX02870623; FER_RBX02870877; FER_RBX02870881; FER_RBX02948942; FER_RBX02948947; FER_RBX02950508; FER_RBX02950513; FER_RBX02977788; and FER_RBX02978079.

HIGHLY CONFIDENTIAL INFORMATION

EXHIBIT 18 - OPPOSITION

INTELLECTUAL CAPITAL EQUITY



122 Complaint, December 1, 2021, pp. 12 – 17.

123 FER_RBX01249917; and FER_RBX02022124.

124 FER_RBX02874488.

125 FER_RBX02991515.

126 Deposition of Gregory Fluet, June 2, 2023, p. 104 – 105, and Exhibits.

127 Deposition of Gregory Fluet, June 2, 2023, Exhibits 3 – 4. G.

128 Deposition of Gregory Fluet, June 2, 2023, p. 93 - 96.

129 Deposition of Gregory Fluet, June 2, 2023, p. 107.

130 FER_RBX02951449.

HIGHLY CONFIDENTIAL INFORMATION

EXHIBIT 18 – OPPOSITION

INTELLECTUAL CAPITAL EQUITY



Thus, I find that Factor Nos. 9 and 10 would tend to favor the licensor in this hypothetical negotiation.

### 9.1.10 Factor No. 11: The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

According to Finch/UMN, REBYOTA™ embodies and/or utilizes the Asserted Patents. Finch/UMN contend that Ferring/Rebiotix copied certain of the claimed inventions in developing REBYOTA™.[507]

---

[499] FER_RBX01472081 – 248 at 141.

[500] FER_RBX01472081 – 248 at 141.

[501] FER_RBX01472081 – 248 at 098.

[502] FER_RBX01472081 – 248 at 105.

[503] FER_RBX01472081 – 248 at 141.

[504] FER_RBX01382837 – 921 at 838.

[505] FER_RBX01382837 – 921 at 847.

[506] FER_RBX01382837 – 921 at 865 and 892.

[507] Defendants' Response and Objections to Plaintiffs' Interrogatory No. 4, pp. 423 – 424.

HIGHLY CONFIDENTIAL INFORMATION

EXHIBIT 18 – OPPOSITION



INTELLECTUAL CAPITAL EQUITY

On February 14, 2023, Ferring/Rebiotix announced the availability of REBYOTA™. According to the announcement, "REBYOTA is the first and only microbiome-based treatment approved by the U.S. Food and Drug Administration (FDA) to prevent recurrence of *Clostridioides difficile (C. diff)* infection in individual 18 years of age and older, following antibiotic treatment for recurrent *C. diff* infection."[508]

According to Ferring's 2022 Annual Report, sales of REBYOTA™ "are expected to grow significantly in the years following the launch in 2023."[510]  Ferring's projections indicate that REBYOTA™ annual revenues will increase from $129.1 million in 2024 to $319.0 million in 2029, before declining to $286.4 million in 2031. For the period 2024 through 2031, Ferring projects total REBYOTA™ revenue of nearly $2.1 billion.[511]

Thus, I find that Factor No. 11 would tend to favor the licensor in this hypothetical negotiation.

### 9.1.11   Factor No. 12: The portion of the profit or the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

Similar to Factors No. 1 and No. 2, Factor No. 12 relates to the Market Approach and considers licenses and licensing practices within the relevant industry.  I have considered third-party license agreements in connection with my Market Approach evaluation as set forth in Appendix 6.1, one of which is the Seres/Nestlé Agreement.

The Seres/Nestlé Agreement granted rights to microbiome technology to commercialize therapeutics relating to CDI.  As indicated above, Nestlé agreed to an upfront fee of $175 million, the potential milestone payments of up to $525 million, and a 50.0 share of profits from sales of the licensed product.  I would note that 50.0 percent of REBYOTA™'s reported gross profitability[512] is about 40.0 percent and 50.0 percent of Finch's projected operating profitability is about 25.4 percent.

The impact of Factor No. 12 is also reflected in my quantitative analysis described in Section 8.3.4.

---

[508] https://ferringusa.com/?press=ferring-pharmaceuticals-announces-availability-of-rebyota-fecal-microbiota-live-jslm-the-first-and-only-fda-approved-microbiome-based-treatment-for-the-prevention-of-r#:~:text=REBYOTA%20is%20the%20first%20and,diff%20infection.

[509] Figure 8.

[510] Ferring Annual Report, p. 95.

[511] Appendix 4.2.

[512] Appendix 4.1.

HIGHLY CONFIDENTIAL INFORMATION

EXHIBIT 18 – OPPOSITION

 INTELLECTUAL CAPITAL EQUITY

## 11   SIGNATURE

Respectfully submitted,

James E. Malackowski

Date: July 28, 2023

HIGHLY CONFIDENTIAL INFORMATION

EXHIBIT 18 – OPPOSITION

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **WYETH, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 21-cv-1338-MFK** |
| | ) | |
| **ASTRAZENECA PHARMACEUTICALS** | ) | |
| **LP and ASTRAZENECA AB,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## RULINGS ON CERTAIN OF DEFENDANTS' MOTIONS IN LIMINE

in this order, the Court rules on some, but not all, of the motions *in limine* filed by

the defendants.  On the defendants' remaining motions and the motions filed by the

plaintiff, the Court has specific questions or wishes to hear argument.  That will be done

at the final pretrial conference set for tomorrow, April 30.

The numbered paragraphs below correspond to the numbering used in the

defendants' motions.

1.      **2014 acquisition proposal**.  In their first motion, defendants move to bar

any reference to a 2014 proposal by AstraZeneca to acquire Puma.  Plaintiff agrees to

the relief sought in the motion.  The Court grants this motion.

2.      **Pre-suit discussions**.  In their second motion, defendants move to bar

any reference to pre-lawsuit communications between AstraZeneca and Puma, which

took place during two periods:  2016 and 2020-21.  In 2016, Puma contacted

AstraZeneca about licensing its patent portfolio, which evidently included the then-

pending application for at least one of one of the patents in suit.  Though this contact did

not result in any agreements or even, it appears, extended negotiations, this episode is relevant and admissible on the question of willful infringement, because it tends to show defendants' awareness of the patent(s).

In 2020-21, Puma contacted AstraZeneca regarding sublicensing of rights to Wyeth's intellectual property, including one or both of the patents in suit.  There were proposals that went back and forth, but no deal was concluded.  Defendants contend that nothing about this is admissible pursuant to Federal Rule of Evidence 408; they say that litigation was at least contemplated and that their discussions were conducted under an agreement that said the discussions would be governed by Rule 408.

Rule 408(a) says that evidence of offering a valuable consideration to compromise a claim, and statements or conduct during compromise negotiations about the claim, is not admissible "either to prove or disprove the validity or amount of a disputed claim" or to impeach.  Fed. R. Evid. 408(a).  This, by its terms, does not preclude evidence regarding the discussions for the purpose of showing defendants' knowledge of the patents and the possibility of infringement.  These are the primary purpose for which plaintiff says it wishes to introduce this evidence.  *See* Pl.'s Resp. to Defs.' Mots. In Limine at 1; *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 860 (N.D. Cal. 2019) (allowing evidence of compromise to prove notice); *Samsung Elecs. Co. v. Quanta Computer, Inc.*, No. C-00-4524, 2006 WL 2850028, at *5 (N.D. Cal. Oct. 4, 2006) (settlement negotiations admissible to show notice of the patent and the patent holder's assertion of infringement).  The Court therefore overrules defendants' motion, but as plaintiff proposes, it must omit anything regarding the proposed royalty rates.  *See* Pl.'s Resp. to Defs.' Mots. In Limine at 3 n.7.

Plaintiff also contends the evidence of the 2020-21 negotiations is admissible to show "commercial acquiescence," a consideration regarding obviousness that roughly translates to whether the novelty of the patent has effectively been acknowledged via licensing activity.  *See generally Securitypoint Holdings, Inc. v. United States*, 129 Fed. Cl. 25, 48 (Fed. Cl. 2016).  "[B]ut the mere fact of licensing alone may not be enough to prove a patent not obvious if it cannot also be shown that the licensees did so out of respect for the patent rather than to avoid litigation expense."  *Id.* (citing *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 316 (Fed. Cir. 1985)).  This means the context— in particular whether the communications arose from an actual or at least threatened legal claim—is likely determinative, if not on the Rule 408 question, then at least on the probative value of the communications regarding the "commercial acquiescence" issue. On this both sides have punted:  defendants say simply that "[t]here can be no dispute" that litigation was threatened or probable, offering no support; and plaintiff dismisses the point in a footnote, saying that the Court need not decide it.  Both sides should be prepared at the final pretrial conference to provide, on this point, what they failed to provide in their briefs.  The Court will then determine the admissibility of the 2020-21 evidence for this additional purpose.

     **3.**    **Third party analyst reports.**  The Court grants defendants' motion to bar reference to certain analyst reports discussing the patents in suit or related applications that were referenced in communications from Puma's CEO.  This evidence is classic hearsay, and plaintiff cites no potentially applicable exception to the hearsay rule.  The evidence is excluded—for both sides.

     **5.**    **Pre-issuance conduct by defendant.**  Defendants ask the Court to bar

Case 1:21-cv-01694-JLH   Document 424-4   Filed 07/30/24   Page 150 of 247 PageID #: 27032
EXHIBIT 18 — OPPOSITION
Case 1:21-cv-01338-MFK   Document 408   Filed 04/29/24   Page 4 of 7 PageID #: 22618

reference to their conduct prior to the March 2020 issuance of the patents for the purpose of proving willful infringement and/or inducement of infringement.  The Court denies the motion.  "[A]lthough willfulness is generally based on conduct that occurred after a patent issued, pre-patent conduct may also be used to support a finding of willfulness."  *3M Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992).  The same is true on the question of inducement.  *See Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996).  Defendants' contrary authorities are either inapplicable or unpersuasive.  (The Court also notes in this regard that, as plaintiff points out, concerns in earlier cases regarding one's knowledge of pending patent applications "are no longer valid" after 1999, when the law was changed to provide for routine publication of patent applications eighteen months after the application's effective filing date.  *See WMD Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 n.4 (Fed. Cir. 2018)).

6.  **Assertions that Tagrisso is a "copy" of the patents in suit.**  The Court overrules defendants' motion to bar plaintiff from contending that the accused product Tagrisso is a "copy" of the patents in suit.  This is a legitimately disputed point and appropriately a matter for argument.  One significant caveat for plaintiff, however, is that introduction of evidence or argument on this point might well open the door to other evidence that plaintiff has moved to exclude.  *See* Pl.'s Mot. In Limine No. 3 (seeking to exclude evidence of defendants' patents and patent applications).  For this reason, plaintiff should be prepared to tell the Court at the final pretrial conference whether it intends to actually offer testimony or argument on this point.

8.  **Payments to expert witnesses reported on Open Payments.**  The

Case 1:21-cv-01694-JLH   Document 424-4   Filed 07/30/24   Page 151 of 247 PageID #: 27033
Case 1:21-cv-01338-MFK   Document 408   Filed 04/29/24   Page 5 of 7 PageID #: 22619

EXHIBIT 18 — OPPOSITION

Court overrules defendants' request to preclude plaintiff from introducing evidence regarding payments to defendants' expert witnesses reported on the Open Payments database, which as far as the Court is aware is a government-maintained website reporting payments to medical providers by, among others, pharmaceutical companies. Evidence regarding payments from parties or others affiliated with them is a legitimate topic of cross-examination for bias, so the Court denies the motion.  Defendants argue that the Open Payments site is unreliable and sometimes misattributes to an individual physician a payment that actually was made to an institution with which the physician is affiliated.  But even then, a payment may be relevant to show bias, so long as the impetus for the payment involved the physician.

For these reasons, witnesses appropriately may be cross examined regarding relevant payments shown on the Open Payments site.  That said, plaintiffs have failed to make the case that data from the site is *itself* independently admissible in evidence. To permit that, the party seeking to admit the data would have to lay a foundation for its admission.

**9.** **Alleged status of the patents in suit as "blocking" patents.**  The Court overrules defendants' objection to testimony by plaintiff's infringement expert Dr. Weiss (relied upon by its damages expert Dr. Rao) referring to the patents-in-suit as "blocking patents."  The Court understands this term to express the concept that an alleged infringer could not conduct its allegedly infringing activities without practicing the patent. Testimony in this regard is relevant on the question of apportionment of a damages award to the incremental value that the patented invention is claimed to have added to the infringing product.  The theory offered by plaintiff's expert on this point is a legitimate

Case 1:21-cv-01694-JLH   Document 424-1   Filed 07/30/24   Page 152 of 247 PageID #: 27034
EXHIBIT 18 – OPPOSITION
Case 1:21-cv-01338-MFK   Document 408   Filed 04/29/24   Page 6 of 7 PageID #: 22620

theory, so long as it is supported by the evidence.  *See, e.g., Sprint Comm'cns Co. v. Time Warner Cable, Inc.*, 255 F. Supp. 3d 1134, 1139 (D. Kan. 2017).  And the Court is persuaded that there is sufficient support in the record to allow testimony and argument along these lines.  Whether the theory actually applies here is appropriately a matter for cross-examination and presentation of contrary evidence and argument, not exclusion. *See, e.g., Plexxicon, Inc. v. Novartis Pharms. Corp.*, No. 4:17-cv-04405, 2021 WL 97544, at *4-5  (N.D. Cal. Jan. 12, 2021).

      **11.**    **Expert testimony regarding AstraZeneca's state of mind.**  Defendants identify two places in which the reports of plaintiff's experts include opinions regarding AstraZeneca's knowledge and/or intent.  Plaintiff's expert Weiss's report includes the following statement:  "*Defendants know and intend* that the commercial manufacture, use, importation, marketing, sale, and/or offer for sale of TAGRISSO® will cause direct infringement" of a particular patent claim.  Weiss Report ¶ 129 (emphasis added).  And plaintiff's expert Hausheer's report includes the following statement:  "AstraZeneca systematically and *intentionally copied* the inventors' work, which led to the discovery and development of TAGRISSO® for use within the claimed methods."  Hausheer Report ¶ 23 (emphasis added).  Opinions regarding knowledge and intent, including those just quoted and others like them, are hereby excluded.  An expert may appropriately address the evidentiary predicate upon which a determination of knowledge or intent may be made, but none of the experts in this case have been shown to have a foundation that would enable them to appropriately render an opinion that would be helpful to the jury regarding whether the evidence shows that a person or entity had knowledge of a fact or acted willfully, intentionally, or recklessly.

**Conclusion**

For the reasons described in this order, the Court grants defendants' motions *in limine* 1, 3, and 11 and denies defendants' motions *in limine* 2, 5, 6, 8, and 9. Defendants' motions 4, 7, and 10 and all of plaintiff's motions remain for determination at the final pretrial conference.

Date:  April 29, 2024

_____
MATTHEW F. KENNELLY
United States District Judge

EXHIBIT 18 - OPPOSITION

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ST. JUDE MEDICAL CARDIOLOGY DIVISION, INC., ST. JUDE MEDICAL SYSTEMS AB, and ST. JUDE MEDICAL S.C., INC., | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 10-631-RGA |
| VOLCANO CORPORATION, | : : | |
| Defendant. | : | |

## ORDER CONCERNING VOLCANO'S MOTIONS *IN LIMINE*

The Court having considered Volcano's Motions *In Limine* (D.I. 380, Tab 11);

**IT IS HEREBY ORDERED** that:

1.      Volcano's Motion *in Limine* No. 1 to exclude evidence of alleged copying by Volcano is **DENIED**. Copying is irrelevant to the written description requirement. Copying is a fact intensive determination that cannot be decided now.

2.      Volcano's Motion *in Limine* No. 2 to exclude evidence obtained during inequitable conduct discovery is **GRANTED IN PART** and **DENIED IN PART**. Evidence provided or obtained during inequitable conduct discovery can be used for purposes of cross-examination. Such evidence, however, cannot be used affirmatively to support an infringement/non-infringement or validity/invalidity argument.

3.      Volcano's Motion *in Limine* No. 3 to exclude evidence regarding St. Jude's equitable defenses is **GRANTED IN PART** and **DENIED IN PART**. Evidence that tends to prove an equitable defense and no other will be excluded. Evidence of correspondence between

St. Jude and Volcano in 1997-99, the probative value of which depends on silence, is excluded under Federal Rule 403 in view of the ambiguous nature of the evidence and distance in time from the relevant time period for infringement.

