**RICHARDS LAYTON & FINGER**

Kelly E. Farnan
302-651-7705
farnan@rlf.com

July 31, 2024

**BY CM/ECF**
The Honorable Jennifer L. Hall
United States District Court
for the District of Delaware
844 North King Street
Wilmington, DE 19801

**CONFIDENTIAL – FILED UNDER SEAL**

Re: *Ferring Pharmaceuticals Inc. et al v. Finch Therapeutics Group, Inc. et al*,
C.A. No. 21-1694-JLH

Dear Judge Hall,

Pursuant to Your Honor's Oral Order, UMN and Finch (collectively "Finch") will depose Dr. Borody on Thursday, August 1 at 9 a.m. at Richards, Layton & Finger. Finch will proceed with the deposition but maintains that a deposition cannot cure the extreme prejudice to Finch from Ferring's misconduct, which has improperly and indelibly influenced Dr. Borody's testimony and ambushed Finch with undisclosed material information on the eve of trial.

Last night, Ferring produced some communications between Dr. Borody and Ferring. While we are still reviewing that production and following up with Ferring regarding missing documents, what we have learned thus far confirms that Dr. Borody should be excluded as a witness from the upcoming trial. Finch respectfully submits the below exhibits and explanation in further support of their request to exclude Dr. Borody from testifying (D.I. 414).

First, contrary to Ferring's assertions, it has now come to light that Ferring has been in direct communication with Dr. Borody concerning the substance of this case for well over a year. Specifically, and contrary to Ferring's July 27, 2023 statement to Finch that "We have not been in contact with Dr. Borody" (D.I. 377 Ex. 17.5 at Ex. 3), Ferring was in contact with Dr. Borody (or his counsel) around the time it filed its standing motion last July. Ex. A. And, after the hearing on Ferring's motion to stay concluded, counsel for Ferring e-mailed Dr. Borody's counsel saying "we suspect we will need more corroboration around the May 2015 transaction." Ex. A. Despite this contact, and Finch's offer to facilitate discovery from Dr. Borody, *e.g.*, through letters rogatory, Ferring made no effort to secure Dr. Borody's testimony through normal discovery procedures or disclose its intent to rely on Dr. Borody's testimony or documents.

Specifically, after many months of silence (during which Ferring could have timely pursued discovery from Dr. Borody through proper channels), counsel for Ferring spoke with Dr. Borody's counsel in February 2024 and secured an agreement to receive some documents. Ex. B.

Unbeknownst until now to Finch, Ms. Durie and Ms. Bourke then traveled to Sydney, Australia and met with Dr. Borody on April 15, 2024. The next day, they sent a draft of the Consulting Agreement. Ex. C. Notably, this version did not include an indemnification provision.

Ms. Durie followed up on the agreement on April 20 and, on April 21, got a response from Dr. Borody's lawyer Marcus Connor, assuring Ms. Durie that they "haven't double crossed Ferring."  Ex. D. Critically, Mr. Connor confirms that Dr. Borody had abided by Ms. Durie's request that he not speak "at all with Finch," and had "not disclosed to anyone, including Norma Rosenhain,[1] our recent meeting in Sydney." *Id.*  But worst of all, Dr. Borody's lawyer reveals that Dr. Borody will say anything to help Ferring in accordance with a highly improper *quid pro quo* with Ferring: "We are looking to Ferring for help to restore Tom's ownership of his FMT patents. Tom, for his part, will fully co-operate with Ferring, Mary and you." *Id.*  As discussed below, that *quid pro quo* not only involved Ferring's improper "help" to "restore ownership" of patents to Dr. Borody, but illegal payments and an indemnification agreement as well—all facts that were withheld from Finch until this week, days before trial, and were entirely unnecessary given Ferring's opportunities to use proper discovery channels.

On May 23, 2024, Dr. Borody's lawyer sent back comments on the consulting agreement and includes a new "side letter" that contains the indemnification language as well as an obligation by Ferring to "assist Dr. Borody to have his name reinstated … as the owner" of the four patents originally asserted in this litigation.  Ex. E.

In response, Ferring doubled down on improperly influencing Dr. Borody, this time by making another lucrative offer to him– Ms. Bourke provided a list of patents that "Ferring may be interested in licensing."  Ex. F. It is clear that Ferring was willing to, and did, throw anything at Dr. Borody – AU$ 30,000 per day, promises of patent ownership, and promises of licensing revenue – to induce him to testify on its behalf.  That inducement is illegal and a violation of the ABA Model Rules.  In response, Dr. Borody's counsel reveals Dr. Borody "is keen" to enter into discussions with Ferring about licensing.  *Id.*  In direct confirmation of Ferring's intent to use these illegal offers to induce Dr. Borody to testify for Ferring at trial, Ms. Bourke then expressly stated in the very same email: "Please remember that we have to identify Tom as a witness on June 6th." *Id.*  Contrary to their numerous representations, Ferring always intended to call Dr. Borody at trial.

