## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FERRING PHARMACEUTICALS INC. and REBIOTIX INC. | ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. | ) ) ) ) ) |
| Defendants. | ) ) C.A. No. 21-1694-JLH |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and THE REGENTS OF THE UNIVERSITY OF MINNESOTA, | ) ) ) ) ) |
| Counterclaim Plaintiffs/Reply Defendants, | ) ) |
| v. | ) |
| FERRING PHARMACEUTICALS INC., and REBIOTIX, INC., | ) ) ) |
| Counterclaim Defendants/Reply Plaintiffs. | ) ) |

## ~~PROPOSED~~ FINAL PRETRIAL ORDER

JLH

**VOLUME 1**

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16, Federal Rules of Civil Procedure. The parties are Ferring Pharmaceuticals Inc. and Rebiotix, Inc. (collectively, "Ferring"), on the one hand, and the Regents of the University of Minnesota ("UMN") and Finch Therapeutics Group, Inc., Finch Therapeutics, Inc., Finch Therapeutics Holdings, LLC, (collectively, "Finch") (collectively, "UMN and Finch"), on the other (collectively, the "Parties"). Pursuant to Local Rule 16.3, the Parties hereby submit for the Court's approval this Final Pretrial Order governing the trial, scheduled to begin on August 5, 2024.

| Ferring and Rebiotix's Counsel | UMN and Finch's Counsel |
|---|---|
| **WOMBLE BOND DICKINSON (US) LLP** | **RICHARDS, LAYTON & FINGER, P.A.** |
| Mary W. Bourke<br>Dana K. Severance<br>Daniel M. Attaway<br>Joshua P. Davis<br>Christian E. Mammen<br>John. B. Bourke<br>Zachary Murphy | Kelly E. Farnan<br>Jeffrey L. Moyer<br>Sara M. Metzler |
| **MORRISON & FOERSTER LLP** | **KIRKLAND & ELLIS LLP** |
| Daralyn J. Durie<br>Matthew Chivvis<br>Whitney O'Byrne<br>David McGowan<br>Rachel Dolphin<br>Ramsey Fisher<br>John Douglass<br>Sarah Brickey<br>Sara Doudar<br>Clint Ewell<br>Rupali Singhal | Mike W. De Vries<br>Adam R. Alper<br>Patricia A. Carson<br>Leslie M. Schmidt<br>Sharre Lotfollahi<br>Ashley L.B. Ross<br>Ingrid Peterson<br>Sam Blake<br>Ashley Cade<br>Alina Afinogenova<br>N. Kaye Horstman<br>Eric Speckhard<br>Kendra Delaney<br>Shaoyao Yu<br>Grant Rigdon<br>Jiange Xiao |

# TABLE OF CONTENTS

I.      NATURE OF THE ACTION (L.R. 16.3(C)(1)) ..................................................... 1

        A.      The Parties .................................................................................................. 1

        B.      The Pleadings .............................................................................................. 2

        C.      The Asserted Claims .................................................................................... 2

        D.      Claim Construction ...................................................................................... 3

        E.      Pending Motions .......................................................................................... 4

II.     JURISDICTION (L.R. 16.3(C)(2)) ..................................................................... 4

III.    UNCONTESTED AND CONTESTED FACTS........................................................ 4

        A.      Uncontested Facts (L.R. 16.3(c)(3)) ........................................................... 4

        B.      Contested Facts (L.R. 16.3(c)(4), (10))....................................................... 4

IV.     ISSUES OF LAW (L.R. 16.3(C)(5), (10))............................................................. 5

V.      EXHIBITS (L.R. 16.3(C)(6))................................................................................ 5

        A.      Documentary and Physical Exhibits ............................................................ 5

        B.      Demonstrative Exhibits................................................................................ 7

        C.      Exchange of Exhibits for Use With a Witness.............................................. 9

        D.      Witness Lists ............................................................................................... 9

        E.      Procedures For Witnesses .......................................................................... 10

        F.      Testimony by Deposition ........................................................................... 10

VI.     BRIEF STATEMENT OF INTENDED PROOFS (L.R. 16.3(C)(8)–(10)) ................ 12

VII.    DISCOVERY DESIGNATIONS........................................................................... 12

VIII.   MOTIONS *IN LIMINE*..................................................................................... 13

IX.     LIMITATIONS, RESERVATIONS, AND OTHER MATTERS................................ 14

        A.      Length of Trial .......................................................................................... 14

        B.      Voir Dire, Jury Instructions, and Verdict Form.......................................... 15

|     |     |                                                                  |     |
| --- | --- | ---------------------------------------------------------------- | --- |
| C.  |     | Number of Jurors and Jury Procedures                             | 15  |
| D.  |     | Juror Binders                                                    | 16  |
| E.  |     | Set-Up of Electronic and Computer Equipment                      | 16  |
| F.  |     | Handling of Confidential Information at Trial                     | 16  |
| G.  |     | Sequestration of Witnesses                                        | 17  |
| H.  |     | Judgment as a Matter of Law                                       | 17  |
| I.  |     | Other Stipulations                                               | 18  |
| J.  |     | Post-Trial Status Report and Motions                             | 19  |
| K.  |     | Dispute Resolution Procedures                                    | 20  |
| X.  | **CERTIFICATION OF GOOD FAITH EFFORTS AS TO SETTLEMENT** |     | **20** |
| XI. | **OTHER ISSUES** |                                               |     | **20** |