4.   Volcano's Motion *in Limine* No. 4 to exclude evidence regarding non-asserted patents EP 1,658,808 and U.S. 6,908,442 is **GRANTED IN PART** and **DENIED IN PART**. Evidence of or reference to European Patent No. 1,658,808 is excluded as irrelevant to the written description requirement of the '965 Patent.  The motion is **TENTATIVELY DENIED** with respect to U.S. Patent No. 6,908,442 because patents are presumptively valid and separate patentability is relevant to infringement analysis under the doctrine of equivalents.

5.   Volcano's Motion *in Limine* No. 5 to exclude evidence of the expiration date of U.S. Patent No. 5,178,159 is **GRANTED**.  So long as there is no dispute about the dates of particular accused infringing products being made, used, offered for sale or sold before November 2, 2008, there is no reason for the jury to hear the expiration date or the fact that the '159 Patent is expired.

6.   Decision on Volcano's Motion *in Limine* No. 6 to exclude evidence that St. Jude sponsored the F.A.M.E. studies is deferred.

7.   Volcano's Motion *in Limine* No. 7 to exclude evidence previously stricken by the Court is **GRANTED**[1] with leave for St. Jude to apply for leave to use the evidence should Volcano "open the door."

8.   Volcano Motion *in Limine* No. 8 to exclude the proferred evidence of the CardioLab and EP-Workmate Systems is **DENIED**.

---

[1]   As to the video of the Radianalyzer demonstration at the 2001 Euro PCR, the Court will separately rule on the objections to the Magistrate Judge's decision.  (D.I. 243).

9.      Volcano's *Motion in Limine* No. 9 to exclude evidence related to SmartFlow from after December 19, 2001 is **DENIED**.

Entered this 9th day of October, 2012.

United States District Judge

PROPOSED PRETRIAL ORDER

# EXHIBIT 18.4

**FERRING/REBIOTIX'S REPLY IN SUPPORT OF MOTION**
***IN LIMINE* NO. 4**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) C.A. No. 21-1694-JLH |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) **FILED UNDER SEAL** ) ) |
| Defendants. | ) ) ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) ) ) ) ) ) ) |
| Counterclaim-Plaintiffs/Reply Defendants, | ) ) |
| v. | ) ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) ) ) |
| Counterclaim-Defendants/Reply Plaintiffs. | ) ) |

<u>**FERRING/REBIOTIX'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 4**</u>

Finch is well aware of how prejudicial purported "copying" evidence can be in a patent infringement suit. That is why it is fighting so hard to keep that as a theme in the case. But its allegations of copying have no legal basis. Secondary indicia are no longer at issue for the UMN patents, because Ferring is not pursuing obviousness. And for purposes of willfulness, so-called "copying" evidence relating to a patent that has yet to issue is not admissible, absent exceptional circumstances. *Bioverativ Inc. v. CSL Behring LLC*, No. 17-914-RGA, 2020 WL 1332921, at *3 (D. Del. Mar. 23, 2020). This is not a case where the accused infringer duplicated a patentee's product wholesale. Finch never even achieved an approved product, and general fecal transplant technology has long been in the prior art. Rather, here, Ms. Jones explored the possibility of UMN working together with her, and then the parties went separate ways. It cannot be correct that mere exposure to materials of another amounts to willfulness, especially where the asserted patents would not issue for years. The law requires something egregious. *Id.* (considering whether pre-issuance conduct amounted to "elaborate copying" or "'consciously wrongful,' 'malicious' behavior."). Notably, Finch cannot and does not show that Ferring implemented an express protocol or process from a UMN document or patent application in a consciously wrongful or malicious manner. Its allegations are far more amorphous. Finch should not be able to imply an NDA breach where UMN saw no basis for such a claim.

Nor does Finch's vague contention that "copying" can be relevant to issues besides secondary indicia overcome the significant prejudice to Ferring if this evidence is admitted. Those same arguments were raised and rejected in *Shure* and *Finjan*, where the party offering copying evidence also argued it was relevant to other issues. (*See* D.I. 661 in *Shure Inc. v. Clearone, Inc.,* 1:19-cv-01343, at pdf pgs. 9-11 (D. Del. Nov. 16, 2021)); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-3999-BLF, 2015 WL 4129193, at *5-6 (N.D. Cal. July 8, 2015).

Dated: July 15, 2024

WOMBLE BOND DICKINSON (US) LLP

*Of Counsel:*

*/s/ Mary W. Bourke*

Daralyn J. Durie
Matthew Chivvis
Rachel Dolphin
Ramsey Fisher
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415-268-6055
ddurie@mofo.com
mchivvis@mofo.com
rdophin@mofo.com
ramseyfisher@mofo.com

Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
Zachary Murphy (#6881)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Mary.Bourke@wbd-us.com
Dana.Severance@wbd-us.com
Daniel.Attaway@wbd-us.com
Zachary.Murphy@wbd-us.com

John B. Bourke (#6534)
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 765-6267
Ben.Bourke@wbd-us.com

Whitney O'Byrne
Sara Doudar
MORRISON & FOERSTER LLP
701 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213-892-4345
wobyrne@mofo.com
sdoudar@mofo.com

*Attorneys for Ferring Pharmaceuticals Inc.
and Rebiotix Inc.*

PROPOSED PRETRIAL ORDER

# EXHIBIT 18.5

**FERRING/REBIOTIX'S MOTION *IN LIMINE* FOR
ADVERSE INFERENCE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) ) ) |
| | ) C.A. No. 21-1694-JLH |
| Defendants. | ) |
| | ) **FILED UNDER SEAL** |
| | ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) ) ) ) ) |
| | ) |
| Counterclaim-Plaintiffs/Reply Defendants, | ) |
| | ) |
| v. | ) |
| | ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) ) |
| | ) |
| Counterclaim-Defendants/Reply Plaintiffs. | ) |
| | ) |

## FERRING/REBIOTIX'S MOTION IN LIMINE FOR ADVERSE INFERENCE

## I.    INTRODUCTION

Ferring Pharmaceuticals Inc. and Rebiotix Inc. (collectively "Ferring") is entitled to evidentiary sanctions because Finch Therapeutics Group, Inc., Finch Therapeutics, Inc, Finch Therapeutics Holdings, LLC, and Regents of the University of Minnesota (collectively "Finch") deprived Ferring the opportunity to depose Dr. Thomas Borody—the only named inventor on four of the patents-at-issue in this case. Ferring pursued Dr. Borody's deposition for over a year. Finch delayed. And, after Dr. Borody told Finch his testimony would be contrary to its interests, Finch allowed Dr. Borody to unilaterally cancel his deposition. Finch's actions have prejudiced Ferring. As a result, Ferrring is entitled to an adverse inference that Dr. Borody's testimony would have been unfavorable to Finch and the admission of documents that could have been authenticated through Dr. Borody's deposition testimony.[1]

## II.   BACKGROUND

Ferring first sought the deposition of Dr. Borody in November 2022. Finch's counsel represented Dr. Borody and Finch agreed to pay their fees. (Exs. A, B, C.) For more than a year, Ferring attempted to secure Dr. Borody's deposition. In January 2023, the parties agreed to schedule Dr. Borody's deposition for mid-March in Los Angeles, California (Ex. D.) Finch informed Ferring that ████████████ and would not be able to travel from Australia. (*Id.*) Finch committed to providing a new date and confirmed that it "intend[ed] to bring Dr. Borody

---

[1] The parties have stipulated to the authenticity of documents produced by a party or pursuant to a subpoena in this matter. (*See* Pretrial Order, ¶ 32). Courts routinely permit admission of trial exhibits without a sponsoring witness. *See, e.g., TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.,* No. 11-CV-00774-VC, 2017 WL 952955, at *1 (N.D. Cal. Mar. 12, 2017) ("There is no freestanding 'sponsoring witness' requirement in the Federal Rules of Evidence."); *Adams v. United States,* No. CIV 03-0049-E-BLW, 2009 WL 1884387, at *2 (D. Idaho June 28, 2009) (same); *Innovention Toys, LLC v. MGA Ent., Inc.*, No. C.A. 07-6510, 2012 WL 5398476, at *8 (E.D. La. Nov. 4, 2012) (same); *New York v. UPS*, 942 F.3d 554, 593 (2d Cir. 2019) (same).

to trial." (Ex. E.) Finch then requested that Ferring take Dr. Borody's deposition in Australia or proceed remotely in May or June 2023. (Ex. F.) Ferring agreed to travel to Australia and Finch set the deposition for June 6, the day before fact discovery closed. (Exs. G, H.)

On May 20, Dr. Borody canceled his deposition because ███████████████████ to sit for his deposition. (Ex. I.) Despite Finch's repeated assurances, Dr. Borody's deposition was never rescheduled, and fact discovery closed. (D.I. 193.)

On May 18, 2023—just two days before Ferring was informed Dr. Borody would not appear—Dr. Borody's personal attorney informed Finch that the four patents-at-issue in his name were not properly assigned to Finch and Finch did not own them. (Ex. J.) Dr. Borody's attorney further stated that "[w]hile [Dr. Borody] will co-operate with the requested deposition, clearly it will not assist Finch if he truthfully deposes matters which are contrary to its interests." (*Id.*) Following discussion with Finch, Dr. Borody canceled his deposition because of ████████ ██████████ the next day. (Exs. K, I.)

## III.   ARGUMENT

The Court should exercise its "inherent power to control litigation" to remedy Finch's misconduct and ensure a fair trial. *Micron Tech., Inc. v. Rambus Inc*., 645 F.3d 1311, 1326 (Fed. Cir. 2011) (internal citations omitted); *see also* FED. R. CIV. P. 37(b)(2). In considering the proper remedy, the Court must assess "'(1) the degree of fault of the [offending party] . . .; (2) the degree of prejudice suffered…; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party . . . .'" *Victaulic Co. v. HiTHERM, LLC*, No. 21-cv-5077, 2024 WL 1364258, at *4 (E.D. Pa. Mar. 28, 2024) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). All three factors weigh in favor of Ferring's request.

***First***, Finch is at fault in the same way counsel in *Victaulic* was at fault. Finch's counsel represented that they were counsel for Dr. Borody and that he would be available for a

deposition on June 6, 2023. *Id.* at *3. (*See also* Exs. G, H.) Despite these assurances, Dr. Borody's deposition was canceled "at the last minute" and "ultimately never took place." *Victaulic*, 2024 WL 1364258, at *1. (*See also* Exs. I, J, K.)

**Second**, Ferring has suffered significant prejudice "by not being able to depose a key witness[.]" *Victaulic*, 2024 WL 1364258, at *4. As the sole inventor on four of the six patents at issue, Dr. Borody presumably would have offered key testimony that he retains all rights to those patents. Ferring also would have been able to authenticate and lay the foundation for admission of certain documents at trial. Finch's misconduct threatens to "interfere[] with the rightful resolution of the case." *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 319  (D. Del. 2013).

**Third**, as in *Victaulic*, "a sanction lesser than an adverse inference would fail to remedy the prejudice" as Ferring lost the ability to secure critical testimony regarding Finch's standing to assert Dr. Borody's patents. 2024 WL 1364258, at *4; *see also C.B. v. Moreno Valley Unified Sch. Dist.,* 2023 WL 6782320, at *9 (C.D. Cal. Sept. 18, 2023) (granting an adverse inference instruction after "failures to properly appear for deposition after months of promises to do so"); *Sec. & Exch. Comm'n v. Hong,* No. 220CV04080MCSRAO, 2021 WL 4923310, at *1 (C.D. Cal. Oct. 21, 2021) (providing adverse inference instruction based on refusal to appear for a deposition); *Chase Home Fin. LLC v. Maalouf*, No. CV WGC-07-1645, 2009 WL 10701991, at *4 (D. Md. Mar. 25, 2009), *aff'd*, 376 F. App'x 328 (4th Cir. 2010) (same); *De Saro v. United States*, 305 F. Supp. 2d 1330, 1333 (S.D. Fla. 2004) (same).

The Court should follow this guidance and grant Ferring's request for an adverse inference. And to assure fairness of the proceedings, the Court should use its discretion to admit documents into evidence on which Dr. Borody could have served as the sponsoring witness.

Dated: June 27, 2024

*Of Counsel:*

Daralyn J. Durie
Matthew Chivvis
Rachel Dolphin
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415-268-6055
ddurie@mofo.com
mchivvis@mofo.com
rdophin@mofo.com

Sara Doudar
MORRISON & FOERSTER LLP
701 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213-892-4345
sdoudar@mofo.com

WOMBLE BOND DICKINSON (US) LLP

*/s/ Mary W. Bourke*
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
Zachary Murphy (#6881)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Mary.Bourke@wbd-us.com
Dana.Severance@wbd-us.com
Daniel.Attaway@wbd-us.com
Zachary.Murphy@wbd-us.com

John B. Bourke (#6534)
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 765-6267
Ben.Bourke@wbd-us.com

*Attorneys for Ferring Pharmaceuticals Inc.
and Rebiotix Inc.*

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit A to Ferring/Rebiotix's Motion in Limine No. 5**

**Boots, Kimberly P.**

| | |
|---|---|
| **From:** | Ross, Ashley <ashley.ross@kirkland.com> |
| **Sent:** | Friday, December 2, 2022 1:55 PM |
| **To:** | Attaway, Daniel |
| **Cc:** | rebyota; Afinogenova, Alina; Alper, Adam R.; Carson, Patricia A.; De Vries, Mike W.; *farnan@rlf.com; #Finch_Rebiotix; Pedi, Nicole K. |
| **Subject:** | RE: Ferring Pharmaceuticals et al.  v. Finch Therapeutics Group, Inc. et al. 21-1694-RGA: D.I. 73-74 |

External (ashley.ross@kirkland.com)

Report This Email  FAQ

Daniel,

Dr. Allegretti is not available during the range indicated in the Notice of Deposition served below.  She is instead available on January 10.  Please confirm that Plaintiffs will take her deposition then.

Regards,

Ashley

**Ashley Ross**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900

ashley.ross@kirkland.com

---

**From:** Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>
**Sent:** Wednesday, November 30, 2022 3:13 PM
**To:** Afinogenova, Alina <alina.afinogenova@kirkland.com>; Alper, Adam R. <aalper@kirkland.com>; Carson, Patricia A. <patricia.carson@kirkland.com>; De Vries, Mike W. <michael.devries@kirkland.com>; *farnan@rlf.com <farnan@rlf.com>; Ross, Ashley <ashley.ross@kirkland.com>; #Finch_Rebiotix <Finch_Rebiotix@kirkland.com>; Pedi, Nicole K. <Pedi@rlf.com>
**Cc:** rebyota <rebyota@wbd-us.com>
**Subject:** Ferring Pharmaceuticals et al. v. Finch Therapeutics Group, Inc. et al. 21-1694-RGA: D.I. 73-74

Dear Counsel,

Attached please find the following:

    (1) *Plaintiffs' Notice of Deposition of Dr. Jessica Allegretti*, and

    (2) *Plaintiffs' Notice of Subpoena to Testify Directed to Thomas Borody*.

Regards,

Kimberly

**Kimberly P. Boots**
Paralegal
Womble Bond Dickinson (US) LLP

**d:**  302-252-4342
**e:**  Kimberly.Boots@wbd-us.com

1313 North Market Street
Suite 1200
Wilmington, DE 19801



**womblebonddickinson.com**



This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit B to Ferring/Rebiotix's Motion in Limine No. 5**

**Boots, Kimberly P.**

| | |
|---|---|
| **From:** | Ross, Ashley <ashley.ross@kirkland.com> |
| **Sent:** | Monday, July 18, 2022 9:57 PM |
| **To:** | Attaway, Daniel |
| **Cc:** | Afinogenova, Alina; Alper, Adam R.; Parrado, Alvaro; Carson, Patricia A.; De Vries, Mike W.; *farnan@rlf.com; Pedi, Nicole K.; Horstman, N. Kaye; rebyota; Boots, Kimberly P. |
| **Subject:** | Rebiotix v. Finch || Dr. Borody |

External (ashley.ross@kirkland.com)

Report This Email   FAQ

Counsel,

Kirkland can accept service of a subpoena on Dr. Borody's behalf.