Critically, although Ferring stated at the July 23, 2024 pretrial conference that "I would not say we have prepped [Dr. Borody] for trial" (Tr. 141), Finch has now discovered that Ferring has done precisely that.  Indeed, not only is Dr. Borody in Delaware now to prepare with Ferring for trial, but he was also here from July 6-11 for **trial preparation**.  This is confirmed in numerous documents.  First, his lawyer Mr. Connor confirmed in a June 27 e-mail that a "trial prep" meeting was coming up.  Ex. G.  Second, Dr. Borody sent an invoice to Ferring totaling AU$ 327,279.56.  Ex. H at 2. The invoice expressly states that Dr. Borody had a "phone conference with Marcus Connor and Mary Bourke" at some point and then a "Whole Day Meeting" with Ms. Bourke, Ms. Durie and others "***regarding testimony on day of hearing***." *Id.*  When his counsel transmitted the invoice on July 21 he said: "I would like to find out what assistance (if any) you need from me **before Tom travels to Delaware for trial.**" *Id.* at 1.  Whatever Ferring wanted to call it when asked by the Court, it is clear that Dr. Borody believed he was participating in preparation for his trial testimony on July 10.  And it is clear that on July 21, prior to the July 23 pre-trial conference, that

---

[1]   Ms. Rosenhain is an individual who Ferring appears to contend, had a prior interest in the Finch patents.

The Honorable Jennifer L. Hall
July 31, 2024
Page 3

Dr. Borody believed he would be coming to Delaware for trial. Ferring's statements at the pre-trial conference on Dr. Borody's trial attendance were false.

Finally, per Ms. Bourke's request, Dr. Borody submitted a revised invoice[2] for his mid-July trip to Delaware, this time now totaling AU$ 111,319.58 and omitting all detail about Dr. Borody's activities. Ex. I. Ferring's statement in its letter to the Court yesterday that "Ferring has not paid Dr. Borody any money to date" appears to be another attempt to mislead Finch and the Court. (D.I. 418 at 3). Ms. Bourke reviewed the invoice and provided comments (in a phone call likely on July 29) and Dr. Borody likely has every expectation of being paid. In light of all of the circumstances here, and for the reasons cited in Finch's prior letter, Dr. Borody's compensation is unreasonable and an inducement to testify in violation of ABA Model Rule 3.4(b). *See also Patel v. 7-Eleven, Inc.,* 2015 WL 9701133, at *7 (C.D. Cal. Apr. 14, 2015) (disqualifying plaintiff's counsel who compensated disgruntled employee for his damaging fact testimony about defendant). Even on the limited record that Ferring has provided thus far, it is clear that Dr. Borody's testimony has been irreversibly influenced, by Ferring's promising to "help" him gain ownership of his patents, license his patents, compensate him at a rate of AU$30,000 per day (or more), and indemnify him for all claims arising out of his testimony. That Ferring chose to conceal and misrepresent its communications with Dr. Borody confirms it knows what it did is wrong.

Finch continues to be prejudiced by Ferring's conduct. Since the pre-trial conference, instead of focusing on its trial preparations based on the case that existed as of July 23, Finch has now had to distract itself with multiple issues related to Dr. Borody, including apparently wholesale new invalidity theories Ferring intends to present to the jury. After Dr. Borody's deposition, Finch anticipates that it may need to address these invalidity theories with the Court, including for late disclosure and assignor estoppel, among other issues. But none of what is happening with Dr. Borody is a surprise to Ferring – it has been planning this at the very least since Ms. Bourke and Ms. Durie flew to Australia in April. In a District where the Court frequently relies on and accepts representations of counsel, parties can only have faith in that system if those representations are accurate or if there are consequences when they are not. Ferring's non-disclosures and false statements are not consistent with how cases should be litigated in this District and the minimum remedy for that is exclusion of Dr. Borody's testimony.[3]

Respectfully,

*/s/ Kelly E. Farnan*

cc: All Counsel of Record (By E-mail)          Kelly E. Farnan (#4395)

---

[2] The revised invoice comes on the evening of July 29, **the same day** Finch filed a letter with the Court pointing out Ferring's illegal inducement of Dr. Borody's testimony. This is likely not a coincidence, but rather Ferring's attempt to change the record as to what truly happened.

[3] Given the new information Finch is receiving daily, Finch is still evaluating whether to seek additional relief.

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2024, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
Mary W. Bourke
Dana K. Severance
Daniel M. Attaway
Zachary Murphy
Womble Bond Dickinson (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Joshua P. Davis
Womble Bond Dickinson (US) LLP
811 Main Street
Suite 3130
Houston, TX 77002

**BY ELECTRONIC MAIL**
Christian E. Mammen
John B. Bourke
Womble Bond Dickinson (US) LLP
50 California Street, Suite 2750
San Francisco, CA 94111

**BY ELECTRONIC MAIL**
Daralyn J. Durie
Matthew Chivvis
Rachel Dolphin
Ramsey W. Fisher
Clinton W. Ewell
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

**BY ELECTRONIC MAIL**
Whitney R. O'Byrne
Sara Doudar
Morrison & Foerster LLP
701 Wilshire Boulevard
Los Angeles, CA 90017

**BY ELECTRONIC MAIL**
Sarah E. Brickey
Morrison & Foerster LLP
4200 Republic Plaza
370 Seventeenth Street
Denver, CO 80202-5638

                                        */s/ Kelly E. Farnan*
                                        Kelly E. Farnan (#4395)
                                        farnan@rlf.com