RLF1 31302333v.1

**Exhibits to Pre-Trial Order**

| Exhibit | Description |
|---------|-------------|
| 1 | Uncontested statement of facts |
| 2 | UMN and Finch's statement of issues of fact that remain to be litigated |
| 3 | Ferring's statement of issues of fact that remain to be litigated |
| 4 | UMN and Finch's statement of issues of law, including authority |
| 5 | Ferring's statement of issues of law, including authority |
| 6 | Joint trial exhibit list |
| 7 | UMN and Finch's trial exhibit list |
| 8 | Ferring's trial exhibit list |
| 9 | UMN and Finch's witness list |
| 10 | Ferring's witness list |
| 11 | UMN and Finch's deposition designations |
| 12 | Ferring's deposition designations |
| 13 | UMN and Finch's experts' CVs |
| 14 | Ferring's experts' CVs |
| 15 | UMN and Finch's brief statement of intended proofs |
| 16 | Ferring's brief statement of intended proofs |
| 17 | UMN and Finch's motions *in limine* |
| 18 | Ferring's motions *in limine* |

## I.   Nature of the Action (L.R. 16.3(c)(1))

1.      This is a patent infringement action wherein UMN and Finch (collectively, "UMN and Finch" or "UMN/Finch") allege that Ferring and Rebiotix (collectively, "Ferring") infringe the asserted claims of two sets of patents: U.S. Patent No. 10,251,914 ("the '914 patent") ("the UMN Patent"); and U.S. Patent Nos. 10,675,309 ("the '309 patent"); and 11,541,080 ("the '080 patent") ("the Finch Patents" or "the Borody Patents") (collectively, "the Asserted Patents").  As a result of the Parties' efforts to streamline the issues for trial, the following patents are no longer part of this litigation: U.S. Patent Nos. 10,328,107; 10,064,899; 10,022,406; 9,962,413; 9,308,226; 10,286,011; 10,463,702, 10,286,012 and 11,491,193.

2.      The technology at issue involves fecal microbiota transplantation ("FMT") products for treating recurrent *C. difficile* infection ("CDI") and methods of administering FMT products to increase or decrease certain bacterial levels.

3.      The accused product is REBYOTA® (fecal microbiota, live-jslm) which is indicated for the prevention of recurrence of CDI in individuals 18 years of age and older, following antibiotic treatment for recurrent CDI.

4.      The final pretrial conference was held on July 23, 2024.  A 5-day jury trial is scheduled to begin on August 2, 2024.

### A.   The Parties

5.      **Ferring:** Ferring Pharmaceuticals Inc. is a private Delaware corporation, having a principal place of business at 100 Interpace Parkway, Parsippany, New Jersey 07054.

6.      **Rebiotix:** Rebiotix, Inc. is a private Delaware corporation, having its principal place of business at 2660 Patton Road, Roseville, Minnesota 55113.

7.      **UMN:** University of Minnesota is a public research institution. Its principal place of business in Minneapolis, Minnesota.

8.     **Finch**: Finch Therapeutics Group, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 200 Inner Belt Road, Suite 400, Somerville, Massachusetts 02143. Finch Therapeutics, Inc. is a corporation organized and existing under the laws of Delaware, having a principal place of business at 200 Inner Belt Road, Suite 400, Somerville, Massachusetts 02143. Finch Therapeutics, Inc. is a wholly-owned subsidiary of Finch Therapeutics Group, Inc. Finch Therapeutics Holdings, LLC is a Delaware limited liability company having a principal place of business at 200 Inner Belt Road, Suite 400, Somerville, MA 02143. Finch Therapeutics Holdings LLC is a wholly-owned subsidiary of Finch Therapeutics Group, Inc.

**B.     The Pleadings**

9.     The operative pleadings in this case are:

- Ferring's Complaint (D.I. 1), filed December 1, 2021;

- UMN and Finch's Second Amended Answer and Counterclaims (D.I. 98), filed January 23, 2023;

- Ferring's Reply and Counterclaims in Reply to UMN and Finch's Second Amended Counterclaims (D.I. 126), filed February 7, 2023; and

- UMN and Finch's Reply to Ferring's Counterclaims in Reply (D.I. 139), filed February 21, 2023.

**C.     The Asserted Claims**

10.     UMN and Finch allege that Ferring infringes the following claims of the Asserted Patents, although the Parties have agreed to a July 23, 2024 deadline for a further reduction of the asserted claims and have agreed that Ferring will, in the week thereafter, further narrow its invalidity defenses for trial:

| Patent | Asserted Claims |
|---|---|
| **UMN Patents** | |
| 10,251,914 | 7 |
| **Finch/Borody Patents** | |

| 10,675,309 | 16, 21 |
| 11,541,080 | 2, 9 |

### D.    Claim Construction

11.    Judge Andrews held a Markman hearing on February 21, 2023. *See* Hr'g Tr., D.I. 148. Judge Andrews entered a Claim Construction Order on February 28, 2023 (D.I. 145) construing the below terms in the Asserted Patents as follows[1]:

| Term | Construction |
|---|---|
| "effective amount"<br><br>('914 patent claims 4) | "a sufficient amount to provide the desired effect" |
| "at least six different classes of bacteria selected from the group consisting of Actinobacteria, Bacteroidia, Bacilli, Clostridia, Erysipelotrichi, Alphaproteobacteria, Betaproteobacteria, Gammaproteobacteria, Mollicutes, and Verrucomicrobiae"<br><br>('914 patent claims 4) | A Markush group term for which no construction is necessary. |
| "extract"<br><br>('914 patent claims 4) | "a substance obtained from a material, mixture, organism, or part of an organism by some chemical and/or physical process" |
| "human fecal microbe preparation" / "fecal . . . preparation" / "human fecal preparation"<br><br>('914 patent claims 4) | Plain and ordinary meaning |
| "rough particulate matter"<br><br>('309 patent claims 12) | "rough, macroscopic, non-living matter" |
| "separated from rough particulate matter"<br><br>('309 patent claims 12) | "the filtering separates bacteria from rough, macroscopic, non-living matter" / "separated from rough, macroscopic, non-living matter" |

---

[1]    The claims listed in the various charts in this section are the claims in which the term appears, including unasserted independent claims from which the asserted claims depend.