Best regards,

Ashley

**Ashley Ross**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900

ashley.ross@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit C to Ferring/Rebiotix's Motion in Limine No. 5**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Patricia A. Carson
To Call Writer Directly:
+1 212 446 6443
patricia.carson@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

October 6, 2022

Dr. Thomas J Borody
MD PhD DSc FRACP FACP FACG AGAF FRSN
Director
Centre for Digestive Diseases
Lvl 1, 229 Great North Road
Five Dock NSW 2046
Australia
Phone: 61 2 9713 4011
Fax: 61 2 9712 1675
www.cdd.com.au

Re:    *Ferring Therapeutics Inc. and Rebiotix Inc. v. Finch Therapeutics et. al.,*
       C.A. No. 21-1694-RGA

Dear Dr. Borody:

As you are aware, Kirkland & Ellis LLP ("Kirkland & Ellis") represents Finch Therapeutics, Inc. ("Finch") in the above-referenced litigation.

As you also know, you have been subpoenaed to give testimony at a deposition and to provide documents in this case, and Kirkland & Ellis LLP has accepted service of such subpoena on your behalf at your consent. Finch has further agreed to provide you with legal representation for the limited purpose of preparing for and giving a deposition and producing documents in this litigation. Finch has agreed to provide such representation, at its cost, under the terms set forth in this letter.

As has been discussed with you by telephone, Kirkland & Ellis is not currently aware of any conflict of interest between you and Finch. However, in the event that a conflict of interest arises (or is later determined to exist) and Kirkland & Ellis determines in its sole discretion that it is unable to continue to represent you, Kirkland & Ellis reserves the right to resign from this limited representation. You hereby consent to such right of resignation by Kirkland & Ellis and agree that you will not assert any conflict of interest or other objection that would preclude Kirkland & Ellis from representing Finch or its affiliates in this current matter or any other

Austin   Bay Area   Beijing   Boston   Brussels   Chicago   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   Paris   Salt Lake City   Shanghai   Washington, D.C.

CONFIDENTIAL INFORMATION

# KIRKLAND & ELLIS LLP

Dr. Thomas J Borody
October 6, 2022
Page 2

matters, including adverse to you.  To the extent that Kirkland & Ellis determines that it cannot continue the representation of you, you agree to seek separate legal counsel in such event.

Kirkland & Ellis acknowledges, and you agree, that there is a common interest as between you and Finch for purposes of responding to the subpoena and sitting for deposition in this action.  As such, any privileged information or work product provided to you by Finch during the course of this representation is subject to a joint defense or common interest privilege such that the protections from discovery afforded to privileged information and work product are preserved and are not waived.  You also agree that, although communications between you and Finch's counsel, Kirkland & Ellis (as well as communications between you and other attorneys retained by Finch to work on this litigation), may be privileged as attorney-client communications, such communications will not be confidential as between you and Finch. Therefore, Kirkland & Ellis may use such information obtained from you in connection with the representation of Finch regarding the matters contemplated by this letter, including adverse to you, and you hereby agree not to raise any objection to such use.

In addition, we want to be fair not only to you but also to our other clients.  Because your current legal interests (and future legal interests) may differ from those of our other clients, it is possible that one of our other clients might at some time take a position contrary to yours in another matter in which we have been retained.  If such a conflict of interest exists or arises in the future, you hereby agree to waive any such conflict of interest or other objection that would prevent our representation of another client in that matter.  Specifically, our representation of you in connection with your deposition will be with the understanding that our work for you will not prevent us from continuing any current representation of another client or assuming any future representation in other matters that another client may request.

You have a right to obtain separate counsel to review independently the terms of this retention before you agree to those terms if you desire, and we have advised you of your right to retain separate counsel to represent you in response to the subpoena in this case.

If you agree to the joint representation as described herein, please confirm your agreement by signing this letter in the space provided below and returning it to us.  If you accept our representation of you for purposes of this subpoena, our first step will be to contact plaintiffs' counsel to set a mutually convenient date for the deposition.  Assuming that you agree to have us represent you, please tell anyone who attempts to contact you regarding the subpoena or this litigation that you are represented by counsel and refer such person(s) to me.

If you have any questions or concerns, please feel free to contact ·me.

## KIRKLAND & ELLIS LLP

Dr. Thomas J Borody
October 6, 2022
Page 3

Sincerely,

/s/Patricia A. Carson

Patricia A. Carson

I have read this letter, and I understand and agree with the contents. I request Kirkland & Ellis LLP, on behalf of Finch, to represent me for the limited purpose of preparing for and defending any depositions and associated document requests arising out of the *Ferring Therapeutics Inc. and Rebiotix Inc. v. Finch Therapeutics et. al.*, C.A. No. 21-1694-RGA matter noted herein. I hereby waive my objection to any conflict of interest that Kirkland & Ellis LLP has or may have in this representation.

Dr. Thomas J Borody

Date: 11 / 10 / 2022

CONFIDENTIAL INFORMATION

FINCH_0469387

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit D to Ferring/Rebiotix's Motion in Limine No. 5**

## Boots, Kimberly P.

| | |
|---|---|
| **From:** | Ross, Ashley <ashley.ross@kirkland.com> |
| **Sent:** | Monday, January 30, 2023 9:48 PM |
| **To:** | Bourke, Mary |
| **Cc:** | Attaway, Daniel; Boots, Kimberly P.; Carson, Patricia A.; Afinogenova, Alina |
| **Subject:** | RE: Ferring v. Finch, No. 21-cv-1694-RGA--Borody documents and deposition |

External (ashley.ross@kirkland.com)

Report This Email  FAQ

Mary,

We had heard last week that ███████████████ and had hoped to have an answer on when he would be available by the end of the week.  However, █████████████████████████████████████████████, and that his trip in March may not go ahead.  We will provide a further response when we have more information.

That said, we can confirm we will produce documents on a rolling basis.

Thanks

Ashley

**Ashley Ross**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
T +1 212 446 4954
F +1 212 446 4900

ashley.ross@kirkland.com

---

**From:** Bourke, Mary <Mary.Bourke@wbd-us.com>
**Sent:** Monday, January 30, 2023 4:11 PM
**To:** Carson, Patricia A. <patricia.carson@kirkland.com>
**Cc:** Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>; Ross, Ashley <ashley.ross@kirkland.com>; Afinogenova, Alina <alina.afinogenova@kirkland.com>
**Subject:** RE: Ferring v. Finch, No. 21-cv-1694-RGA--Borody documents and deposition

Hi Pat

 Any updates. You said you would be able to provide a date last week. Please let us know about the date and documents.

Mary

**From:** Bourke, Mary <Mary.Bourke@wbd-us.com>
**Sent:** Thursday, January 26, 2023 4:18 PM
**To:** Carson, Patricia A. <patricia.carson@kirkland.com>
**Cc:** Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>; Ross, Ashley <ashley.ross@kirkland.com>; Afinogenova, Alina <alina.afinogenova@kirkland.com>
**Subject:** RE: Ferring v. Finch, No. 21-cv-1694-RGA--Borody documents and deposition


Thanks Pat. If you could let me know asap what date you would be producing Dr. Borody and where that would be helpful for planning.

Also I presume that you will not be withholding Dr. Borody's documents until two weeks before March 18 but will be producing them asap.

Please confirm

Mary


**From:** Carson, Patricia A. <patricia.carson@kirkland.com>
**Sent:** Wednesday, January 25, 2023 9:52 AM
**To:** Bourke, Mary <Mary.Bourke@wbd-us.com>
**Cc:** Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>; Ross, Ashley <ashley.ross@kirkland.com>; Afinogenova, Alina <alina.afinogenova@kirkland.com>
**Subject:** RE: Ferring v. Finch, No. 21-cv-1694-RGA--Borody documents and deposition


Mary,

Thanks for your email.  We can confirm that we will be providing at least the bulk of Dr. Borody's documents at least two weeks in advance of March 18 when the Malibu Microbiome Meeting is scheduled.  We have reached out to Dr. Borody to obtain his preference for a date in that time frame and hope to be able to provide you with options later this week.

Thanks,

Pat



**Patricia A. Carson**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 6443  **M** +1 917 297 5954


patricia.carson@kirkland.com

**From:** Bourke, Mary <Mary.Bourke@wbd-us.com>
**Sent:** Tuesday, January 24, 2023 9:06 AM
**To:** Carson, Patricia A. <patricia.carson@kirkland.com>
**Cc:** Bourke, Mary <Mary.Bourke@wbd-us.com>; Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>
**Subject:** Ferring v. Finch, No. 21-cv-1694-RGA--Borody documents and deposition


Pat—

I wanted to follow up on our earlier conversation regarding the date for Dr. Borody's deposition. As I mentioned, our understanding is that Dr. Borody will be in California in mid-March for the Malibu Microbiome Conference, where he is listed as being a speaker. Provided that Dr. Borody's documents are produced at least two weeks in advance, we would be willing to schedule his deposition in Los Angeles, either before or after the conference, and would be willing to host the deposition at our offices in LA.

Could you please provide an update on your document production from Dr. Borody and his preference for a deposition date?

Kind regards,

Mary


**Mary Bourke**
Partner
Womble Bond Dickinson (US) LLP

**d:** 302-252-4333              1313 North Market Street
**m:** 610-212-6685             Suite 1200
**e:** Mary.Bourke@wbd-us.com   Wilmington, DE 19801



**womblebonddickinson.com**



This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of

this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit E to Ferring/Rebiotix's Motion in Limine No. 5**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States

Ashley Cade
To Call Writer Directly:
+1 202 389 3381
ashley.cade@kirkland.com

+1 202 389 5000

Facsimile:
+1 202 389 5200

www.kirkland.com

February 8, 2023

**By E-mail**

Daniel Attaway                                                **CONFIDENTIAL**
Womble Bond Dickinson
1313 North Market Street
Suite 1200
Wilmington, DE 19801

Re:   *Ferring Pharmaceuticals Inc. et al v. Finch Therapeutics Group, Inc. et. al*,
C.A. No. 21-cv-1694-RGA (D. Del.):

Dear Daniel:

I write in response to your February 7, 2023 letter regarding the parties ongoing discussions for depositions in this case.

First, we confirm we can accept a subpoena to Dr. Kieper on his behalf.

Second, we appreciate Rebiotix's willingness to discuss deposition locations other than in Delaware. We confirm Finch/UMN are willing to do the same.

Third, thank you for providing alternative time frames for Mr. Burgess and Mr. Smith's depositions. We are conferring with Mr. Burgess and will revert with an alternative date. Mr. Smith will be made available for deposition on April 4, 2023, at Kirkland's Boston office. Please confirm this date as soon as possible. Please also confirm the following deposition dates as soon as possible:[1]

- Mr. Anderson: April 11, 2023, in Minneapolis;

- Mr. Straate: April 20, 2023, in Minneapolis;

- Dr. Weingarden: April 28, 2023, at Kirkland's Palo Alto office;

---

[1]   Mr. Straate and Dr. Weingarden have extremely limited availability in April and May.

## KIRKLAND & ELLIS LLP

Daniel Attaway
February 8, 2023
Page 2

- Dr. Hamilton:  May 5, 2023, in Minneapolis; and

- Dr. Sadowsky:  May 16, 2023, in Minneapolis.

We will provide a date for Dr. Khoruts in due course.  When can we expect to receive proposed deposition dates from the persons that UMN/Finch have noticed for deposition?

Fourth, ███████████████████████████████████████████████████████████ We confirm he will not be at the Malibu Microbiome conference in mid-March.  We remain willing to meet and confer with Rebiotix regarding the location of Dr. Borody's deposition once we have an update on his health status including, if necessary, proceeding with his deposition in Australia.  Please explain why, given the extremely long flight, ████████████████████, Rebiotix is unwilling to agree to a remote deposition.  To be clear, we will be in touch regarding a date and location for Dr. Borody's deposition once we have an update on his health status, including whether Dr. Borody will be able to travel internationally.  We intend to bring Dr. Borody to trial ████, and he is able to travel internationally.

Finally, regarding Finch/UMN's notice of deposition to Ms. Kuphal, please confirm Rebiotix will not bring Ms. Kuphal to trial.  Please also let us know if Rebiotix intends to identify another regulatory witness on their Rule 26 initial disclosures.

Regards,

*/s/ Ashley Cade*

Ashley Cade

cc:      Counsel of Record

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit F to Ferring/Rebiotix's Motion in Limine No. 5**

## Boots, Kimberly P.

| | |
|---|---|
| **From:** | Cade, Ashley <ashley.cade@kirkland.com> |
| **Sent:** | Friday, March 10, 2023 10:53 AM |
| **To:** | Bourke, Mary; Attaway, Daniel; Afinogenova, Alina; Alper, Adam R.; Parrado, Alvaro; Carson, Patricia A.; De Vries, Mike W.; *farnan@rlf.com; #Finch_Rebiotix; Schmidt, Leslie M.; Pedi, Nicole K.; Ross, Ashley |
| **Cc:** | Boots, Kimberly P.; Bourke, Ben; Murphy, Zachary; Seifert, Kimberlynn; Severance, Dana; Davis, Joshua P.; rebyota |
| **Subject:** | RE: Ferring v. Finch, No. 21-cv-1694-RGA--depositions |

External (ashley.cade@kirkland.com)

Report This Email  FAQ

Daniel,

Thank you for providing the location for the depositions of Ferring's witnesses at the Westin Hotel in downtown Minneapolis. Further to your March 3 email, I can confirm that Finch/UMN will make their witnesses available at the W Minneapolis at the Foshay. Finch/UMN also confirm the dates/locations Ferring offered for Ms. Bancke, Mr. Green, Mr. Bell, and Ms. Wannenberger. Additionally, could you please let us know whether Mr. Berman will be made available at Womble's offices in New York or in Delaware?

Further to my March 6 email, Mr. Burgess is available for deposition on April 26 at Kirkland's office in Boston. Please let us know if this date and location works for Ferring.

I also write regarding your February 27 letter. First, Ferring offered the following counter-proposal regarding depositions of individuals where one party has stated it will not bring that witness to trial:

> Ferring/Rebiotix will agree to the following for individuals listed on the parties initial disclosures: if a party listing an individual affirmatively represents that the party will not call that individual at trial and the party later decides to call the listed individual at trial, then the parties will negotiate in good faith to determine an appropriate date, time, and length of deposition for the individual, without good cause shown.

We agree, and further propose expanding this agreement beyond those witnesses listed on the parties' initial disclosures. This means that, to the extent either party affirmatively states it will not bring a noticed witness to trial, but later chooses to do so, the other party will have the opportunity to depose that witness, and the parties will negotiate in good faith to determine an appropriate date, time, and length of deposition for that individual, without good cause shown. Please let us know whether you are willing to agree to Finch/UMN's proposal. We are happy to confer, if helpful.

Finch/UMN also confirm that, absent a representation to the contrary for an absolute time limit on a deposition, the parties will operate with the understanding that the deposition time limits are for "on-the-record" time.

With respect to Dr. Borody, thank you for working with Finch/UMN to find a time and location that will work for Dr. Borody, given his health status. We are working with Dr. Borody to find time in May or June of this year, and will revert once we have a date. Can you please confirm Ferring will agree to take his deposition in Australia, or whether Ferring will proceed remotely?

Finally, Finch/UMN confirm that they do not intend to call the witnesses listed in your February 27 letter to trial.  Finch/UMN reserve the right to revise this statement as the case progresses.


Thank you,
Ashley Cade


**Ashley Cade**

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004
**T** +1 202 389 3381  **M** +1 202 957 9938
**F** +1 202 389 5200

ashley.cade@kirkland.com

---

**From:** Bourke, Mary <Mary.Bourke@wbd-us.com>
**Sent:** Tuesday, March 7, 2023 9:35 AM
**To:** Cade, Ashley <ashley.cade@kirkland.com>; Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Afinogenova, Alina <alina.afinogenova@kirkland.com>; Alper, Adam R. <aalper@kirkland.com>; Parrado, Alvaro <alvaro.parrado@kirkland.com>; Carson, Patricia A. <patricia.carson@kirkland.com>; De Vries, Mike W. <michael.devries@kirkland.com>; *farnan@rlf.com <farnan@rlf.com>; #Finch_Rebiotix <Finch_Rebiotix@kirkland.com>; Schmidt, Leslie M. <leslie.schmidt@kirkland.com>; Pedi, Nicole K. <Pedi@rlf.com>; Ross, Ashley <ashley.ross@kirkland.com>
**Cc:** Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>; Bourke, Ben <Ben.Bourke@wbd-us.com>; Murphy, Zachary <Zachary.Murphy@wbd-us.com>; Seifert, Kimberlynn <Kimberlynn.Seifert@wbd-us.com>; Severance, Dana <Dana.Severance@wbd-us.com>; Davis, Joshua P. <Joshua.P.Davis@wbd-us.com>; rebyota <rebyota@wbd-us.com>
**Subject:** RE: Ferring v. Finch, No. 21-cv-1694-RGA--depositions


Thanks Ashley for your response.