12. Judge Andrews' February 28, 2023 Claim Construction Order also adopted the parties' agreement as to the construction of the following terms in the Asserted Patents as follows:

| Term | Construction |
|---|---|
| "amount effective" ('309 patent claim 16) | "a sufficient amount to provide the desired effect" |

### E. Pending Motions

13. The following motion is currently pending, and the Court has advised that it will take it up after the jury trial in this matter.

- Ferring and Rebiotix's Motion for Leave to Amend (D.I. 316).

## II. Jurisdiction (L.R. 16.3(c)(2))

14. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 as this action arises under U.S. patent law.

15. The Parties do not dispute personal jurisdiction or venue for purposes of this action.

## III. Uncontested and Contested Facts

### A. Uncontested Facts (L.R. 16.3(c)(3))

16. The Parties' statement of facts that are not disputed or have been agreed to or stipulated to by the Parties is attached as **Exhibit 1**.

17. These facts are not disputed or have been agreed to or stipulated to by the Parties. These facts should become part of the evidentiary record in this action. Any party, with prior notice to all other parties, may read any or all of the uncontested facts to the jury or Court and will be charged for the time used to do so.

### B. Contested Facts (L.R. 16.3(c)(4), (10))

18. UMN and Finch's Statement of Contested Facts is attached as **Exhibit 2**.

19. Ferring's Statement of Contested Facts is attached as **Exhibit 3**.

## IV.    Issues of Law (L.R. 16.3(c)(5), (10))

20.    UMN and Finch's Statement of Issues of Law is attached as **Exhibit 4**.

21.    Ferring's Statement of Issues of Law is attached as **Exhibit 5**.

## V.    Exhibits (L.R. 16.3(c)(6))

### A.    Documentary and Physical Exhibits

22.    The list of exhibits that the Parties may jointly offer at the jury trial which, subject to continued meet and conferring in advance of and during trial, may ultimately be offered jointly by UMN and Finch and Ferring, is attached as **Exhibit 6**.

23.    UMN and Finch's list of exhibits that it may offer at the jury trial, and Ferring's objections to UMN and Finch's exhibits, is attached as **Exhibit 7**.

24.    Ferring's list of exhibits that it may offer at the jury trial, and UMN and Finch's objections to Ferring's exhibits, is attached as **Exhibit 8**.

25.    A key to the objection code used by both UMN and Finch and Ferring for objections to exhibits is included in Exhibits 7 and 8, respectively.

26.    The Parties agree that exhibits to be used solely for impeachment need not be included on the lists of trial exhibits.

27.    The Parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

28.    The fact that a document appears on a party's exhibit list does not mean that it is admissible against that party; admission and use will be treated the same irrespective of which party's list the exhibit appears on.  For avoidance of doubt, either party may seek to introduce a document that appears on the other's exhibit list, even if not listed on that party's own exhibit list.

29.     Exhibits may be admitted without a sponsoring witness by agreement or as otherwise ordered by the Court. Exhibits may also be introduced via prior sworn testimony. Exhibits that are not objected to or that have been ruled on by the Court may be used in opening statements. A party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence may formally move the exhibit into evidence, by exhibit number, at any time. For clarity, the parties agree that documents may be admitted for the first time through an expert witness who properly relied upon that exhibit in his or her expert report such that it was timely disclosed, subject to the Court resolving any objections raised by the opposing party. If properly relied on by the expert, the parties agree to work together to identify evidence for which there are no legitimate disputes as to admissibility and allow those exhibits to be introduced through experts for efficiency, including by discussing such exhibits in advance of trial.

30.     Except as provided above with respect to opening statements, exhibits may not be published, displayed, or otherwise shown to the jury until after the Court allows such publication or display. Any exhibits already admitted may be published to the jury without requesting to do so.

31.     The parties stipulate not to object on authenticity grounds under Fed. R. Evid. 901 or hearsay grounds under Fed. R. Evid. 802 to documents produced by a party or a third party pursuant to a subpoena in the above-captioned matter that appear on their face to be business records (*e.g.*, internal emails, financials, technical manuals, or PowerPoint presentations created by the producing party in the ordinary course of their business), unless the party has a good faith basis to dispute the exhibit's authenticity or hearsay status. This stipulation does not waive hearsay within hearsay objections to the admissibility of these business records under Fed. R. Evid. 805; or other objections to the admissibility of such business records under Fed. R. Evid. 106, 401, 402,

403, 408, 1002; or any applicable order granting a *Daubert* motion, a motion *in limine* or motion for summary judgment; or any objections on the grounds that the documents were not timely produced, were not timely disclosed, or are not within the scope of an expert's report pursuant to Fed. R. Civ. P. 26 or 37.

32.     Exhibits that are United States Patent Office documents (e.g., patents, published patent applications, provisional patent applications, file histories, and assignment records) shall be presumed authentic within the meaning of Federal Rules of Evidence 901 and not hearsay.