---

**From:** Cade, Ashley <ashley.cade@kirkland.com>
**Sent:** Tuesday, March 7, 2023 9:31 AM
**To:** Bourke, Mary <Mary.Bourke@wbd-us.com>; Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Afinogenova, Alina <alina.afinogenova@kirkland.com>; Alper, Adam R. <aalper@kirkland.com>; Parrado, Alvaro <alvaro.parrado@kirkland.com>; Carson, Patricia A. <patricia.carson@kirkland.com>; De Vries, Mike W. <michael.devries@kirkland.com>; *farnan@rlf.com <farnan@rlf.com>; #Finch_Rebiotix <Finch_Rebiotix@kirkland.com>; Schmidt, Leslie M. <leslie.schmidt@kirkland.com>; Pedi, Nicole K. <Pedi@rlf.com>; Ross, Ashley <ashley.ross@kirkland.com>
**Cc:** Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>; Bourke, Ben <Ben.Bourke@wbd-us.com>; Murphy, Zachary <Zachary.Murphy@wbd-us.com>; Seifert, Kimberlynn <Kimberlynn.Seifert@wbd-us.com>; Severance, Dana <Dana.Severance@wbd-us.com>; Davis, Joshua P. <Joshua.P.Davis@wbd-us.com>; rebyota <rebyota@wbd-us.com>
**Subject:** RE: Ferring v. Finch, No. 21-cv-1694-RGA--depositions


Mary,

Thank you for your email. We apologize if our email of March 6 postponing Mr. Burgess's deposition scheduled for March 14 in Boston inconvenienced you or members of your team, particularly to the extent that travel arrangements may have already been made.

At the time we scheduled Mr. Burgess's deposition, Ferring had not served 30(b)(6) topics on Finch.  Last week (on February 28), Ferring served 89 30(b)(6) topics on Finch, and three days later on March 3, asked that Finch identify the topics it would designate Mr. Burgess for by the following day, Saturday, March 4.   Having reviewed the 89 topics and in consultation with our client, we determined that Finch will be designating Mr. Burgess to testify as to some of those topics, subject to any objections regarding scope etc. and as negotiated by the parties.  To allow the parties sufficient time to confer so that Mr. Burgess can be properly prepared to testify, we believe that it is in both parties' interests to postpone his deposition.

We hope to provide a new date for Mr. Burgess soon, and we hope you will work with us to find a location that is convenient for Mr. Burgess.

Thank you,

Ashley

**Ashley Cade**

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004
**T** +1 202 389 3381  **M** +1 202 957 9938
**F** +1 202 389 5200

ashley.cade@kirkland.com

---

**From:** Bourke, Mary <Mary.Bourke@wbd-us.com>
**Sent:** Monday, March 6, 2023 9:16 PM
**To:** Cade, Ashley <ashley.cade@kirkland.com>; Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Afinogenova, Alina <alina.afinogenova@kirkland.com>; Alper, Adam R. <aalper@kirkland.com>; Parrado, Alvaro <alvaro.parrado@kirkland.com>; Carson, Patricia A. <patricia.carson@kirkland.com>; De Vries, Mike W. <michael.devries@kirkland.com>; *farnan@rlf.com <farnan@rlf.com>; #Finch_Rebiotix <Finch_Rebiotix@kirkland.com>; Schmidt, Leslie M. <leslie.schmidt@kirkland.com>; Pedi, Nicole K. <Pedi@rlf.com>; Ross, Ashley <ashley.ross@kirkland.com>
**Cc:** Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>; Bourke, Ben <Ben.Bourke@wbd-us.com>; Murphy, Zachary <Zachary.Murphy@wbd-us.com>; Seifert, Kimberlynn <Kimberlynn.Seifert@wbd-us.com>; Severance, Dana <Dana.Severance@wbd-us.com>; Davis, Joshua P. <Joshua.P.Davis@wbd-us.com>; rebyota <rebyota@wbd-us.com>
**Subject:** RE: Ferring v. Finch, No. 21-cv-1694-RGA--depositions

Thank you Ashley . If that is the case Mr. Burgess must be produced in Delaware. We will follow up later with any reimbursement costs that must be paid by Finch for the late notice and cancellation.

Best regards

Mary

**Mary Bourke**
Partner
Womble Bond Dickinson (US) LLP

**d:**  302-252-4333
**m:** 610-212-6685
**e:**  Mary.Bourke@wbd-us.com

1313 North Market Street
Suite 1200
Wilmington, DE 19801




**womblebonddickinson.com**

---

**From:** Cade, Ashley <ashley.cade@kirkland.com>
**Sent:** Monday, March 6, 2023 3:50 PM
**To:** Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Afinogenova, Alina <alina.afinogenova@kirkland.com>; Alper, Adam R. <aalper@kirkland.com>; Parrado, Alvaro <alvaro.parrado@kirkland.com>; Carson, Patricia A. <patricia.carson@kirkland.com>; De Vries, Mike W. <michael.devries@kirkland.com>; *farnan@rlf.com <farnan@rlf.com>; #Finch_Rebiotix <Finch_Rebiotix@kirkland.com>; Schmidt, Leslie M. <leslie.schmidt@kirkland.com>; Pedi, Nicole K. <Pedi@rlf.com>; Ross, Ashley <ashley.ross@kirkland.com>
**Cc:** Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>; Bourke, Ben <Ben.Bourke@wbd-us.com>; Bourke, Mary <Mary.Bourke@wbd-us.com>; Murphy, Zachary <Zachary.Murphy@wbd-us.com>; Seifert, Kimberlynn <Kimberlynn.Seifert@wbd-us.com>; Severance, Dana <Dana.Severance@wbd-us.com>; Davis, Joshua P. <Joshua.P.Davis@wbd-us.com>; rebyota <rebyota@wbd-us.com>
**Subject:** RE: Ferring v. Finch, No. 21-cv-1694-RGA--depositions


Daniel,

Finch intends to designate Mr. Burgess as a 30(b)(6) witness.  We are postponing Mr. Burgess's deposition until after Finch has served its responses and objections to Ferring's 30(b)(6) notice that was served last week.  We will follow-up with a new date in due course.

Regards,

Ashley

**Ashley Cade**

**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W., Washington, D.C. 20004
**T** +1 202 389 3381  **M** +1 202 957 9938
**F** +1 202 389 5200

ashley.cade@kirkland.com

---

**From:** Attaway, Daniel <Daniel.Attaway@wbd-us.com>
**Sent:** Monday, March 6, 2023 1:05 PM
**To:** Afinogenova, Alina <alina.afinogenova@kirkland.com>; Alper, Adam R. <aalper@kirkland.com>; Parrado, Alvaro <alvaro.parrado@kirkland.com>; Cade, Ashley <ashley.cade@kirkland.com>; Carson, Patricia A.

<patricia.carson@kirkland.com>; De Vries, Mike W. <michael.devries@kirkland.com>; *farnan@rlf.com <farnan@rlf.com>; #Finch_Rebiotix <Finch_Rebiotix@kirkland.com>; Schmidt, Leslie M. <leslie.schmidt@kirkland.com>; Pedi, Nicole K. <Pedi@rlf.com>; Ross, Ashley <ashley.ross@kirkland.com>
**Cc:** Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>; Bourke, Ben <Ben.Bourke@wbd-us.com>; Bourke, Mary <Mary.Bourke@wbd-us.com>; Murphy, Zachary <Zachary.Murphy@wbd-us.com>; Seifert, Kimberlynn <Kimberlynn.Seifert@wbd-us.com>; Severance, Dana <Dana.Severance@wbd-us.com>; Davis, Joshua P. <Joshua.P.Davis@wbd-us.com>; rebyota <rebyota@wbd-us.com>
**Subject:** RE: Ferring v. Finch, No. 21-cv-1694-RGA--depositions

Counsel—

As a follow-up to the below, please confirm that Finch is not designating Mr. Burgess as a Rule 30(b)(6) witness.

Kind regards,

Daniel

**Daniel Attaway**
He/Him
Partner
Womble Bond Dickinson (US) LLP

**d:**  302-252-4365
**m:** 773-220-5764
**e:**  Daniel.Attaway@wbd-us.com

1313 North Market Street
Suite 1200
Wilmington, DE 19801



**womblebonddickinson.com**



This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**From:** Attaway, Daniel
**Sent:** Friday, March 3, 2023 2:37 PM
**To:** 'Afinogenova, Alina' <alina.afinogenova@kirkland.com>; 'Alper, Adam R.' <adam.alper@kirkland.com>; 'Alvaro Parrado (alvaro.parrado@kirkland.com)' <alvaro.parrado@kirkland.com>; 'Cade, Ashley' <ashley.cade@kirkland.com>; 'Carson, Patricia A.' <patricia.carson@kirkland.com>; 'De Vries, Michael W. ' <michael.devries@kirkland.com>; 'Farnan, Kelly E.' <farnan@rlf.com>; 'Finch_Rebiotix@kirkland.com' <Finch_Rebiotix@kirkland.com>; 'Leslie M. Schmidt (leslie.schmidt@kirkland.com)' <leslie.schmidt@kirkland.com>; 'Pedi, Nicole K.' <Pedi@rlf.com>; 'Ross, Ashley L.B. ' <ashley.ross@kirkland.com>
**Cc:** Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Boots, Kimberly P. <Kimberly.Boots@wbd-us.com>;

Bourke, Ben <Ben.Bourke@wbd-us.com>; Bourke, Mary <Mary.Bourke@wbd-us.com>; Murphy, Zachary <Zachary.Murphy@wbd-us.com>; Seifert, Kimberlynn <Kimberlynn.Seifert@wbd-us.com>; Severance, Dana <Dana.Severance@wbd-us.com>; Davis, Joshua P. <Joshua.P.Davis@wbd-us.com>; rebyota <rebyota@wbd-us.com>
**Subject:** Ferring v. Finch, No. 21-cv-1694-RGA--depositions

Counsel,

We write regarding depositions in this case and specifically the notices of depositions for corporate witnesses.

Please confirm that Finch/UMN will provide any designations for Mr. Burgess no later than 5:00 pm tomorrow, 10 days before his scheduled deposition.

For Ferring/Rebiotix's witnesses in Minneapolis, we intend to make them available at the Westin hotel in downtown Minneapolis. Please confirm that Finch/UMN will make their witnesses in Minneapolis available at for deposition at the Foshay.

We expect to provide objections to Finch/UMN's Rule 30(b)(6) notice early next week, but in the interest of finalizing the deposition schedule, Ferring/Rebiotix identify the following additional witnesses who Ferring/Rebiotix intend to designate to provide corporate testimony, as well as dates and locations for their depositions:

Ms. Linde Bancke, who will be made available in Minneapolis on May 3, 2023.

Mr. Matt Green, who will be made available on May 17, 2023 at Womble's offices in Wilmington.

Mr. David Bell, who will be made available on May 19, 2023 at Womble's offices in Wilmington.

Ms. Kristin Wanneberger, who will be made available on May 24, 2023 at Womble's offices in Wilmington.

Please note that Ms. Wanneberger will be traveling from Europe for her deposition, so there is no flexibility in her deposition date.

Kind regards,

Daniel

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit G to Ferring/Rebiotix's Motion in Limine No. 5**

womblebonddickinson.com



**March 14, 2023**

Ashley Cade
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

**Via Email PDF Attachment**

**Re:    Ferring Pharmaceuticals Inc. et al. v. Finch Therapeutics Group, Inc., C.A. No. 21-cv-1694-RGA**

Womble Bond Dickinson (US) LLP

1313 North Market Street
Suite 1200
Wilmington, DE 19801

t:  302.252.4320
f:  302.252.4330

Daniel Attaway
Partner
Direct Dial: 302-252-4365
Direct Fax: 302-661-7712
E-mail: Daniel.Attaway@wbd-us.com

Dear Ashley:

We write further to your March 10, 2023 email responding to various correspondence from us regarding depositions.

First, thank you for confirming the locations for Finch/UMN's witnesses in Minneapolis as well as confirming the dates/locations for the depositions of Ms. Bancke, Mr. Green, Mr. Bell, and Ms. Wannerberger.

We confirm that Mr. Berman will be made available for deposition in our Wilmington, Delaware offices. Please note that Mr. Berman has a hard stop at 3:45 pm. He has indicated that he is willing to begin the deposition as early as 7:00 am. Please let us know what time Finch/UMN would like to start the deposition.

With respect to Mr. Burgess, we are not available on April 26 for his deposition. With respect to Dr. Smith, we are amenable to postponing his deposition. We would request that Finch/UMN make both Mr. Burgess and Dr. Smith available for deposition in the first week of May in Boston on non-consecutive days.

With respect to your counter-proposal regarding depositions, we can agree to your proposed expansion of the agreement to including any noticed witness where the party seeking the deposition did not take the deposition based on a representation that the witness would not testify at trial.

Finally, with respect to Dr. Borody, thank you for the update. To the extent that Dr. Borody can travel to the U.S. for his deposition, our position is that he must do so. We are willing to take his deposition in California or Hawaii to minimize his travel time. To the extent that Dr. Borody is ▮▮▮▮▮▮▮▮▮ to travel to the US, however, we will proceed with his deposition in-person in Australia. Given the various deadlines in the case, we request that he be made available the first week of June, 2023.

Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.



March 14, 2023
Page 2

Kind Regards,

**Womble Bond Dickinson (US) LLP**

Daniel Attaway
Partner

cc:     Counsel of Record

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit H to Ferring/Rebiotix's Motion in Limine No. 5**

## Boots, Kimberly P.

| | |
|---|---|
| **From:** | Ross, Ashley <ashley.ross@kirkland.com> |
| **Sent:** | Tuesday, April 4, 2023 11:33 PM |
| **To:** | Attaway, Daniel |
| **Cc:** | Boots, Kimberly P.; Bourke, Ben; Bourke, Mary; Murphy, Zachary; Seifert, Kimberlynn; Afinogenova, Alina; Alper, Adam R.; Parrado, Alvaro; Carson, Patricia A.; De Vries, Mike W.; *farnan@rlf.com; #Finch_Rebiotix; Schmidt, Leslie M.; Pedi, Nicole K.; Severance, Dana; Davis, Joshua P.; rebyota |
| **Subject:** | Dr. Borody Deposition |

External (ashley.ross@kirkland.com)

Report This Email  FAQ

Daniel,

Dr. Borody will be available for deposition on June 6th in Sydney, Australia.  Please confirm this date.

Thank you,

Ashley

**Ashley Ross**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900

ashley.ross@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit I to Ferring/Rebiotix's Motion in Limine No. 5**

**Boots, Kimberly P.**

| | |
|---|---|
| **From:** | Severance, Dana |
| **Sent:** | Sunday, May 21, 2023 9:52 AM |
| **To:** | Boots, Kimberly P. |
| **Subject:** | FW: MY DEPOSITION |
| | |
| **Importance:** | High |

**Dana Severance**
Partner
Womble Bond Dickinson (US) LLP

**d:** 302-252-4329
**m:** 302-563-1137
**e:** Dana.Severance@wbd-us.com

1313 North Market Street
Suite 1200
Wilmington, DE 19801

 

**womblebonddickinson.com**

---

**From:** Thomas Borody <Thomas.Borody@cdd.com.au>
**Sent:** Saturday, May 20, 2023 8:22 PM
**To:** Bourke, Mary <Mary.Bourke@wbd-us.com>
**Cc:** Marcus Connor <marcus.connor@connorco.com.au>; Bourke, Ben <Ben.Bourke@wbd-us.com>; Severance, Dana <Dana.Severance@wbd-us.com>; Attaway, Daniel <Daniel.Attaway@wbd-us.com>; Murphy, Zachary <Zachary.Murphy@wbd-us.com>; ashley.ross@kirkland.com; patricia.carson@kirkland.com
**Subject:** MY DEPOSITION
**Importance:** High

> **Caution**: External (thomas.borody@cdd.com.au)
>
> First-Time Sender   Details
>
> Report This Email   FAQ

Dear Mrs Bourke,

I hope this email finds you well.

I am contacting you as I understand from the Justia website that you act for Ferring Pharmaceuticals Inc and Rebiotix Inc in the litigation with Finch Therapeutics Inc and its related companies.

As you will be aware, I am due to give my deposition to your team next week at my offices in Sydney, Australia.

I apologise for the inconvenience caused to you and your team, as well as your clients.

I had my Australian attorney, Mr Marcus Connor, recently contact Mrs Ashley Ross of Kirkland & Ellis (who I understand is Finch's external counsel) with my request to reschedule the deposition.