33.     The parties shall each provide a completed AO Form 187 exhibit list to the Court on the first day of trial.  To the extent the parties submit a joint exhibit list, UMN and Finch will include the joint exhibits on its AO Form 187.

34.     By noon on the Friday before trial begins, the parties shall provide electronic versions of all trial exhibits on the exhibit list in a single folder. The trial exhibits shall be named with their exhibit numbers and organized in ascending numerical order. Additionally, a party using exhibits and demonstratives with a witness on direct or cross examination shall provide a copy to the witness, a copy to opposing counsel, and two copies to the Court at the time of use.

## B.     Demonstrative Exhibits

35.     Exhibits that the Parties intend to use at trial solely for demonstrative purposes without admitting into evidence ("demonstrative exhibits") do not need to be specifically described on the Parties' respective exhibit lists that are part of this Final Pretrial Order.

36.     The Parties shall exchange demonstratives (e.g., PowerPoint slides and boards) to be used in opening statements by 2:00 p.m. the calendar day before opening statements. Any objections shall be provided no later than 5:00 p.m. the calendar day before opening statements. The parties are to meet and confer to resolve any objections to the demonstratives for opening statements at 7:00 p.m. the calendar day before opening statements.

37.     The Parties shall provide demonstrative exhibits to be used in connection with direct examination of live witnesses by 6:00 p.m. the calendar day before their intended use.  Any objections shall be provided no later than 8:00 p.m. the calendar day before their intended use. The Parties are to meet and confer to resolve any objections at 9:00 p.m. the calendar day before the demonstratives' intended use.

38.     If good-faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention in the morning of the opening statement or the day the witness is being called to the witness stand.

39.     If any of the demonstratives change after the deadline, the party intending to use the demonstrative shall promptly notify the opposing party of the change(s) to provide the opposing party with reasonable notice of the change(s) before the demonstratives are presented to the jury.

40.     The party seeking to use a demonstrative shall provide a color representation of the demonstrative to the other side in PDF form.  However, for a demonstrative containing video animations, the party seeking to use the animation shall provide it to the other side via a secure file share.

41.     For physical demonstratives, the party seeking to use the demonstratives shall provide a color representation as a PDF of 8.5" x 11" copies of the demonstratives.

42.     These provisions do not apply to demonstratives created during testimony, which need not be provided to the other side in advance of their use.

43.     A demonstrative that is merely a blow-up or highlight of a single exhibit or part thereof, or of a single piece of continuous testimony, without title or added text, is not required to be provided to the other side in advance of their use.

### C.    Exchange of Exhibits for Use With a Witness

44.    Each party shall identify by number the exhibits it expects to display to the jury on direct or adverse direct, whether as an admitted exhibit or as part of a demonstrative, during examination of a witness by 6:00 pm two calendar days before the witness will testify live. The party receiving the list of exhibits shall provide the identifying party any objections to the listed exhibits by 8:00 pm via electronic mail to counsel of record that same day. The parties shall then meet and confer as soon as possible to resolve any objections, in no event later than 9:00 pm that day. This notice provision does *not* apply to exhibits used solely for impeachment  or on cross examination.

### D.    Witness Lists

45.    The list of fact and expert witnesses that UMN and Finch may call, either live or by deposition, is set forth in **Exhibit 9**.

46.    The list of fact and expert witnesses that Ferring may call, either live or by deposition, is set forth in **Exhibit 10**.

47.    The Parties expect the following third parties may be called as witnesses, either live or by deposition:

- Mary Ellen Anderson
- Judy Berman
- Michael Berman
- James Burgess
- Matthew Hamilton
- Chad Kieper
- Edwin Hlavka
- Courtney Jones

- Lee Jones

- Benjamin Merrifield

- Mark Smith

- Alexa Weingarden

### E.  Procedures For Witnesses

48.  The Parties will identify by email to the opposing party the witnesses they intend to call, in the order in which they intend to call them, and whether those witnesses will be called live or by deposition, by 6:00 p.m. three nights before the day on which such witness will be called to testify. For example, if a party expects to conduct an examination on Thursday, notice is to be given to the opposing party by 6:00 p.m. on Monday. This paragraph applies only to the identification of witnesses. Witnesses whose testimony will be presented by deposition must also be disclosed according to the schedule set forth below.

49.  A party may only identify witnesses from the witness lists attached hereto (**Exhibit 9** and **Exhibit 10**).

### F.  Testimony by Deposition

50.  UMN and Finch identify the deposition testimony that it may offer into evidence at the jury trial in **Exhibit 11**. Ferring's objections to the designations, Ferring's counter designations, and UMN and Finch's objections to the counter designations are also listed in **Exhibit 11**.

51.  Ferring identifies the deposition testimony that it may offer into evidence at the jury trial in **Exhibit 12**. UMN and Finch's objections to the designations, UMN and Finch's counter designations, and Ferring's objections to the counter designations are also listed in **Exhibit 12**.

52.  A key to the objection codes used by both UMN and Finch and Ferring for objections to exhibits is included in Exhibits 11 and 12, respectively.

53.     For any witness whose testimony the Parties intend to present at trial by deposition, the Parties shall identify a final list of deposition designations to be played to the jury, and the proposed exhibits used in the designations, by 6:00 p.m. three (3) calendar days before the designations are to be played or read.  Final objections to the testimony and/or exhibits and final counter-designations with proposed exhibits shall be provided by 6:00 p.m. two (2) calendar days before designations are to be played or read.  Objections to counter-designations and/or exhibits shall be provided by 8:00 p.m. that same day.  The Parties shall meet and confer at 9:00 p.m. the same day.