As I've not heard back from them, I've decided to contact you directly given the urgency of this matter.  I've done so as I appreciate that you and/or your staff may have made travel plans to Australia for the deposition next week.

I will ask my Australian attorney to liaise with Finch's external counsel and you about rescheduling my deposition.

But for now let's proceed on the basis the deposition will not occur next week.

I again apologise for any inconvenience caused to you and your team, as well as your clients.

Yours sincerely,

**Kind Regards,**

**Dr Thomas Borody**

MD PhD DSc FRACP FACG AGAF FRSN
Director



**e** thomas.borody@cdd.com.au
**p** +61 2 9713 4011|  www.cdd.com.au
Level 1, 229 Great North Road, Five Dock NSW Australia 2046

Warning: This Communication is private, confidential and may contain legally privileged information. If you have received this message in error please notify the sender by reply email and then delete the message from your computer. Any unauthorised form of reproduction, disclosure or dissemination of this message or any attachment is strictly prohibited. CDD Pty Ltd does not make any warranty as to the confidentiality, reliability or speed of email communications or any attached documents and disclaims all liability for the proper and complete transmission of any information and /or any delay in receipt. Before opening any attachment, please check them for viruses and defects. Although reasonable precautions are taken, CDD Pty Ltd does not warrant this transmission or attachments are free from viruses or similar malicious code and does not accept liability for any consequences to the recipient consequent upon opening or using this e-mail.

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit J to Ferring/Rebiotix's Motion in Limine No. 5**

| **To:** | Matthew_Blischak[mblischak@finchtherapeutics.com] |
| **Cc:** | Mark_Smith[mark@finchtherapeutics.com]; Thomas Borody@cdd.com.au[Thomas.Borody@cdd.com.au] |
| **From:** | Marcus Connor[marcus.connor@connorco.com.au] |
| **Sent:** | Thur 5/18/2023 12:08:52 PM (UTC) |
| **Subject:** | Re: Marcus <--> Matt Introduction |

20150507 Proposed FMT assignment.pdf

Matthew,

Thank you for your call earlier today.



So I would be grateful if you could please investigate this matter at your earliest convenience.

While Tom will co-operate with the requested deposition, clearly it will not assist Finch if he truthfully deposes matters which are contrary to its interests.

In my respectful view, the ownership of the intellectual property related to FMT is likely to be an important matter in your litigation. As a separate matter, it might also be an important matter to Finch if there are material misstatements in its prospectus and shareholder announcements, as well as audited accounts.

I raise those matters not to antagonise you but to rather demonstrate the issue needs to be properly investigated and considered.

That, of course, requires time and the assistance of your external counsel. Given the deposition is next week, it is not ideal to resolve that issue within a matter of days. I instead suggest the deposition be delayed for a few weeks while we work through it. That would be ideal as the amount to be reimbursed to Tom will be an important issue if Tom's views are found to be correct.



If you disagree with my view and require Tom to submit to the deposition next week, then he will do so.

If you agree with my view that more time is required before Tom submits to the deposition,

We appreciate that depositions are serious matters and are not to be taken lightly. We also appreciate that respect needs to be shown to the Court and your opponent. Yet realistically no deposition can occur while Tom is seriously ill.

I look forward to hearing from you at your earliest convenience.

Regards,
Marcus

**Marcus Connor** | Legal Practitioner Director | **Connor & Co Lawyers**
P: +612 9299 6696 | M: +61 405 130 797 | https://connorco.com.au/ | My LinkedIn profile

HIGHLY CONFIDENTIAL INFORMATION

Level 5, 50 Margaret Street, Sydney NSW 2000
GPO Box 1807, Sydney NSW 2000

Before printing, please consider the environment

Liability limited by a scheme approved under Professional Standards Legislation.
Solicitor directors and legal practitioners employed by Connor & Co Lawyers Pty Ltd trading as "Connor & Co" are members of the scheme.

This email and any attachments may be confidential and privileged.   It is intended for the use of the addressee named above.  If you are not the intended recipient of this message, you must not disseminate, copy or take any action on it and you are asked to immediately advise the sender by return email that you are not the intended recipient and destroy the message.  Any views expressed in this message are those of the individual sender, except where the sender states them to be the views of Connor & Co Lawyers Pty Ltd trading as "Connor & Co".

**From:** Mark Smith <mark@finchtherapeutics.com>
**Sent:** Thursday, May 18, 2023 10:23 AM
**To:** Marcus Connor <marcus.connor@connorco.com.au>; Thomas Borody <Thomas.Borody@cdd.com.au>
**Cc:** Marcus_Connor@yahoo.com.au; Matthew Blischak <mblischak@finchtherapeutics.com>
**Subject:** Re: Marcus <--> Matt Introduction

Good to hear from you Markus, I think Matt is separately trying to coordinate times with you on a parallel thread. In the event you two aren't able to connect tonight, let him know if there are windows that would work in our morning/your evening or our evening/your morning and I'll let him follow-up with you to confirm timing and pick up the conversation.
All the best,
Mark

**From:** Marcus Connor <marcus.connor@connorco.com.au>
**Date:** Wednesday, May 17, 2023 at 6:46 PM
**To:** Thomas Borody <Thomas.Borody@cdd.com.au>, Mark Smith <mark@finchtherapeutics.com>
**Cc:** Marcus_Connor@yahoo.com.au <Marcus_Connor@yahoo.com.au>, Matthew Blischak <mblischak@finchtherapeutics.com>
**Subject:** RE: Marcus <--> Matt Introduction
Hi Mark,

Please let me know when you would like to talk.

Regards,
Marcus

**Marcus Connor** | Legal Practitioner Director | **Connor & Co Lawyers**
P: +612 9299 6696 | M: +61 405 130 797 | https://connorco.com.au/ | My LinkedIn profile
Level 5, 50 Margaret Street, Sydney NSW 2000
GPO Box 1807, Sydney NSW 2000

Before printing, please consider the environment

Liability limited by a scheme approved under Professional Standards Legislation.
Solicitor directors and legal practitioners employed by Connor & Co Lawyers Pty Ltd trading as "Connor & Co" are members of the scheme.

This email and any attachments may be confidential and privileged.   It is intended for the use of the addressee named above.  If you are not the intended recipient of this message, you must not disseminate, copy or take any action on it and you are asked to immediately advise the sender by return email that you are not the intended recipient and destroy the message.  Any views expressed in this message are those of the individual sender, except where the sender states them to be the views of Connor & Co Lawyers Pty Ltd trading as "Connor & Co".

**From:** Thomas Borody <Thomas.Borody@cdd.com.au>
**Sent:** Thursday, May 18, 2023 8:42 AM
**To:** Mark Smith <mark@finchtherapeutics.com>; Marcus Connor <marcus.connor@connorco.com.au>
**Cc:** Marcus_Connor@yahoo.com.au; Matthew Blischak <mblischak@finchtherapeutics.com>
**Subject:** Re: Marcus <--> Matt Introduction

Kind regards,

Dr Thomas J Borody
MD PhD DSc FRACP FACP FACG AGAF FRSN
Director
Centre for Digestive Diseases
Lvl 1, 229 Great North Road
Five Dock NSW 2046
Australia
Ph: 61 2 9713 4011
Fax: 61 2 9712 1675
www.cdd.com.au

This e-mail is intended for the use of the addressee only.  It may contain information or attachments, that  are confidential and and are protected by Australian privacy and copyright laws, and/or is legally privileged.  If you are not the intended recipient you are prohibited from disseminating, distributing or copying this e-mail.  If you have received this e-mail in error, please notify the sender immediately by return e-mail and delete this message from any computer.


On 18 May 2023, at 8:31 am, Mark Smith <mark@finchtherapeutics.com> wrote:

Dear Marcus,
I spoke with Dr. Borody (cc-ed) and he indicated that he would like me to connect you with Matt Blischack, Finch's CEO (also cc-ed). I tried your c-legal.com.au address earlier but had a bounce so trying your yahoo address here. Tom, let me know if there is a better way to reach Marcus. Matt may also try his cell phone directly.
All the best,
Mark

FINCH_0469379

**PROPOSED PRETRIAL ORDER**

**EXHIBIT 18-5**

**Exhibit K to Ferring/Rebiotix's Motion in Limine No. 5**

| To: | Matthew_Blischak[mblischak@finchtherapeutics.com] |
|---|---|
| Cc: | Mark Smith[mark@finchtherapeutics.com]; Thomas.Borody@cdd.com.au[Thomas.Borody@cdd.com.au] |
| From: | Marcus Connor[marcus.connor@connorco.com.au] |
| Sent: | Fri 5/19/2023 11:17:29 AM (UTC) |
| Subject: | Re: Marcus <--> Matt Introduction |

Matthew,

Tom and I spoke briefly with Mark this morning (our time).

Mark mentioned that your external counsel, Kirkland & Ellis, may call us with you this weekend.

Please let us know if that is your intention and when such a call might occur.

Regards,
Marcus

Get Outlook for iOS

---

**From:** Marcus Connor
**Sent:** Friday, May 19, 2023 8:26:25 AM
**To:** mblischak@finchtherapeutics.com <mblischak@finchtherapeutics.com>
**Cc:** mark@finchtherapeutics.com <mark@finchtherapeutics.com>; Thomas.Borody@cdd.com.au <Thomas.Borody@cdd.com.au>
**Subject:** RE: Marcus <--> Matt Introduction

Matthew,

Can you please let us know if Tom should reschedule the deposition.

Regards,
Marcus

**Marcus Connor** | Legal Practitioner Director | **Connor & Co Lawyers**
P: +612 9299 6696 | M: +61 405 130 797 | https://connorco.com.au/ | My LinkedIn profile
Level 5, 50 Margaret Street, Sydney NSW 2000
GPO Box 1807, Sydney NSW 2000
 Before printing, please consider the environment

Liability limited by a scheme approved under Professional Standards Legislation.
Solicitor directors and legal practitioners employed by Connor & Co Lawyers Pty Ltd trading as "Connor & Co" are members of the scheme.

This email and any attachments may be confidential and privileged. It is intended for the use of the addressee named above. If you are not the intended recipient of this message, you must not disseminate, copy or take any action on it and you are asked to immediately advise the sender by return email that you are not the intended recipient and destroy the message. Any views expressed in this message are those of the individual sender, except where the sender states them to be the views of Connor & Co Lawyers Pty Ltd trading as "Connor & Co".

---

**From:** Marcus Connor
**Sent:** Thursday, May 18, 2023 10:09 PM
**To:** mblischak@finchtherapeutics.com
**Cc:** mark@finchtherapeutics.com; Thomas.Borody@cdd.com.au
**Subject:** Re: Marcus <--> Matt Introduction

Matthew,

Thank you for your call earlier today.

As discussed, Tom has instructed me that:

HIGHLY CONFIDENTIAL INFORMATION

FINCH_0469365

So I would be grateful if you could please investigate this matter at your earliest convenience.

While Tom will co-operate with the requested deposition, clearly it will not assist Finch if he truthfully deposes matters which are contrary to its interests.

In my respectful view, the ownership of the intellectual property related to FMT is likely to be an important matter in your litigation. As a separate matter, it might also be an important matter to Finch if there are material misstatements in its prospectus and shareholder announcements, as well as audited accounts.

I raise those matters not to antagonise you but to rather demonstrate the issue needs to be properly investigated and considered.

That, of course, requires time and the assistance of your external counsel. Given the deposition is next week, it is not ideal to resolve that issue within a matter of days. I instead suggest the deposition be delayed for a few weeks while we work through it. That would be ideal as the amount to be reimbursed to Tom will be an important issue if Tom's views are found to be correct.

If you disagree with my view and require Tom to submit to the deposition next week, then he will do so.

If you agree with my view that more time is required before Tom submits to the deposition,

We appreciate that depositions are serious matters and are not to be taken lightly. We also appreciate that respect needs to be shown to the Court and your opponent. Yet realistically no deposition can occur while Tom is seriously ill.

I look forward to hearing from you at your earliest convenience.

Regards,
Marcus

**Marcus Connor** | Legal Practitioner Director | **Connor & Co Lawyers**
P: +612 9299 6696 | M: +61 405 130 797 | https://connorco.com.au/ | My LinkedIn profile
Level 5, 50 Margaret Street, Sydney NSW 2000
GPO Box 1807, Sydney NSW 2000
Before printing, please consider the environment

Liability limited by a scheme approved under Professional Standards Legislation.
Solicitor directors and legal practitioners employed by Connor & Co Lawyers Pty Ltd trading as "Connor & Co" are members of the scheme.

This email and any attachments may be confidential and privileged. It is intended for the use of the addressee named above. If you are not the intended recipient of this message, you must not disseminate, copy or take any action on it and you are asked to immediately advise the sender by return email that you are not the intended recipient and destroy the message. Any views expressed in this message are those of the individual sender, except where the sender states them to be the views of Connor & Co Lawyers Pty Ltd trading as "Connor & Co".

**From:** Mark Smith <mark@finchtherapeutics.com>
**Sent:** Thursday, May 18, 2023 10:23 AM
**To:** Marcus Connor <marcus.connor@connorco.com.au>; Thomas Borody <Thomas.Borody@cdd.com.au>
**Cc:** Marcus_Connor@yahoo.com.au; Matthew Blischak <mblischak@finchtherapeutics.com>
**Subject:** Re: Marcus <--> Matt Introduction

Good to hear from you Markus, I think Matt is separately trying to coordinate times with you on a parallel thread. In the event you two aren't able to connect tonight, let him know if there are windows that would work in our morning/your evening or our evening/your morning and I'll let him follow-up with you to confirm timing and pick up the conversation.
All the best,
Mark

**From:** Marcus Connor <marcus.connor@connorco.com.au>
**Date:** Wednesday, May 17, 2023 at 6:46 PM
**To:** Thomas Borody <Thomas.Borody@cdd.com.au>, Mark Smith <mark@finchtherapeutics.com>
**Cc:** Marcus_Connor@yahoo.com.au <Marcus_Connor@yahoo.com.au>, Matthew Blischak <mblischak@finchtherapeutics.com>
**Subject:** RE: Marcus <--> Matt Introduction
Hi Mark,

Please let me know when you would like to talk.

Regards,
Marcus

**Marcus Connor** | Legal Practitioner Director | **Connor & Co Lawyers**
P: +612 9299 6696 | M: +61 405 130 797 | https://connorco.com.au/ | My LinkedIn profile
Level 5, 50 Margaret Street, Sydney NSW 2000
GPO Box 1807, Sydney NSW 2000
Before printing, please consider the environment

Liability limited by a scheme approved under Professional Standards Legislation.
Solicitor directors and legal practitioners employed by Connor & Co Lawyers Pty Ltd trading as "Connor & Co" are members of the scheme.

This email and any attachments may be confidential and privileged.   It is intended for the use of the addressee named above.  If you are not the intended recipient of this message, you must not disseminate, copy or take any action on it and you are asked to immediately advise the sender by return email that you are not the intended recipient and destroy the message.  Any views expressed in this message are those of the individual sender, except where the sender states them to be the views of Connor & Co Lawyers Pty Ltd trading as "Connor & Co".

**From:** Thomas Borody <Thomas.Borody@cdd.com.au>
**Sent:** Thursday, May 18, 2023 8:42 AM
**To:** Mark Smith <mark@finchtherapeutics.com>; Marcus Connor <marcus.connor@connorco.com.au>
**Cc:** Marcus_Connor@yahoo.com.au; Matthew Blischak <mblischak@finchtherapeutics.com>
**Subject:** Re: Marcus <--> Matt Introduction

Kind regards,

Dr Thomas J Borody
MD PhD DSc FRACP FACP FACG AGAF FRSN
Director
Centre for Digestive Diseases

HIGHLY CONFIDENTIAL INFORMATION

Lvl 1, 229 Great North Road
Five Dock NSW 2046
Australia
Ph: 61 2 9713 4011
Fax: 61 2 9712 1675
www.cdd.com.au

This e-mail is intended for the use of the addressee only.  It may contain information or attachments, that  are confidential and and are protected by Australian privacy and copyright laws, and/or is legally privileged.  If you are not the intended recipient you are prohibited from disseminating, distributing or copying this e-mail.  If you have received this e-mail in error, please notify the sender immediately by return e-mail and delete this message from any computer.