54.     Issues related to deposition designations must be brought to the attention of the Court's Courtroom Deputy by 6:00 p.m. the night before the witness is to be called. The party calling the witness by deposition shall submit, on behalf of all parties: (i) a copy of the entire deposition testimony of the witness at issue, clearly highlighting the designations, counter-designations, and pending objections; and (ii) a cover letter clearly identifying the pending objections as well as a brief indication (i.e., no more than three sentences per objection) of the basis for the objection and a brief indication (i.e., no more than three sentences per response) of the offering party's response to the objection.

55.     The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony played in the same order it appears in the full transcript, minus any attorney objections, and shall provide a final version of the video and clip report with time allocations to all parties by 7:00 p.m. the day before it is to be shown to the jury.  Any objection to the video recording must be made by 9:00 p.m. the day before it is to be shown to the jury.

56.     Colloquy between counsel and objections will be eliminated to the extent practicable to do so when the deposition is read or played at trial.

57.     When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations and counter-designations that will be read or played.  An additional copy shall be provided to the court reporter. The Parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the Parties.

## VI.    Brief Statement of Intended Proofs (L.R. 16.3(c)(8)–(10))

58.     UMN and Finch's Brief Statement of Intended Proofs is attached as **Exhibit 15**.

59.     Ferring's Brief Statement of Intended Proofs is attached as **Exhibit 16**.

## VII.   Discovery Designations

60.     The parties agree that written responses to interrogatories and requests for admission may be used at trial consistent with the Federal Rules of Civil Procedure and Federal Rule of Evidence even if such responses have not been verified by the responding party. Responses to requests for admission may be read into the record like undisputed facts.

61.     UMN and Finch provide the following discovery designations:

- Ferring's June 10, 2023 response to Interrogatory No. 2
- Ferring's June 10, 2023 response to Interrogatory No. 15
- Ferring's May 24, 2023 responses to Request for Admission Nos. 1; 2; 3; 5; 6; 9; 14; 15; 18; 22; 23; 24; 25.
- Ferring's May 24, 2023 responses to Request for Admission on Authentication Nos. 1-2.
- Ferring's July 20, 2023 supplemental responses to Request for Admission Nos. 15, 17.

62.     Ferring provides the following discovery designations:

- UMN and Finch's June 16, 2023 response to Interrogatory No. 1;

- UMN and Finch's June 16, 2023 response to Interrogatory No. 3;

- UMN and Finch's June 16, 2023 response to Interrogatory No. 5;

- UMN and Finch's June 16, 2023 response to Interrogatory No. 6;

- UMN and Finch's June 16, 2023 response to Interrogatory No. 7; and

- UMN and Finch's June 16, 2023 response to Interrogatory No. 8.

## VIII.   Motions *in Limine*[2]

63.     UMN and Finch's motions *in limine* and Ferring's responses thereto, are attached

as **Exhibit 17.** The MILs have been resolved by the Court as follows:

- MIL No. 1 has been DENIED;

- MIL No. 2 has been DENIED and Ferring has withdrawn its spoliation instruction (although Ferring reserves its right to renew its request should additional evidence come to light) and agreed to not ask witnesses questions using the word spoliation;

- MIL No. 3 has been GRANTED-IN-PART and the Court has excluded references to patent troll, pirates, bounty hunters, bandits, playing the lawsuit lottery, shakedown artists, shell company, and patent assertion agency or entity; MIL No. 3 has been DENIED-IN-PART as to the term "non-practicing entity;"

- MIL No. 4 has been GRANTED-IN-PART and DENIED-IN-PART.  The motion is DENIED as to the Hlavka patents addressed in Dr. Britton's report.  The motion is granted in part as to recently issued Hlavka patents and Ms. Jones's patents. None of the recently issued Hlavka patents or Ms. Jones's patents will be admitted into evidence. Ms. Jones may testify about the existence of her patents.  With respect to being able to cross examine UMN/Finch's expert with the recently issued Hlavka patents, the Court is not going to allow them to be admitted into evidence during the cross.  As to whether such use will be permitted, that will depend on the question.  The Court will entertain objections to that at trial.

- MIL No. 5 has been ~~RESERVED.~~ — *resolved by D.I. 440 and the parties' representations at the pretrial conference. - JLH*

64.     Ferring's motions *in limine* have been resolved by the Court:

---

[2]   All MIL summaries are subject to the Court's rulings.

- MIL No. 1 was resolved by agreement of the parties that Finch and UMN would present evidence first and would not reference the fact that Ferring initiated this lawsuit;

- MIL No. 2 has been DENIED and Finch has agreed to not use the amount paid by Ferring to Ms. Jones or Mr. Berman to benchmark damages and Finch will not otherwise present evidence of Ms. Jones' or Mr. Berman's personal wealth;

- MIL No. 4 has been DENIED and Finch has agreed to not suggest that anyone at Ferring has breached an NDA, that said breach is a basis for liability, or that Ms. Jones has misappropriated trade secrets or improperly accessed materials;

- MIL No. 5 has been ~~RESERVED.~~ *resolved by D.I. 449. JLH*

## IX.    Limitations, Reservations, and Other Matters

### A.    Length of Trial

65.    A jury trial will begin with jury selection and preliminary jury instructions on August *2, JLH* 8, 2024 at 9:00 a.m. in Courtroom 6D.