On 18 May 2023, at 8:31 am, Mark Smith <mark@finchtherapeutics.com> wrote:

Dear Marcus,
I spoke with Dr. Borody (cc-ed) and he indicated that he would like me to connect you with Matt Blischack, Finch's CEO (also cc-ed). I tried your c-legal.com.au address earlier but had a bounce so trying your yahoo address here. Tom, let me know if there is a better way to reach Marcus. Matt may also try his cell phone directly.
All the best,
Mark

FINCH_0469368

**PROPOSED PRETRIAL ORDER**

# EXHIBIT 18.5

**UMN/FINCH'S OPPOSITION TO FERRING/REBIOTIX'S
MOTION *IN LIMINE* NO. 5 FOR ADVERSE INFERENCE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) ) ) ) |
| | C.A. No. 21-1694-JLH |
| Defendants. | **FILED UNDER SEAL** |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) ) ) ) ) ) |
| Counterclaim-Plaintiffs/Reply Defendants, | ) ) |
| v. | ) ) ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) ) ) |
| Counterclaim-Defendants/Reply Plaintiffs. | ) ) |

## UMN/FINCH'S OPPOSITION TO FERRING/REBIOTIX'S
## MOTION *IN LIMINE* NO. 5 FOR ADVERSE INFERENCE

Ferring's motion for evidentiary sanctions has no merit and should be denied. Ferring seeks an adverse inference instruction that Dr. Borody's testimony (had Ferring deposed him) would have been unhelpful to Finch. In making this request, Ferring grossly mischaracterizes the facts and baselessly accuses Finch of "misconduct." Finch, however, has been transparent with Ferring and the Court regarding interactions between its counsel ("K&E") and Dr. Borody, including K&E's withdrawal from representing Dr. Borody after he demanded ████████████ ████ to sit for a deposition. Ferring, by contrast, has not. Weeks ago, Ferring produced a tranche of documents that it obtained from Dr. Borody. Ferring would not say how or when it obtained the documents, or what contact it has had with Dr. Borody. Nor has Ferring, who has listed Dr. Borody as "may call," indicated whether it will be bringing Dr. Borody to trial. There is no reason for any adverse inference against Finch on these facts.

While courts possess inherent power to control litigation, in deciding whether to impose an adverse inference sanction (like Ferring requests), courts consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). None of those requirements are met. Indeed, Ferring cites no case sanctioning a party (Finch) for the conduct of a non-party it does not control (Borody).[1]

*First*, Finch is not at fault, and no evidence was altered or destroyed. Ferring's contrary narrative omits critical facts that it is well aware of. In 2022, K&E agreed to represent Dr. Borody to respond to Ferring's subpoena and worked with him to produce over 4,000 documents. Ex. 18-5, Ex. C. Despite Dr. Borody's significant health issues, which K&E apprised

---

[1] Ferring also cites Rule 37(b), but that requires violation of a Court order. There was no order for Dr. Borody's deposition, and none was violated.

Ferring of (Ex. 18-5, Ex. E), K&E secured June 6, 2023 for Dr. Borody's deposition (Ex. 18-5, Exs. D, G, I). But on May 12, 2023, Dr. Borody chose to delay his deposition (Ex. A), and his Australian counsel then stepped in and relayed, for the first time, Dr. Borody's claim that he was never paid for his patents. Australian counsel said Dr. Borody would "co-operate with the requested deposition" but threatened (while asking for a large payment) that "clearly it will not assist Finch if he truthfully deposes matters which are contrary to [Finch's] interests." Ex. 18-5, Ex. J. Days later, Dr. Borody wrote to Ferring's counsel, without copying K&E, stating that he ███████████████████████. Ex. 18-5, Ex. I. Then, on June 2, 2023, ████████████

████████████████████████████████████████████████████████████████

████████████ Ex. B (6/2/2023 invoice and email). K&E promptly responded, stating:

> [T]o the extent you are suggesting that some form of payment must be made to you in order for you to proceed with your deposition in the Ferring litigation or for you to provide any particular testimony . . . (a suggestion you have not made to our Firm at any prior time), such a request is improper and we reject it.

Ex. C (6/5/2023 P. Carson letter). K&E immediately withdrew from representing Dr. Borody but "strongly urge[d]" him to sit for deposition. *Id*. K&E also notified Ferring and agreed to "work with Ferring to make [Dr. Borody's deposition] happen." Ex. 17.5, Ex. 2. Finch's counsel repeated Finch's willingness to cooperate at a July 2023 hearing. Ex. D at 19:9-20:20. Ferring never took Finch up on these offers. Thus, there is no evidence that Finch (or K&E) did anything to prevent Dr. Borody's deposition and Ferring is not entitled to an adverse inference. *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 96 (3d Cir. 1983) (requiring "actual suppression or withholding of the evidence"); FRCP 37(e)(2) (adverse inference requires "intent to deprive").

**Second**, Ferring has suffered no prejudice. Ferring made no effort to depose Dr. Borody after K&E withdrew as his counsel (despite having further contact with him). While Ferring claims Dr. Borody would have provided "key testimony" on standing, Ferring does not say what

that testimony would be. Ferring also moved for dismissal without it, and told the Court it was "not relying on" Dr. Borody's assertions in his letters on ownership, Ex. D at 35:7–19. Ferring has also included Dr. Borody on its may call list. Ferring's delay in raising this issue undermines any alleged prejudice: Ferring could have cured any prejudice by pursuing Dr. Borody's deposition, *e.g.*, through letters rogatory (with which Finch offered to assist). Indeed, Ferring has been in contact with and obtained documents from Dr. Borody in the past year but chose not to try and proceed with deposing him. Any prejudice is "a problem of its own making." *Cf. Evolved Wireless, LLC v. Apple Inc.*, 2019 WL 8128549, at *1 (D. Del. Feb. 14, 2019).

*Third*, there is no reason for any sanction in these circumstances, especially because "[a]n adverse inference is an extreme remedy" that will impose substantial unfairness on Finch due to the actions of a third party who is not within its control and who demanded payment for his testimony. *Robinson v. Beckles*, 2019 WL 2453776, at *2 (D. Del. June 12, 2019). Ferring does not cite a single case imposing any sort of sanction, let alone an adverse inference, on these facts. Ferring relies heavily on *Victaulic Co. v. HiTHERM, LLC*, 2024 WL 1364258 (E.D. Pa. Mar. 28, 2024), but in that case, the court issued sanctions after a party-controlled witness no-showed a *court ordered* deposition.[2] *Id.* at *1–3. Similarly, in *Chase Home Fin. LLC v. Maalouf*, 2009 WL 10701991, at *4 (D. Md. Mar. 25, 2009), and *De Saro v. United States*, 305 F. Supp. 2d 1330, 1333 (S.D. Fla. 2004), *parties* to the case refused to participate in discovery. That is not what happened here. *Supra*. Simply put, "[a]n adverse inference instruction would be unfair where," as here, the complained-of conduct is due to a third-party's actions. *Stern v. Shammas*, 2015 WL 4530473, at *14 (E.D.N.Y. July 27, 2015). Ferring's motion should be denied.

---

[2] *C.B. v. Moreno Valley Unified Sch. Dist.,* 2023 WL 6782320, at *9 (C.D. Cal. Sept. 18, 2023), and *SEC v. Hong,* 2021 WL 4923310, at *1 (C.D. Cal. Oct. 21, 2021), also deal with violations of court orders.

EXHIBIT 18.5 - OPPOSITION

# EXHIBIT A

| From: | Thomas Borody |
|-------|---------------|
| To: | Ross, Ashley |
| Cc: | Margaux Alvaran; Vic Dawson; Parrado, Alvaro |
| Subject: | Re: Finch Deposition Logistics |
| Date: | Friday, May 12, 2023 10:06:11 PM |

---

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Largely contingent on one issue, which I cannot mention at the stage. I'll be starting some dialogue with the Finch people about this.


Kind regards,

Dr Thomas J Borody
MD PhD DSc FRACP FACP FACG AGAF FRSN
Director
Centre for Digestive Diseases
Lvl 1, 229 Great North Road
Five Dock NSW 2046
Australia
Ph: 61 2 9713 4011
Fax: 61 2 9712 1675
www.cdd.com.au

This e-mail is intended for the use of the addressee only.  It may contain information or attachments, that  are confidential and and are protected by Australian privacy and copyright laws, and/or is legally privileged.  If you are not the intended recipient you are prohibited from disseminating, distributing or copying this e-mail.  If you have received this e-mail in error, please notify the sender immediately by return e-mail and delete this message from any computer.


On 13 May 2023, at 12:02 pm, Ross, Ashley <ashley.ross@kirkland.com> wrote:

 Hi Dr. Borody,

We hope everything is alright - is there anything we can do on our end to help matters along to try to keep the June date?

Thank you,

Ashley

**Ashley Ross**

EXHIBIT 18-5 - OPPOSITION

---------------------------------------------
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900
---------------------------------------------
ashley.ross@kirkland.com


On May 12, 2023, at 9:53 PM, Thomas Borody
<Thomas.Borody@cdd.com.au> wrote:


 Ashley

I am delaying.

Tom

Kind regards,

Dr Thomas J Borody
MD PhD DSc FRACP FACP FACG AGAF FRSN
Director
Centre for Digestive Diseases
Lvl 1, 229 Great North Road
Five Dock NSW 2046
Australia
Ph: 61 2 9713 4011
Fax: 61 2 9712 1675
www.cdd.com.au


This e-mail is intended for the use of the addressee only.  It may
contain information or attachments, that  are confidential and and are
protected by Australian privacy and copyright laws, and/or is legally
privileged.  If you are not the intended recipient you are prohibited
from disseminating, distributing or copying this e-mail.  If you have
received this e-mail in error, please notify the sender immediately by
return e-mail and delete this message from any computer.


On 13 May 2023, at 11:41 am, Ross, Ashley
<ashley.ross@kirkland.com> wrote:


 Hi Margaux,

We have not heard that there will be any delay, on our
end, so if you could please keep everything on calendar

we would appreciate it. We will also take you up on
Wednesday at 10 AM Sydney time if that's ok.

Thanks

**Ashley Ross**

-----------------------------------------------

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900

-----------------------------------------------

ashley.ross@kirkland.com


On May 12, 2023, at 7:51 PM, Margaux
Alvaran <Margaux.Alvaran@cdd.com.au>
wrote:


Hi Ashley
I've just received word that deposition may
be delayed or suspended until we hear word
from Finch, we will wait at this stage
Thanks

Yours kindly
Margaux Alvaran
Interim Research Manager
Mondays - Wednesdays - Fridays

---

**From:** Margaux Alvaran
<Margaux.Alvaran@cdd.com.au>
**Sent:** Saturday, May 13, 2023 9:43:25 AM
**To:** Ross, Ashley <ashley.ross@kirkland.com>;
Thomas Borody
<Thomas.Borody@cdd.com.au>
**Cc:** Vic Dawson <Vic.Dawson@cdd.com.au>;
Parrado, Alvaro
<alvaro.parrado@kirkland.com>
**Subject:** Re: Finch Deposition Logistics


Hi Ashley
Would Wednesday 17th at 10am Sydney
time work better for you ?

Yours kindly

Margaux Alvaran
Interim Research Manager
Mondays - Wednesdays - Fridays

---

**From:** Ross, Ashley
<ashley.ross@kirkland.com>
**Sent:** Saturday, May 13, 2023 9:34:49 AM
**To:** Margaux Alvaran
<Margaux.Alvaran@cdd.com.au>; Thomas
Borody <Thomas.Borody@cdd.com.au>
**Cc:** Vic Dawson <Vic.Dawson@cdd.com.au>;
Parrado, Alvaro
<alvaro.parrado@kirkland.com>
**Subject:** RE: Finch Deposition Logistics

Thanks Margaux - could we do 11 am Sydney
time instead?

Thanks again,

Ashley

**Ashley Ross**

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900

ashley.ross@kirkland.com

---

**From:** Margaux Alvaran
<Margaux.Alvaran@cdd.com.au>
**Sent:** Friday, May 12, 2023 7:02 PM
**To:** Ross, Ashley <ashley.ross@kirkland.com>;
Thomas Borody
<Thomas.Borody@cdd.com.au>
**Cc:** Vic Dawson <Vic.Dawson@cdd.com.au>;
Parrado, Alvaro
<alvaro.parrado@kirkland.com>
**Subject:** Re: Finch Deposition Logistics

Hi Ashley would 9am Monday 15th May Sydney
time be suitable for you guys ?

Yours kindly
Margaux Alvaran

Interim Research Manager
Mondays - Wednesdays - Fridays

_____

**From:** Ross, Ashley
<ashley.ross@kirkland.com>
**Sent:** Saturday, May 13, 2023 12:46:23 AM
**To:** Thomas Borody
<Thomas.Borody@cdd.com.au>
**Cc:** Margaux Alvaran
<Margaux.Alvaran@cdd.com.au>; Vic Dawson
<Vic.Dawson@cdd.com.au>; Parrado, Alvaro
<alvaro.parrado@kirkland.com>
**Subject:** RE: Finch Deposition Logistics

Thank you Dr. Borody- Margaux, we will follow
your lead on what times might work best from
Dr. Borody's schedule.

Thank you,

Ash

**Ashley Ross**
-------------------------------------------
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900
-------------------------------------------
ashley.ross@kirkland.com

_____

**From:** Thomas Borody
<Thomas.Borody@cdd.com.au>
**Sent:** Friday, May 12, 2023 10:45 AM
**To:** Ross, Ashley <ashley.ross@kirkland.com>
**Cc:** Margaux Alvaran
<Margaux.Alvaran@cdd.com.au>; Vic Dawson
<Vic.Dawson@cdd.com.au>; Parrado, Alvaro
<alvaro.parrado@kirkland.com>
**Subject:** Re: Finch Deposition Logistics

I'm ok with that

Kind regards,

Dr Thomas J Borody
MD PhD DSc FRACP FACP FACG AGAF FRSN
Director
Centre for Digestive Diseases
Lvl 1, 229 Great North Road
Five Dock NSW 2046
Australia
Ph: 61 2 9713 4011
Fax: 61 2 9712 1675
www.cdd.com.au

This e-mail is intended for the use of the
addressee only.  It may contain information or
attachments, that  are confidential and and are
protected by Australian privacy and copyright
laws, and/or is legally privileged.  If you are not
the intended recipient you are prohibited from
disseminating, distributing or copying this e-
mail.  If you have received this e-mail in error,
please notify the sender immediately by return
e-mail and delete this message from any
computer.

On 12 May 2023, at 11:55 pm,
Ross, Ashley
<ashley.ross@kirkland.com>
wrote:

Hello Dr. Borody and Margaux,

Just following up on the below,
please let me know if you have
time to speak in the next couple
of days.

Thank you,

Ashley

**Ashley Ross**
========================================
============

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY

EXHIBIT 18-5 - OPPOSITION

10022
**T** +1 212 446 4954
**F** +1 212 446 4900
_____
_____
ashley.ross@kirkland.com

_____

**From:** Ross, Ashley
**Sent:** Wednesday, May 10, 2023
5:33 PM
**To:** 'Thomas Borody'
<Thomas.Borody@cdd.com.au>
**Cc:** Margaux Alvaran
<Margaux.Alvaran@cdd.com.au>;
Vic Dawson
<Vic.Dawson@cdd.com.au>;
Parrado, Alvaro
<alvaro.parrado@kirkland.com>
**Subject:** RE: Finch Deposition
Logistics

Absolutely, in general the
question is what's the invention
story behind these patents in
particular? More specific
questions are as follows, but no
need to respond via email on
these, we can discuss on the call:

1. How did you determine the
   importance of / viability of
   adding a cryoprotectant?
   Of adding an antioxidant?
2. Some of your claims talk
   about PEG as a
   cryoprotectant in particular
   - had you tried using PEG as
   a cryoprotectant in the
   stool compositions you
   were using back in the
   2010s?
3. How did you come up with
   the idea of a stool bank? Or
   transporting the stool to a
   remote facility?
4. What is meant by "rough

particulate matter" and how did you come up with the notion that separating the microbiota from the rough particulate matter?

5. At least one claim talks about using 50 g of donor stool in particular - where did that come from?

Thank  you,

Ashley


I am attaching the patents here as well.