66.    The trial will be timed.  Each side shall be allotted 12 hours for its opening statement, its direct and cross examination of witnesses, and its closing arguments.  Each side shall have up to 45 minutes for opening statements and shall reserve at least 60 minutes for closing arguments, inclusive of any rebuttal closing by UMN and Finch.  Time during the trial that does not neatly fit into one of those categories will be attributed to one side or the other as the Court thinks most appropriate.

67.    Trial counsel are to be present and ready to proceed at 8:30 a.m. ET on August 2, 2024, and on each and every day thereafter of trial.  Counsel should understand that there may be long lines to enter the courthouse (particularly when the jury is being selected) and should plan accordingly.  There will be up to an hour for lunch and a fifteen-minute break in both the morning and the afternoon.

68.    Issues that need to be addressed outside the presence of the jury will be taken up at 8:30 a.m. ET, at the lunch break, at the end of the day, or at such other time that the Court determines.

69.    Unless otherwise ordered, time will be charged to a party for its opening statement, closing argument, direct and redirect examination of witnesses it calls, and cross-examination of witnesses called by the opposing party.   Time dedicated to arguing objections to trial or demonstrative exhibits will be charged against the parties at the Court's discretion.

70.    The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allocated trial time, the Court will terminate that party's trial presentation, except for good cause shown.

**B.    Voir Dire, Jury Instructions, and Verdict Form**

71.    The Parties' proposed voir dire, preliminary and final jury instructions, and verdict form will be submitted seven days prior to the pretrial conference in accordance with the Court's form scheduling order and agreement of the Parties.

**C.    Number of Jurors and Jury Procedures**

72.    The trial shall commence with eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers or at a sidebar and thereafter addressing any challenges to strike for cause or undue hardship until a venire of fourteen (14) jurors is selected.  The parties will then have three preemptory strikes each which will be used alternating UMN and Finch then Ferring, until the final jury of eight jurors is selected.  The parties need not strike jurors in numerical order.

73.    UMN and Finch will provide the Court forty (40) courtesy copies of voir dire and forty (40) generic pens for the jury on the Friday before opening statements.

### D.   Juror Binders

74.   At the outset of trial, the Parties will provide jury members with binders containing the following material:

- The asserted UMN and Finch Patents;
- The claim constructions to be applied;
- A glossary of terms, if and to the extent agreed upon by the Parties;
- A blank pad of paper;
- Witness pages with the name and agreed-upon photograph of the witness on an otherwise blank sheet for the jurors to insert in the notebook at the start of each day;
- A pencil or pen.

75.   The Parties agree that the jurors shall be permitted to write notes by hand on their notepads during the trial, and that jurors be permitted to bring their provided binders and notepads into the deliberation room. The Parties propose that the jurors be instructed not to share the binders and notepads with each other. The Parties further propose that the jurors' binders and notepads be destroyed without review after the jury's discharge.

### E.   Set-Up of Electronic and Computer Equipment

76.   The Parties request that the Court grant them access to the Courtroom the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial.

### F.   Handling of Confidential Information at Trial

77.   The Parties anticipate that the majority of trial will be open to the public and not sealed unless a party specifically requests reasonably in advance of anticipated sealing that a particularly sensitive portion be sealed. If a party makes such a request, subject to the Court's approval, and for good cause shown, the courtroom shall be cleared of those individuals not

qualified under the Protective Order entered in this case, except that each party may designate one corporate representative who may remain in the courtroom throughout the entirety of trial. Each party must notify the opposing party of the identity of this corporate representative by 6:30 p.m. three (3) days before trial.

78.     Transcripts of any sealed testimony, and exhibits entered while the courtroom is sealed, shall remain under seal until thirty (30) days after the conclusion of the trial. Within two weeks of the last day of trial, the parties may designate, by page and line designations, the portions of the transcript they seek to have filed under seal and the exhibits they seek to have placed under seal, subject to the Court's approval. Counsel for the Parties shall be responsible for supplying the necessary envelopes and labels for any materials placed under seal. Within two weeks of the last day of trial, the Parties shall also make any corrections to the trial transcript.

### G.     Sequestration of Witnesses

79.     Pursuant to Fed. R. Evid. 615, fact witnesses will be excluded from the courtroom during trial (after opening statements) so that they cannot hear the other witnesses' testimony, to the extent described herein. Excluded witnesses will be prohibited from learning about, obtaining, or being provided with trial testimony. For the avoidance of doubt, other than experts, no fact witness other than each party's respective corporate representative shall be allowed to be present at trial before they testify, including prior to any of their rebuttal testimony. In accordance with provision (2) of Rule 615, this exclusion rule will not apply to the officer or employee designated by each party as its representative. Expert witnesses will not be excluded for either fact or expert testimony.

### H.     Judgment as a Matter of Law

80.     If the jury is ~~present at the time a party moves for judgment as a matter of law~~ ("JMOL") ~~pursuant to Fed. R. Civ. P. 50, the moving party shall state only that it moves~~ for

~~judgment as a matter of law pursuant to Rule 50(a).~~ *make and* *JMA* *RH* The moving party shall argue its motion orally

out of the presence of the jurors at the earliest opportunity allowed by the Court. The Parties may,

but are not required to, submit written Rule 50(a) motions.