Thank you,

Ash

**Ashley Ross**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

ashley.ross@kirkland.com

**From:** Thomas Borody <Thomas.Borody@cdd.com.au>
**Sent:** Wednesday, May 10, 2023 5:12 PM
**To:** Ross, Ashley <ashley.ross@kirkland.com>
**Cc:** Margaux Alvaran <Margaux.Alvaran@cdd.com.au>; Vic Dawson <Vic.Dawson@cdd.com.au>; Parrado, Alvaro <alvaro.parrado@kirkland.com>
**Subject:** Re: Finch Deposition

EXHIBIT 18.5 - OPPOSITION

Logistics

I think that's possible and
Margaux will arrange

Can you send any questions/info
ahead and list of the patents ? ( I
have > 200 patents ; applications)

Thx


Kind regards,

Dr Thomas J Borody
MD PhD DSc FRACP FACP FACG
AGAF FRSN
Director
Centre for Digestive Diseases
Lvl 1, 229 Great North Road
Five Dock NSW 2046
Australia
Ph: 61 2 9713 4011
Fax: 61 2 9712 1675
www.cdd.com.au

This e-mail is intended for the use
of the addressee only.  It may
contain information or
attachments, that  are
confidential and and are
protected by Australian privacy
and copyright laws, and/or is
legally privileged.  If you are not
the intended recipient you are
prohibited from disseminating,
distributing or copying this e-
mail.  If you have received this e-
mail in error, please notify the
sender immediately by return e-
mail and delete this message from
any computer.

On 11 May 2023, at
6:53 am, Ross,
Ashley
<ashley.ross@kirklan
d.com> wrote:


Hi Dr. Borody,
Margaux and Vic,

Does Dr. Borody
happen to have 1
hour in the next few
days to hop on a call
with us? We would
like to supplement a
discovery response
talking about how he
came up with the
patents that we are
now asserting, and
having his input on
this would be very
helpful.

Thank you,

Ashley

**Ashley Ross**
- - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - -
- - -
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue,
New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900
- - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - -
- - -
ashley.ross@kirkland.co
m

---

**From:** Parrado,
Alvaro
<alvaro.parrado@kir
kland.com>

EXHIBIT 18 – OPPOSITION

**Sent:** Tuesday, May 2, 2023 10:25 AM
**To:** Margaux Alvaran <Margaux.Alvaran@cdd.com.au>; Vic Dawson <Vic.Dawson@cdd.com.au>; Thomas Borody <Thomas.Borody@cdd.com.au>
**Cc:** Ross, Ashley <ashley.ross@kirkland.com>; Lominac, Anita <alominac@kirkland.com>
**Subject:** RE: Finch Deposition Logistics

Thank you for that information we will look into alternative locations.

**Alvaro R. Parrado**
Senior Paralegal | Intellectual Property

------------------------------
---

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3407  **M** +1 212-960-8542
**F** +1 212 446 4900

------------------------------
---

alvaro.parrado@kirkland.com

------------------------------

**From:** Margaux Alvaran <Margaux.Alvaran@

EXHIBIT 185 - OPPOSITION

cdd.com.au>
**Sent:** Monday, May 1, 2023 10:39 PM
**To:** Parrado, Alvaro <alvaro.parrado@kirkland.com>; Vic Dawson <Vic.Dawson@cdd.com.au>; Thomas Borody <Thomas.Borody@cdd.com.au>
**Cc:** Ross, Ashley <ashley.ross@kirkland.com>; Lominac, Anita <alominac@kirkland.com>
**Subject:** Re: Finch Deposition Logistics

Dear Alvaro
Thank you for your email and I hope you are well.
████████████
██████████
██████ may I suggest somewhere closer ? There are meeting rooms at Five Dock RSL that you may be able to utilise? As the deposition would likely take a full day, ████████████
██████ having a location in the Five Dock area might be better for him.

Thanks

Yours kindly

Margaux
Alvaran
Interim Research
Manager

Mondays-
Wednesdays-Fridays

---

**From:** Parrado,
Alvaro
<alvaro.parrado@ki
rkland.com>
**Date:** Tuesday, 2
May 2023 at 10:18
am
**To:** Margaux
Alvaran
<Margaux.Alvaran
@cdd.com.au>, Vic
Dawson
<Vic.Dawson@cdd.
com.au>, Thomas
Borody
<Thomas.Borody@
cdd.com.au>
**Cc:** Ross, Ashley
<ashley.ross@kirkla
nd.com>, Lominac,
Anita
<alominac@kirklan
d.com>
**Subject:** Finch
Deposition Logistics

Hello Margaux, Vic
and Dr. Borody,

I am writing
regarding logistics
for Dr. Borody's
upcoming June
deposition. We are

finalizing logistics on our end but the current plan is to meet at CDD's offices on June 5 to prepare, and then conduct the actual deposition on June 6th at the offices of King & Wood Mallesons at 1 Farrer Place, Sydney NSW 2000. If that location does not work, please let us know if you have an alternative location such as a hotel where you would prefer for it to take place.

Thank you,

**Alvaro R. Parrado**
Senior Paralegal | Intellectual Property

------------------------
------------------------
---

**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 909 3407  **M** +1 212-960-8542
**F** +1 212 446 4900

------------------------
------------------------
---

alvaro.parrado@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland &

Ellis LLP or Kirkland &
Ellis International LLP.
Unauthorized use,
disclosure or copying of
this communication or any
part thereof is strictly
prohibited and may be
unlawful. If you have
received this
communication in error,
please notify us
immediately by return
email or by email to
postmaster@kirkland.com
, and destroy this
communication and all
copies thereof, including
all attachments.

The information contained
in this communication is
confidential, may be
attorney-client privileged,
may constitute inside
information, and is
intended only for the use
of the addressee. It is the
property of Kirkland &
Ellis LLP or Kirkland &
Ellis International LLP.
Unauthorized use,
disclosure or copying of
this communication or any
part thereof is strictly
prohibited and may be
unlawful. If you have
received this
communication in error,
please notify us
immediately by return
email or by email to
postmaster@kirkland.com
, and destroy this
communication and all
copies thereof, including
all attachments.

The information contained in this
communication is confidential, may be
attorney-client privileged, may constitute
inside information, and is intended only for
the use of the addressee. It is the property
of Kirkland & Ellis LLP or Kirkland & Ellis
International LLP. Unauthorized use,
disclosure or copying of this
communication or any part thereof is
strictly prohibited and may be unlawful. If
you have received this communication in
error, please notify us immediately by
return email or by email to
postmaster@kirkland.com, and destroy
this communication and all copies thereof,
including all attachments.

**EXHIBIT 18-5 - OPPOSITION**

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

EXHIBIT 18.5 - OPPOSITION

# EXHIBIT B

| From: | Thomas Borody |
|---|---|
| To: | Ross, Ashley; Carson, Patricia A.; De Vries, Mike W.; Alper, Adam R. |
| Cc: | Mark Smith |
| Subject: | FW: Rebiotix v. Finch Deposition |
| Date: | Monday, June 5, 2023 5:03:00 AM |
| Attachments: | image001.png |
| | image002.png |
| | 20230602 Invoice (002)-signed.pdf |
| Importance: | High |

**This message is from an EXTERNAL SENDER**
Be cautious, particularly with links and attachments.

Dear Ashley,

I enclose my invoice as described below.

**Kind Regards,**

**Dr Thomas Borody**
MD PhD DSc FRACP FACP FACG AGAF FRSN
Director



e thomas.borody@cdd.com.au
p +61 2 9713 4011|  www.cdd.com.au
Level 1, 229 Great North Road, Five Dock NSW Australia 2046

Warning: This Communication is private, confidential and may contain legally privileged information. If you have received this message in error please notify the sender by reply email and then delete the message from your computer. Any unauthorised form of reproduction, disclosure or dissemination of this message or any attachment is strictly prohibited. CDD Pty Ltd does not make any warranty as to the confidentiality, reliability or speed of email communications or any attached documents and disclaims all liability for the proper and complete transmission of any information and /or any delay in receipt. Before opening any attachment, please check them for viruses and defects. Although reasonable precautions are taken, CDD Pty Ltd does not warrant this transmission or attachments are free from viruses or similar malicious code and does not accept liability for any consequences to the recipient consequent upon opening or using this e-mail.

Dear Ashley,

**Kind Regards,**

**Dr Thomas Borody**
MD PhD DSc FRACP FACP FACG AGAF FRSN
Director



**e** thomas.borody@cdd.com.au
**p** +61 2 9713 4011|  www.cdd.com.au
Level 1, 229 Great North Road, Five Dock NSW Australia 2046

<image001.png>

Warning: This Communication is private, confidential and may contain legally privileged information. If you have received this message in error please notify the sender by reply email and then delete the message from your computer. Any unauthorised form of reproduction, disclosure or dissemination of this message or any attachment is strictly prohibited. CDD Pty Ltd does not make any warranty as to the confidentiality, reliability or speed of email communications or any attached documents and disclaims all liability for the proper and complete transmission of any information and /or any delay in receipt. Before opening any attachment, please check them for viruses and defects. Although reasonable precautions are taken, CDD Pty Ltd does not warrant this transmission or attachments are free from viruses or similar malicious code and does not accept liability for any consequences to the recipient consequent upon opening or using this e-mail.

**From:** "Ross, Ashley" <ashley.ross@kirkland.com>
**Date:** 30 May 2023 at 11:30:40 pm AEST
**To:** Thomas Borody <thomas.borody@cdd.com.au>
**Cc:** "Carson, Patricia A." <patricia.carson@kirkland.com>, "De Vries, Mike W." <michael.devries@kirkland.com>, "Alper, Adam R." <aalper@kirkland.com>
**Subject: Rebiotix v. Finch Deposition**

Hi Dr. Borody,
We saw your email over to Mary Bourke and her response back to you, and understand from that exchange that Rebiotix has agreed to postpone the deposition given ███████████████████████
We also hope you are doing alright in that regard.
We had recently reached out to you as your retained counsel in connection with your response to certain discovery requests in the Rebiotix litigation (pursuant to our engagement letter with you, attached), with the hope of discussing your deposition.  We are not sure we are fully following the import of the correspondence that Marcus sent us in response, including how if at all it is intended to relate to patents-in-suit in the Rebiotix litigation.  Additionally, Rebiotix has indicated that it still wants to take your deposition ██████████████████████.  We therefore are hoping to set up a call with you (and, if you would like, your other counsel) to better understand any questions or concerns you have, and also to separately discuss your thoughts about rescheduling the deposition.
While we do not think that Matt needs to be on the call we are requesting, given that you and Finch have a common interest agreement with respect to the Rebiotix litigation (as reflected in our attached engagement letter), we do not have concerns with him joining the call should you want him to be on, as such discussion would still be privileged.  Please let us know what times might work best for you (and your other counsel, if you would like them to join) over the next few days.
Thank you, Dr. Borody, ████████████████████████
Ashley

**Ashley Ross**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue, New York, NY 10022
**T** +1 212 446 4954
**F** +1 212 446 4900
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EXHIBIT 18.5 - OPPOSITION

ashley.ross@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

EXHIBIT 18-5 - OPPOSITION

# Professor Thomas Julius Borody

## MD PhD DSc FRACP FACP FACG AGAF FRSN

Centre for Digestive Diseases
Level 1, 229 Great North Road, Five Dock, NSW, Australia
TEL : +61 2 9713 4011 FAX : +61 2 9712 1675

Friday, 2 June 2023

Finch Therapeutics, Inc
c/- Patricia A. Carson
Partner
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
United States



EXHIBIT 18.5 - OPPOSITION

# EXHIBIT C

EXHIBIT 18-5 - OPPOSITION

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Patricia A. Carson
To Call Writer Directly:
+1 212 446 6443
patricia.carson@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

June 5, 2023

**PRIVILEGED & CONFIDENTIAL**

Dr. Thomas J Borody
Director
Centre for Digestive Diseases
Lvl 1, 229 Great North Road
Five Dock NSW 2046
Australia

Re:   *Ferring Therapeutics Inc. and Rebiotix Inc. v. Finch Therapeutics et. al*,
C.A. No. 21-1694-RGA

Dr. Borody,

We are in receipt of your May 31, 2023 and June 5, 2023 emails.  We are very glad to hear that ████████████████████████, and hope that it continues to do so.

In view of the positions you have articulated in your emails, it is apparent that a conflict now exists between Finch and yourself which, though we have been unable to set up a call with you to try to better understand the issues you are now raising, appears quite clearly to be directly related to the above-referenced litigation to the extent you are contending that Finch does not own the patents-in-suit in that litigation.  As such, in accordance with our October 6, 2022 retention agreement, and the governing rules of professional conduct, we unfortunately need to resign as your counsel in this matter, which we are doing through this letter.

We remind you that, as set forth in our retention agreement, although it appears that your attorney is representing you in connection with the subject matter of our prior representation, you have agreed to seek separate legal counsel if that is not the case.  We also remind you that our communications with you regarding the subject matter of our representation are subject to the attorney-client privilege, that our communications with you involving Finch are also subject to the common interest protection.  Accordingly, you are prohibited from disclosing any such communications to third parties without Finch's consent, as memorialized in our engagement agreement with you.  If you have questions concerning those obligations, please let us know.

Austin   Bay Area   Beijing   Boston   Brussels   Chicago   Dallas   Hong Kong   Houston   London   Los Angeles   Miami   Munich   Paris   Salt Lake City   Shanghai   Washington, D.C.

EXHIBIT 18-5 – OPPOSITION

# KIRKLAND & ELLIS LLP

Dr. Thomas J Borody
June 5, 2023
Page 2

Furthermore, although we are no longer acting as your counsel in connection with this matter, it is incumbent upon us to help effectuate a smooth transition. Given that, and consistent with our advice throughout our representation of you, we strongly urge you to voluntarily submit to your deposition and to make arrangements with Ferring to set a date for your deposition as soon as you are well enough to do so.  Accordingly, we ask that you confirm you will go forward with your deposition, or submit to letters rogatory if sought by Ferring, as soon as your health improves.

Finally, to the extent you have raised issues concerning the ownership of patents on which you are named as inventor, we understand that Finch will reach out to you to discuss your most recent claims and demands.  To ensure a clear record on this point, however, to the extent you are suggesting that some form of payment must be made to you in order for you to proceed with your deposition in the Ferring litigation or for you to provide any particular testimony in connection with such a deposition (a suggestion you have not made to our Firm at any prior time), such a request is improper and we reject it.  Again, we urge you to sit for deposition as soon as you are able and to provide truthful testimony when you do.

Once again, ███████████████████████████████████████████
███████   Should you have any questions about the foregoing, or you would like to discuss the foregoing, please let us know.

Sincerely,

*/s/ Patricia A. Carson*

Patricia A. Carson

EXHIBIT 18.5 – OPPOSITION

# EXHIBIT D

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FERRING PHARMACEUTICALS,)
INC., et al.,              )
                          )
        Plaintiffs,       )  C.A. No. 21-1694-RGA
                          )
v.                        )
                          )
FINCH THERAPEUTICS        )
GROUP, INC., et al.,      )
                          )
        Defendants.       )

Monday, July 17, 2023
3:30 p.m.
Courtroom 6A

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE RICHARD G. ANDREWS
         United States District Court Judge

APPEARANCES:

        WOMBLE BOND DICKINSON, LLP
        BY:  MARY W. BOURKE, ESQ.
        BY:  DANIEL MARCUS ATTAWAY, ESQ.
        BY:  DANA KATHRYN SEVERANCE, ESQ.

                    Counsel for the Plaintiff

2

APPEARANCES CONTINUED:

RICHARDS, LAYTON & FINGER, P.A.
BY:  KELLY E. FARNAN, ESQ.
BY:  JEFFREY L. MOYER, ESQ.

        -and-

KIRKLAND & ELLIS, LLP
BY:  ASHLEY CADE, ESQ.
BY:  ADAM R. ALPER, ESQ.
BY:  ASHLEY L.B. ROSS, ESQ.
BY:  MICHAEL W. DeVRIES, ESQ.
BY:  PATRICIA A. CARSON, ESQ.