**I.    Other Stipulations**

81.    The Parties stipulate that the Federal Judicial Center's video entitled "The Patent

Process: An Overview for Jurors" will be played as part of the Court's preliminary jury instructions

after the jury has been seated.    *See*  https://www.fjc.gov/publications/patent-process-

overviewjurors. The Parties will provide the seated jurors with copies of the sample patent

referenced in the Federal Judicial Center's patent video. Time to play the video will not be charged

to any party.

82.    The Parties have filed a letter attaching a list of witness names and a glossary of

technical terms for the court reporter.

83.    The Parties agree they will not refer to or quote from orders of the Court (other than

the Court's list of claim constructions) during trial without first approaching the Court for leave.

84.    The parties will not present evidence concerning any witness's nationality, country

of origin, sexual orientation, or religion, and further will not present evidence concerning Ferring's

country of origin.

85.    Ferring/Rebiotix will not introduce evidence, testimony, or argument referring to

Finch or UMN-affiliated person or entities in disparaging ways, such as a "patent troll," "pirate,"

"bounty hunter," "bandit," "playing the lawsuit lottery," "shakedown artist," or any such similar

term, including as set forth in the transcript of the Pretrial Conference.

86.    Any expert opinions offered at trial will be opinions that were advanced in the

experts' reports.

87.     The parties will not introduce evidence, testimony, or argument referring to the role or presence in the courtroom of jury consultants or shadow jurors, or the use of focus groups or mock proceedings to assist with trial preparation, jury selection, or trial.

88.     The parties will not introduce evidence, testimony, or argument inconsistent with the Court's claim construction rulings.

89.     The parties will not introduce evidence, testimony, or argument regarding the Court's summary judgment rulings.

90.     The parties will not introduce evidence, testimony, or argument regarding claims or defenses the parties have dropped in advance of trial.

91.     Finch/UMN will not offer evidence and/or argument regarding Ferring Pharmaceuticals, Inc.'s total company-wide revenue and profits.

92.     The parties agree that they will not reference or offer any expert testimony that has been stricken by this Court in front of the jury.

93.     UMN/Finch will not dispute that the following documents are authentic:

BORODY_FER00000001;        BORODY_FER00000011;        BORODY_FER00000015;

BORODY_FER00000031;        BORODY_FER00000041;        BORODY_FER00000048;

BORODY_FER00000049;        BORODY_FER00000052;        BORODY_FER00000055;

BORODY_FER00000056;        BORODY_FER00000059;        BORODY_FER00000065;

BORODY_FER00000067; FINCH_0469385; FINCH_0469388.  UMN/Finch reserves all other objections to the admissibility of these documents.

**J.      Post-Trial Status Report and Motions**

94.     Pursuant to the Court's form Rule 16 Scheduling Order, within seven (7) days after the jury returns a verdict in any portion of the trial, the Parties shall jointly submit a form of order to enter judgment on the verdict, and at the same time, will submit a joint status report indicating

how the case should proceed and listing any post-trial motions each party intends to file. The Parties will coordinate with the Court to propose a post-trial briefing schedule.

### K. Dispute Resolution Procedures

95.     If, after meeting and conferring, the Parties are unable to resolve their objections to demonstratives, witnesses, or other evidence, the objecting party shall provide its position(s) promptly after the conclusion of the meet and confer and in no event later than 10:00 p.m. The responding party shall provide its responsive position by 11:00 p.m. By 7:00 a.m., Delaware counsel, on behalf of the Parties, shall notify the Court by email (jlh_civil@ded.uscourts.gov) of any objections to demonstratives, witnesses, or other evidence to be presented that trial day. The Parties shall attach to the email a joint pleading identifying the disputes and digital copies of all relevant demonstratives, exhibits, or other evidence with the disputed passages highlighted. The Parties shall state their position on each dispute in three sentences. By 8:15 a.m., the Parties shall provide the Court with two (2) courtesy copies of the submission. The parties shall leave the courtesy copies on the lectern in the courtroom.

96.     Parties' objections to demonstratives, exhibits, witnesses, and deposition designations shall be addressed from 8:30 a.m. to 9:00 a.m., after 4:30 p.m., or during the morning, lunch, or afternoon breaks.

### X. Certification of Good Faith Efforts as to Settlement

97.     The Parties certify that they have made good faith efforts to resolve the case through settlement.

### XI. Other Issues

98.     The Parties have agreed that UMN and Finch will present evidence first.

99.     The Court has stated that the following issues will be decided by the Court outside the presence of the jury:

- Ferring/Rebiotix's Fifth Affirmative Defense of Equitable Estoppel, which is limited to the UMN Patents, which, to the extent the evidence is not also relevant to issues to be tried to the jury, will be tried at night after the jury is dismissed and will count towards the parties' trial time;

- UMN and Finch's request for a permanent injunction under 35 U.S.C. § 283.

- UMN and Finch's request for an ongoing royalty; treble damages under 35 U.S.C. § 284; pre- and post-judgment interest; and costs and attorneys' fees under 35 U.S.C. § 285.