        Counsel for the Defendant

3

1    THE COURT:  All right.  Good
2    afternoon, everyone.  Please be seated.  So we
3    have some discovery disputes in number 21-1694,
4    Ferring versus Finch, where Ferring is the
5    plaintiff when they're really the defendant and
6    Finch is the defendant when they're really the
7    plaintiff.  Ms. Bourke.
8        MS. BOURKE:  Yes, Your Honor.
9    Good afternoon.  I'm here on behalf of Ferring
10   and Rebiotix.  With me I have Daniel Attaway and
11   Dana Severance and in the back we have Brian
12   Garcia, in-house counsel for Ferring.
13       THE COURT:  All right.  Good to
14   see you, Ms. Bourke.  Ms. Farnan.
15       MS. FARNAN:  Good afternoon, Your
16   Honor.  Kelly Farnan from Richards, Layton &
17   Finger on behalf of Ferring and UMN.  I'm joined
18   by Jeff Moyer from my office.  And then from
19   Kirkland & Ellis we have Mike DeVries, Ashley
20   Cade, Patricia Carson, Ashley Ross, Adam Alper.
21   And then in the back of the courtroom we have
22   Matthew Blischak, who is the CEO of Finch.
23       THE COURT:  Okay.  All right.  So
24   I did read the sets of letters that I got.  Why

4

1    don't we talk about the merger agreement
2    attorney/client one first.  I think the general
3    outline that I have here is that Finch -- well,
4    first off, Finch says that Ferring is asserting
5    an advice of counsel defense even though, from
6    I've seen looking at the papers, that's not what
7    Ferring says it's doing.  This relates to the
8    agreement between Ferring and somebody else.
9    There was a merger and as I understand it
10   relates to a provision in the merger agreement
11   that in some way is supposed to suggest
12   willfulness by Ferring in relation to
13   infringement because of some provision in the
14   agreement.  At a prior discovery dispute, where
15   I think I ordered the documents that were traded
16   back and forth between Ferring and its merger
17   partner, because Finch said these were relevant
18   to why that provision in the agreement was there
19   and I ordered its production.  As I understand
20   it, Finch says they produced every last piece of
21   paper that I directed them to provide and now
22   Finch wants communications between --
23   communications that are protected by the
24   attorney/client privilege in and amongst Finch's

**17**

1  accord with what I thought your position was, so
2  thank you.
3        MR. ATTAWAY: Yes, Your Honor.
4  The only other thing that I would point out is
5  they are relying on these documents as well. To
6  the extent that the Court is considering
7  exclusion, it would come --
8        THE COURT: So I'm not going to be
9  ruling on exclusion or excluding anything today.
10  Exclusion -- because you literally have not
11  called it an advice of counsel defense. The
12  argument Ms. Cade is making seems to be premised
13  on this being -- there's a word bankruptcy
14  lawyers use, maybe sub rosa, assertion of advice
15  of counsel, that at least as far as today goes,
16  I'm willing to take it at face value that it's
17  not advice of counsel. And so I think if it's
18  not advice of counsel, then we're not moving to
19  exclude it, then they argue at a later point
20  that it's unfair in some way, but I think it's
21  kind of premature for me to be making those
22  kinds of rulings, so --
23        Let me think if I have another
24  question here. I guess I think -- I think

**18**

1  there's multiple moving parts here. One is
2  somewhere down the line are they going to be
3  relying on this merger agreement or even on the
4  communications back and forth to try to show
5  willfulness, you know, the merger agreement
6  generally, the communications generally,
7  specific provisions specifically? You know, the
8  phrase sword and shield is used by at least one
9  of you, maybe both of you. I think there's kind
10  of a balancing here that might have to be
11  exercised at some later point in time, but I
12  don't think I have the context to be doing that
13  now, so all I'm really going to say is that I'm
14  not going to make you produce anything on your
15  privilege log, but you run the risk then at some
16  later point I might exclude some of your
17  evidence, right?
18        MR. ATTAWAY: Understood.
19        THE COURT: And I also -- so
20  that's what I'm going to rule is I'm not going
21  to require you to produce anything more. I
22  don't think, as I sit here today -- well, I feel
23  confident that by you producing these documents
24  that are not privileged you have not waived

**19**

1  privilege. So I won't need a waiver here. And
2  the way you put it in the interrogatory, which I
3  did read, I don't think you've -- I don't see
4  waiver there either. But in the end, you know,
5  it may turn out to be a difficult evidentiary
6  issue, but I think that's where we are. Okay?
7        MR. ATTAWAY: Thank you, Your
8  Honor.
9        THE COURT: All right. So I'm
10  going to deny the Finch's motion on that.
11        So -- and the transcript of what
12  I've said here will memorialize what I think
13  about it right now and what my ruling is.
14        So then we also have a request
15  that Ferring stay this litigation because of,
16  for lack of a better word, surprising
17  developments with Dr. Brody suggesting that he's
18  the owner of the patents because he's owed ███
19  ████████████████████████ Has there been
20  any progress on this since you -- I guess you
21  only wrote the letters a little while ago. As I
22  recall it, Dr. Brody has not been deposed, but
23  that's on the horizon. And Finch said they
24  would help, if needed, to get Dr. Brody or do

**20**

1  what they could recognizing you don't represent
2  him. Is that where things stand?
3        MS. BOURKE: Well, right now, as
4  far as I understand it, Dr. Brody is not
5  cooperating and does not want to sit voluntarily
6  for a deposition.
7        THE COURT: Hold on a second. Is
8  that your understanding?
9        MS. FARNAN: Your Honor, I don't
10  know if we know. We haven't heard from Dr.
11  Brody since Kirkland & Ellis sent him a letter
12  on June 16th.
13        THE COURT: That kind of sounds
14  like he answered, doesn't it?
15        MS. FARNAN: It does, Your Honor.
16  We don't have that from him, but yes, you're
17  correct. We don't -- we are willing to do
18  whatever we can to assist with that, but --
19        THE COURT: But you don't have any
20  leverage yourselves.
21        MS. FARNAN: That's correct, Your
22  Honor.
23        THE COURT: Okay. So, just as a
24  matter of curiosity, how is this standing thing

**21**

1  ever going to be resolved when the person who is
2  causing this problem is, as far as I know, not
3  under oath talking about it?
4        MS. BOURKE:  Well, fact discovery
5  is closed, as I heard opposing counsel say
6  earlier.  And we were first made aware of this
7  in mid June.  It was surprising to us.  We had a
8  meet and confer with Kirkland & Ellis where
9  basically they walked us through their position,
10  which is in the June 16th letter, which is
11  exhibit 1 to our letter brief.
12        THE COURT:  That the 10-page
13  letter to Dr. Brody?
14        MS. BOURKE:  That is correct, Your
15  Honor.  And so they cautioned us to investigate
16  seriously the issues that they raised in there,
17  including the 2013 assignment and then other
18  issues that they raised.  And we went back to
19  the well and we went back to the production and
20  we looked for the documents which all of which
21  should have been produced because there was an
22  outstanding discovery request, RFP for all
23  documents related to standing.  We investigated
24  and through various analytical pathways we went

**22**

1  down, we found chains in the title, several of
2  them and we took that to heart and we told them,
3  we had a meet and confer and we filed our motion
4  as quickly as we could, the same day that we
5  filed the letter brief.  And so we have a
6  serious issue out there.  The dispute is really
7  between Dr. Brody and Finch, but it does raise
8  jurisdictional issues for us and for the Court,
9  which, as I'm sure you're aware, have to be
10  resolved before we can go to the merits of
11  anything that has to do with these patents.  And
12  I've looked at what the briefing schedule would
13  be and if -- we're not asking to expedite that
14  briefing schedule, but if it goes according to
15  the Court's, you know, schedule, it should be
16  fully briefed by the end of July.  And we
17  believe that it's a serious enough issue, that
18  it should be resolved.  We need to take a pause
19  in the litigation and get it resolved as quickly
20  as we can.  I've looked at the schedule.  I've
21  come up with alternatives such that we don't
22  move the trial date.  But as Your Honor knows,
23  every day litigating patents from which there is
24  a lack of standing is a waste of time and money.

**23**

1  The Brody patents, that's what we call this one
2  set of patents -- there are currently 40 plus
3  asserted claims.  The Brody patents make up over
4  half of those.  We have coming up extensive
5  report that have to go in for invalidity and for
6  non-infringement and that is a serious
7  expenditure in terms of time and money and
8  expert witness fees, et cetera.  And all we're
9  asking is that we take a pause and we get this
10  standing thing sorted out, because we can't get
11  to the merits of this case, at least as it goes
12  to the Brody patents, until standing has been
13  established.  Now, standing --
14        THE COURT:  You know that's the
15  second time you said that.  What exactly do you
16  mean by that?  I take it you do not mean that
17  law commands me that we must stop this case
18  while you litigate the standing on some of the
19  asserted patents?
20        MS. BOURKE:  No.  I think there is
21  case law, though, quite clearly that says that
22  the Court cannot adjudicate the merits of the
23  infringement, validity claims, et cetera,
24  without --

**24**

1        THE COURT:  So adjudicate the
2  merits, that's possibly the earliest that could
3  be is summary judgment, right?
4        MS. BOURKE:  Correct.
5        THE COURT:  Which is, I don't
6  know, six months off, right?
7        MS. BOURKE:  Right.  My client has
8  asked that we pause the litigation because of
9  the expenditure of money that is going to take
10  place over the next couple of months.  And
11  alternatively, if we don't pause the litigation,
12  we go forward and we spend that money and the
13  Court ultimately finds there is a lack of
14  standing we will probably be seeking fees for
15  the expenses that we engaged in to litigate
16  these Brody patents when we first became aware
17  that there was a standing issue.  There's time
18  in the schedule to give a brief pause.  There is
19  significant prejudice to us.  We don't know when
20  Kirkland & Ellis first learned about --
21        THE COURT:  Well, generally when
22  they talk about, quote, prejudice, you're not
23  just talking about spending money, right?
24        MS. BOURKE:  Well, it's -- the

33

1  So to allow the litigation to pause --
2         THE COURT:  I'm sorry, publicly
3  disclosed the cash flow was into 2025 meaning
4  they have financing to keep them alive that
5  long?
6         MS. FARNAN:  Yes, Your Honor.
7         THE COURT:  Okay.
8         MS. FARNAN:  But potentially not
9  longer --
10        THE COURT:  Right.
11        MS. FARNAN:  -- is the point.
12  so --
13        THE COURT:  I just want to know --
14  there was a little bit of, for lack of a better
15  word, jargon that I wanted to make sure I
16  understood what you meant.
17        MS. FARNAN:  Understood, Your
18  Honor.  And so any delay here is going to be
19  prejudicial to Finch.  There already has been
20  prejudice to Finch with the infringement, but
21  we're trying to move forward in addressing that
22  infringement and any further delay or a pause in
23  the case is certainly going to be prejudice to
24  Finch.  And of course not to mention UMN, which

34

1  are separately asserted patents and UMN is not a
2  part of the standing dispute, those patents are
3  going to continue regardless and this case will
4  continue regardless.  And so, you know, I think
5  what Ferring essentially asked for is sort of a
6  pause while Your Honor decides the motion.  I
7  think there's substantial time in the schedule
8  before any of Your Honor's other decisions on
9  the merits, whatever happened, and we really
10  don't think that there's any reasonably
11  likelihood that Your Honor is going to dismiss
12  this case on the lack of standing, so we ask
13  that the case continue on the current schedule.
14        THE COURT:  All right.  Thank you.
15        MS. FARNAN:  Thank you, Your
16  Honor.
17        MS. BOURKE:  May I respond?
18        THE COURT:  Sure.
19        MS. BOURKE:  First off, I don't
20  think any of the three factors that are
21  considered for a stay motion depend on the
22  merits of the underlying motion, at least as I
23  understand the factors.
24        Secondly, in terms of this burden

35

1  shifting that was raised.  I read the case.  I
2  read the federal circuit case.  I've read follow
3  on cases too and it's very clear it's not a
4  shifting of the burden of proof, rather it is a
5  shifting of the burden of production.
6         THE COURT:  I understand that.
7         MS. BOURKE:  There's a presumption
8  that attaches and you have the ability to rebut
9  that presumption.  We believe we have done that
10  in our motion papers that we have come forward
11  with some substantial evidence to shift that
12  burden back to Finch.
13        Secondly, we are not just relying
14  on Dr. Brody's assertions in his letter, as I
15  stated.
16        THE COURT:  Which, I mean, can you
17  really rely on them at all?
18        MS. BOURKE:  We're not relying on
19  them.
20        THE COURT:  Okay.
21        MS. BOURKE:  In fact, we're
22  relying on the Kirkland & Ellis letter and the
23  positions they put forward in their letter on
24  June 16th to Dr. Brody in which they counseled

36

1  us to go back and study and investigate and we
2  did.  And that as I said before, we went through
3  various analytical pathways --
4         THE COURT:  All right.  Well, so,
5  you did say that before.
6         MS. BOURKE:  Right.  So it is not
7  simply relying on what Dr. Brody said in his
8  letter.
9         Thirdly, in terms of the schedule,
10  I have put together a proposed schedule where it
11  would not change anything other than -- there
12  was a lot of time in this schedule, a lot of
13  slack for the expert discovery, the reports, the
14  depositions, the summary judgment motions until
15  a May 2024 trial.
16        THE COURT:  Right, right.  I
17  thought there seemed to be a bit of slack.
18        MS. BOURKE:  So there is some time
19  that we can agree to a schedule that would work
20  and it would not prejudice anybody but would
21  simply get this underlying issue resolved.
22        THE COURT:  When is the answering
23  briefs due to the opening expert reports or the
24  answering reports?

**PROPOSED PRETRIAL ORDER**

# EXHIBIT 18.5

**FERRING/REBIOTIX'S REPLY IN SUPPORT OF MOTION**
***IN LIMINE* NO. 5**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| FERRING PHARMACEUTICALS INC., REBIOTIX INC. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) ) ) ) | C.A. No. 21-1694-JLH |
| Defendants. | ) ) | **FILED UNDER SEAL** |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and REGENTS OF THE UNIVERSITY OF MINNESOTA | ) ) ) ) ) ) | |
| Counterclaim-Plaintiffs/Reply Defendants, | ) ) | |
| v. | ) ) | |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC. | ) ) ) | |
| Counterclaim-Defendants/Reply Plaintiffs. | ) ) | |

**<u>FERRING/REBIOTIX'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE NO. 5</u>**

Finch's opposition confirms that evidentiary sanctions in the form of an adverse inference and the admission of documents are proper. Finch's counsel represented Dr. Borody during the year Ferring tried to schedule his deposition and represented him when he failed to sit for one. (*See* Exs. B, I to PTO Ex. 18-5; Ex. C to PTO Ex. 18-5-Opp'n.)

Finch does not dispute that it learned days before the scheduled deposition that Dr. Borody intended to testify about "matters which are contrary to [Finch's] interests." (Ex. J to PTO Ex. 18-5.) Dr. Borody's counsel asked Finch the day before his scheduled deposition whether or not he should cancel. (Ex. K to PTO Ex. 18-5.) Rather than responding that he should sit for his deposition as the law required, Finch spoke to Dr. Borody on the phone, and he canceled the next day. (Exs. K, I to PTO Ex. 18-5.)

Finch's attempts to blame Ferring are unpersuasive. While Ferring does not know what Dr. Borody would have said at that time, his testimony would have, at a minimum, hurt Finch's standing argument. Finch's attempt to blame Ferring for not seeking a letter rogatory ***after*** Finch's counsel withdrew but even processing a letter rogatory request would have taken many months[1] and is no substitute for deposition testimony. Ferring was entitled to rely on Finch's counsel's representations that Dr. Borody would sit for his properly noticed deposition. Finally, the fact that Ferring was able to make a persuasive standing argument without Dr. Borody's testimony does not mean that his testimony would not be relevant or helpful, especially where the Court found a factual dispute as to standing. (*See* D.I. 341.) Finch's actions warrant the requested sanctions.

---

[1] According to the Hague Convention on Private International Law, just processing letters rogatory to Australia takes approximately six months. (*See* Australia - Central Authority (Art. 2) and practical information, https://www.hcch.net/en/states/authorities/details3/?aid=485.)

Dated: July 15, 2024

WOMBLE BOND DICKINSON (US) LLP

*Of Counsel:*

/s/ Mary W. Bourke
Mary W. Bourke (#2356)

Daralyn J. Durie
Matthew Chivvis
Rachel Dolphin
Ramsey Fisher
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: 415-268-6055
ddurie@mofo.com
mchivvis@mofo.com
rdophin@mofo.com
ramseyfisher@mofo.com

Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
Zachary Murphy (#6881)
1313 North Market Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 252-4320
Mary.Bourke@wbd-us.com
Dana.Severance@wbd-us.com
Daniel.Attaway@wbd-us.com
Zachary.Murphy@wbd-us.com

John B. Bourke (#6534)
WOMBLE BOND DICKINSON (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111
Telephone: (415) 765-6267
Ben.Bourke@wbd-us.com

Whitney O'Byrne
Sara Doudar
MORRISON & FOERSTER LLP
701 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213-892-4345
wobyrne@mofo.com
sdoudar@mofo.com

*Attorneys for Ferring Pharmaceuticals Inc.*
*and Rebiotix Inc.*