100.   The Court will hold the charge conference after the close of testimony on August, 6, 7, or 8, 2024.

/s/ Daniel M. Attaway
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel M. Attaway (#5130)
John B. Bourke (#6534)
Zachary Murphy (#6881)
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, DE 19801
(302) 252-4320
Mary.Bourke@wbd-us.com
Dana.Severance@wbd-us.com
Daniel.Attaway@wbd-us.com
Ben.Bourke@wbd-us.com
Zachary.Murphy@wbd-us.com

*Counsel for Ferring Pharmaceuticals Inc. and Rebiotix Inc.*

Of Counsel:
Joshua P. Davis
Womble Bond Dickinson (US) LLP
811 Main Street, Suite 3130
Houston, TX 77002
Joshua.P.Davis@wbd-us.com

Christian E. Mammen
Womble Bond Dickinson (US) LLP
50 California St., Suite 2750
San Francisco, CA, 94111
chris.mammen@wbd-us.com

/s/ Kelly E. Farnan
Jeffrey L. Moyer (#3309)
Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
moyer@rlf.com
farnan@rlf.com
metzler@rlf.com

*Counsel for Finch Therapeutics Group, Inc., Finch Therapeutics, Inc. and Finch Therapeutics Holdings, LLC, and the Regents of the University of Minnesota*

Of Counsel:
KIRKLAND & ELLIS LLP
Michael W. De Vries
Sharre Lotfollahi
Ingrid Petersen
Sam Blake
Kendra Delaney
Grant Rigdon
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400
michael.devries@kirkland.com

RLF1 31302333v.1

Daralyn J. Durie
Matthew Chivvis
Rachel Dolphin
Ramsey W. Fisher
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
ddurie@mofo.com
mchivvis@mofo.com
rdophin@mofo.com
ramseyfisher@mofo.com


Whitney R. O'Byrne
Sara Doudar
Morrison & Foerster LLP
701 Wilshire Boulevard
Los Angeles, CA 90017
sdoudar@mofo.com
wobyrne@mofo.com

Adam R. Alper
555 California Street, 27th Floor
San Francisco, CA 94104
(415) 439-1400
adam.alper@kirkland.com

Patricia A. Carson
Leslie M. Schmidt
Ashley Ross
N. Kaye Horstman
Shaoyao Yu
Jiange Xiao
601 Lexington Avenue
New York, NY 10022
patricia.carson@kirkland.com
leslie.schmidt@kirkland.com
ashley.ross@kirkland.com
kaye.horstman@kirkland.com

Alina Afinogenova
200 Clarendon Street, 47th floor
Boston, MA 02116
alina.afinogenova@kirkland.com

Ashley Cade
Eric Speckhard
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
ashley.cade@kirkland.com

IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the Parties or on motion of the Court.

Dated August 2, 2024

_____
The Honorable Jennifer L. Hall
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FERRING PHARMACEUTICALS INC. and REBIOTIX INC. <br><br> Plaintiffs, <br><br> v. <br><br> FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., and FINCH THERAPEUTICS HOLDINGS, LLC. <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )   C.A. No. 21-1694-JLH |
| FINCH THERAPEUTICS GROUP, INC., FINCH THERAPEUTICS, INC., FINCH THERAPEUTICS HOLDINGS, LLC, and THE REGENTS OF THE UNIVERSITY OF MINNESOTA, <br><br> Counterclaim Plaintiffs/Reply Defendants, <br><br> v. <br><br> FERRING PHARMACEUTICALS INC., and REBIOTIX, INC., <br><br> Counterclaim Defendants/Reply Plaintiffs. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**EXHIBIT 1 TO PROPOSED FINAL PRETRIAL ORDER**
**JOINT STATEMENT OF UNCONTESTED FACTS**

Pursuant to Local Rule 16.3(c)(3), The Regents of the University of Minnesota ("UMN") and Finch Therapeutics Group, Inc., Finch Therapeutics, Inc., Finch Therapeutics Holdings, LLC (collectively, "Finch") (together, "UMN and Finch"), on the one hand, and Ferring Pharmaceuticals Inc. and Rebiotix, Inc. (collectively, "Ferring"), on the other, respectfully submit the following joint statement of the facts that are admitted and require no proof.

**EXHIBIT 1**
**JOINT STATEMENT OF UNCONTESTED FACTS**

I.    **The Parties**

1.    University of Minnesota was created by charter and perpetuated by the Constitution of the State of Minnesota. Its principal place of business in Minneapolis, Minnesota.

2.    Finch Therapeutics Group, Inc. and Finch Therapeutics, Inc. are both corporations incorporated under the laws of Delaware. Finch Therapeutics Holdings, LLC is a Delaware limited liability company. Finch Therapeutics Group, Inc., Finch Therapeutics, Inc., and Finch Therapeutics Holdings, LLC ("Finch") each have a principal place of business in Somerville, Massachusetts.

3.    Ferring Pharmaceuticals Inc. is incorporated under the laws of Delaware. Its principal place of business is in Parsippany, New Jersey.

4.    Rebiotix Inc. is incorporated under the laws of Delaware. Its principal place of business is in Roseville, Minnesota. Rebiotix is wholly owned by Ferring, after a merger that was completed on March 26, 2018.

II.    **The Asserted Patents**

5.    U.S. Patent No. 10,251,914 (the "'914 patent") was issued by the United States Patent and Trademark Office on April 9, 2019.

6.    U.S. Patent No. 10,675,309 (the "'309 patent") was issued by the United States Patent and Trademark Office on June 9, 2020.

7.    U.S. Patent No. 11,541,080 (the "'080 patent") was issued by the United States Patent and Trademark Office on January 3, 2023.

8.    UMN owns U.S. Patent No. 10,251,914.

9.    Finch owns U.S. Patent No. 10,675,309 and U.S. Patent No. 11,541,080.

2

**EXHIBIT 1**
**JOINT STATEMENT OF UNCONTESTED FACTS**

### III.    The Products at Issue

10.    Ferring completed submission of its application for FDA approval of REBYOTA on November 30, 2021.

11.    REBYOTA received FDA approval for REBYOTA on November 30, 2022.

3